# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAPLEBEAR, INC., D/B/A INSTACART, § § § | |
| Plaintiff, § § | CIVIL ACTION NO. 25-CV-00137-SEH-MTS |
| v. § § § | |
| FALL LINE PATENTS, LLC, § § | **JURY TRIAL DEMANDED** |
| Defendant. § § | |

## FALL LINE'S ANSWER TO INSTACART'S COMPLAINT AND COUNTERCLAIMS

Defendant Fall Line Patents LLC ("Fall Line"), by its undersigned attorneys, answers the complaint of Plaintiff Maplebear, Inc. d/b/a Instacart ("Instacart"), alleging, based on its own knowledge as to itself and its own actions and based on information and belief as to all other matters, as follows:

### Cause Of Action

1.  Admitted that Instacart seeks a declaration that it does not infringe any claim of U.S. Patent No. 9,454,748 ("the 748 Patent"). Denied that Instacart is entitled to that declaration. Denied that Instacart seeks a declaration regarding the enforceability of any claim of the 748 Patent. Otherwise denied.

### The Parties

2.  Admitted.

3.     Fall Line lacks information sufficient to admit or deny these allegations and on that basis denies them.

## Jurisdiction And Venue

4.     Admitted that Instacart's action arises under the Declaratory Judgment Act and the Patent Laws of the United States.  Otherwise denied.

5.     Admitted that this Court has subject matter jurisdiction over Instacart's claim for a declaratory judgment.  Otherwise denied.

6.     Admitted the Court has personal jurisdiction over Fall Line, that Fall Line is a limited liability company formed under the laws of Oklahoma, and that Fall Line has its principal place of business in Tulsa, Oklahoma.  Otherwise denied.

7.     Admitted.

## Factual Background

8.     Fall Line lacks information sufficient to admit or deny these allegations and on that basis denies them.

9.     Denied.

10.    Admitted.

11.    Admitted.

12.    Admitted.

13. Fall Line denies the first sentence of the allegations contained in this paragraph because it does not accurately describe Fall Line's infringement allegations. Fall Line lacks information sufficient to admit or deny the remaining allegations of this paragraph and on that basis denies them.

14. Admitted that an actual case or controversy between Instacart and Fall Line exists regarding whether Instacart's technology and products infringe the 748 Patent. Otherwise denied.

15. Fall Line lacks information sufficient to admit or deny these allegations and on that basis denies them.

### Count I—Declaration Of Non-Infringement Of The 748 Patent

16. Fall line repeats and alleges every response in the foregoing paragraphs as if fully set forth herein.

17. Denied.

18. Denied.

19. Denied.

### Instacart's Prayer For Relief

20. Fall Line denies that Instacart is entitled to any of the relief for which it prays.

### Jury Demand

21. Fall Line hereby requests a trial by jury on all issues so triable by right.

## COUNTERCLAIMS

Fall Line files these counterclaims against Instacart alleging, based on its own knowledge as to itself and its own actions and based on information and belief as to all other matters, as follows:

### Parties

22. Counterclaim-plaintiff Fall Line is a limited liability company formed under the laws of the State of Oklahoma, with its principal place of business at 2121 South Yorktown, #1103, Tulsa, Oklahoma, 74114.

23. Counterclaim-defendant Instacart is a corporation organized and existing under the laws of the state of Delaware.

### Jurisdiction And Venue

24. The Court has subject matter jurisdiction over these counterclaims because they arise under the United States patent laws.

25. Personal jurisdiction exists, and venue is proper in this district, for these counterclaims at least because Instacart filed this action here.

### The Technology

26. The patent-in-suit, U.S. Patent No. 9,454,748 ("the 748 Patent"), titled "System and Method for Data Management," teaches methods for managing and collecting data from a remote computing device. Specifically, the invention addresses the need to collect location-specific information on a variety of hardware

4

and software platforms without the need to create separate and individualized software for each of the numerous manufacturers of remote computing devices. The inventor of the 748 Patent, as well as its parent applications and patents, developed systems and methods to enable developers to create a single application that could function on numerous models of remote computing devices, without the need to create separate software for each model, as was often required in the prior art.

## Count I—Direct Infringement

27.     On September 27, 2016, the 748 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "System and Method for Data Management."

28.     Fall Line is the owner of the 748 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the 748 Patent against infringers, and to collect damages for all relevant times.

29.     Instacart made, had made, used, imported, provided, supplied, distributed, sold, and/or offered products and/or services by which the Instacart mobile app and/or the mobile apps of retail partners, in conjunction with Instacart servers, create and execute location-specific questionnaires to collect responses from users.

5

30. By doing so, Instacart has directly infringed (literally and/or under the doctrine of equivalents) Claim 7 of the 748 Patent.

31. Fall Line has been damaged as a result of the infringing conduct by Instacart. Thus, Instacart is liable to Fall Line in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

32. Fall Line and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the 748 Patent.

## Additional Allegations Regarding Direct Infringement

33. Instacart has also directly infringed the 748 Patent by exercising direction or control over the use of the accused products by retail partners and/or end-user customers. Instacart puts the accused products into service and conditions the benefit received by retail partners and/or end-user customers from using the accused products (which utilize the methods taught by the 748 Patent). Use of the accused products in such manner infringes the 748 Patent.

## Additional Allegations Regarding Indirect Infringement

34. Instacart has also indirectly infringed the 748 Patent by inducing others to directly infringe the 748 Patent. Instacart has induced retail partners as

well as mobile application end-users to directly infringe (literally and/or under the doctrine of equivalents) the 748 Patent by using the accused products. Instacart took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringes Claim 7 of the 748 Patent. Such steps by Instacart included, among other things, advising or directing customers and/or end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions to use the accused products in an infringing manner. Instacart performed these steps, which constitute induced infringement with the knowledge of the 748 Patent and with the knowledge that the induced acts constitute infringement. Instacart was aware that the normal and customary use of the accused products would infringe the 748 Patent.

35. Instacart has also indirectly infringed by contributing to the infringement of the 748 Patent. Instacart has contributed to the direct infringement of the 748 Patent by retail partners and/or the end-users of the accused products. The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe Claim 7 of the 748 Patent. The special features constitute a material part of the

invention of one or more of the claims of the 748 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

36. Instacart has knowledge of the 748 Patent at least as of the date when it was notified of the filing of the actions against Sprouts and Aldi.

37. Furthermore, on information and belief, Instacart has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Fall Line's patent rights.

38. Instacart's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Instacart. Instacart's direct and indirect infringement of the 748 Patent was willful, intentional, deliberate, and/or in conscious disregard of Fall Line's rights under the patent.

39. Fall Line has been damaged as a result of the infringing conduct by Instacart alleged above. Thus, Instacart is liable to Fall Line in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Additional Allegations Regarding Patentability**

40. The 748 Patent is directed to improving data management on remote

handheld computers that are "loosely networked" to servers for the purpose of collecting information in the field. 748 Patent at 1:19-24; 1:33-40.

41. In 2002, when the parent provisional application for the 748 Patent was filed, the then-existing remote handheld computers suffered from many technical problems. These included:

- operating systems for the remote handheld computers "mimic[ed] those of desktop and laptop systems, despite the fact that handheld devices are typically used in a different manner and have radically different resources," *see, e.g.,* 748 Patent at 1:45-48;

- compatibility issues prevented applications developed for one remote computing device from being used on a different remote computing device, *id.* at 1:49-2:2;

- compatibility issues prevented data from being shared across different devices, *id.* at 2:3-12;

- prior-art approaches to overcoming compatibility issues, including using i-code and tokens and layer to execute them, lacked optimization, and required a high level of programming skill to create, *id.* at 2:13-31;

- prior-art systems typically required "custom" programs "tailored for a specific customer" at high cost, *id.* at 2:41-64;

- prior-art systems required custom development and compilation for each separate type of device, *id.* at 3:1-7;

- prior-art systems required an entire program to be recompiled and reinstalled to implement a single change in the program, *id.* at 3:7-10;

- networks available to devices in the field were not always available, *id.* at 3:64-67;

9

- networks available to devices in the field have limited bandwidth, *id*. at 3:67-4:1; and

- prior-art approaches to dealing with intermittent networks, including store-and-forward and real-time transmission, were not satisfactory, *id*. at 4:3-17.

42. It is these technical problems with the prior-art remote handheld computers that the inventor of the 748 Patent sought to address.

43. Regarding the compatibility issues, the then-existing practice was "for a business to commission the authoring of a custom program aimed at a particular need." *Id*. at 2:57-59. What that means is that, prior to the inventions disclosed in the 748 Patent, when the program running on the remote handheld computer needed changing, developers must first make the change on a development system and then re-transfer the entire program to each target device. *Id*. at 3:7-10. If more than one type of device is used, that process must be completed for each type of device. *Id.*

44. To address this problem, the inventor of the 748 Patent used device-independent (or device-indifferent) tokens and the creation of tokenized questionnaires. By tokenizing a questionnaire, it can be executed on a remote handheld computer without the need to recompile and reload a software package onto the handheld computer. *Id*. at 5:21-32. This means that changes, including incremental changes, can be made automatically and without the need to reload the entire program. *Id*. at 5:26-32. The use of device-independent tokens also allows

the questionnaire to be used on different types of devices without the need to create a custom program for each device type. *Id.* at 4:66-5:2. The application of tokenizing in the context of the methods claimed by the 748 Patent is an advance over the prior art, and was not well-understood, routine, and conventional. This advance is reflected in the claims of the patents-in-suit.

45. Additionally, to handle the loose nature of networks that are available to handheld devices, the 748 Patent explains that "if any communication connection is available between devices wishing to communicate, network transmissions occur normally, in real time." *Id*. at 5:7-10. On the other hand, "[i]f a network connection is unavailable at that moment, the information is temporarily stored in the device and later transmitted when the connection is restored." *Id*. at 5:10-12. This approach, along with the use of device-independent tokens, enables a reduction to the "load on a communication channel of finite bandwidth." *Id.* at 4:36-39. This connection scheme represented an advance over the prior art and was not well-understood, routine, and conventional. It is reflected in the claims of the patents-in-suit.

46. In addition, the 748 Patent teaches using an integral GPS device for multiple purposes, including causing location information to be automatically collected by the executing questionnaire, creating questionnaires that are customized for particular locations, and executing questionnaires when the remote

11

computing devices is at certain locations. *Id.* at 5:33-48; 8:56- 61; 10:55-65. This use of an integral GPS device represented an advance over the prior art and was not well-understood, routine, and conventional. Specifically, it was unconventional to use an integrated GPS unit to automate the collection and use of location identifying information for purposes of customizing a questionnaire. It was also unconventional to automatically collect location identifying information for transmission to a server so that questions customized for that location could be generated and sent back to the handheld device. This unconventional technology is reflected in the claims of the patent-in-suit, including Claim 7. *See, e.g., Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*, Case No. 6:18-cv-00407-RWS, Dkt. No. 151 (E.D. Tex.) [5/25/21 Order] (denying motion to dismiss because Fall Line had plausibly alleged inventive concepts); Dkt. No. 348 [7/11/23 Public Version of 6/29/23 Order] (granting Fall Line's motion for summary judgment of validity under section 101).

## Jury Demand

Fall Line hereby requests a trial by jury on all issues so triable by right.

## Prayer For Relief

Fall Line requests that the Court find in its favor and against Instacart, and that the Court grant Fall Line the following relief:

a. Judgment that one or more claims of the 748 Patent have been

infringed, either literally and/or under the doctrine of equivalents, by Instacart and/or all others acting in concert therewith;

      b.      Judgment that Instacart accounts for and pays to Fall Line all damages to and costs incurred by Fall Line because of Instacart's infringing activities and other conduct complained of herein, including an award of all increased damages to which Fall Line is entitled under 35 U.S.C. § 284;

      c.      That Fall Line be granted pre-judgment and post-judgment interest on the damages caused by Instacart's infringing activities and other conduct complained of herein;

      d.      That this Court declare this an exceptional case and award Fall Line its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

      e.      That Fall Line be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: May 30, 2025                Respectfully submitted,

*/s/ Matthew J. Antonelli*
Matthew J. Antonelli (*pro hac vice*)
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington (*pro hac vice*)
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr. (*pro hac vice*)
Texas Bar No. 24051428
larry@ahtlawfirm.com
Rehan M. Safiullah (*pro hac vice*)
Texas Bar No. 24066017
rehan@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Michael S. Linscott, OBA No. 17266
David W. Wulfers, OBA No. 9926
DOERNER SAUNDERS DANIEL &
ANDERSON, L.L.P.
Two West Second Street, Suite 700
Tulsa, OK 74103-3117
Telephone: 918.591.5288
Facsimile: 918.925.5288
Email: mlinscott@dsda.com
         dwulfers@dsda.com

*Attorneys for Fall Line Patents, LLC*

## **CERTIFICATE OF SERVICE**

 I hereby certify that on the 30th day of May 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

          */s/ Matthew Antonelli*
          Matthew Antonelli