# EXHIBIT 13

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

FALL LINE PATENTS, LLC,

     *Plaintiff,*

     v.

SPROUTS FARMERS MARKET, INC. and
SFM, LLC D/B/A SF MARKETS, LLC,

     *Defendants.*

Civil Action No. 5:24-cv-00182-RWS

**JURY TRIAL DEMANDED**

## SPROUTS DEFENDANTS' OPPOSED MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF OKLAHOMA

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ......................................................................................................... 1

III.    SUMMARY OF ARGUMENT ................................................................................ 3

IV.    LEGAL STANDARD ............................................................................................... 3

V.     The Customer Suit Exception Applies ................................................................... 6

       A.    Instacart Developed and Operates the Accused Functionality in the Sprouts Mobile Application ................................................................... 6

       B.    Infringement in the Sprouts Case Will be Resolved by the Decision in the Instacart Action ............................................................................. 9

       C.    Instacart is the Only Source of Allegedly Infringing Functionality in the Sprouts Mobile Application .................................................. 9

VI.    The Suit Against Sprouts Should be Severed and Transferred or, in the Alternative, Stayed ...................................................................................................... 10

       A.    Private and Public Factors Favor Transferring This Case to the Northern District of Oklahoma .................................................................. 11

       B.    Alternatively, the Court Should Sever and Stay the Sprouts Case ....................... 14

VII.   CONCLUSION ......................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Capital Sec. Sys. Inc. v. ABNB Federal Credit Union*,
    No. 2:14-cv-00265, 2014 WL 5334270 (E.D. Va. Oct. 20, 2014) ........................... 5, 6, 11, 12

*Dali Wireless, Inc. v. Ericsson Inc.*,
    No. 6:22-CV-01313-ADA, 2023 U.S. Dist. LEXIS 15774 (W.D. Tex. Jan. 30, 2023) ............. 5

*Dodots Licensing Sols. LLC v. Samsung Elecs. Co.*,
    No. 6:22-CV-00535-ADA, 2023 U.S. Dist. LEXIS 125803 (W.D. Tex. July 20, 2023)........... 5

*Flygrip, Inc. v. Walmart Inc.*,
    No. 6:21-cv-01082-ADA, 2022 U.S. Dist. LEXIS 115655 (W.D. Tex. June 29, 2022)........... 5

*Genentech v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ................................................................................ 3

*Glob. Equity Mgmt. (SA) Pty., Ltd. v. Ericsson, Inc.*,
    No. 2:16-cv-00618, 2017 WL 365398 (E.D. Tex. Jan. 25, 2017) .................................... passim

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014) .......................................................................... 4, 12

*IP Innovation L.L.C. v. Dell Comput. Corp.*,
    No. 2:02-cv-295-TJW, D.I. 25 (E.D. Tex. April 22, 2003) ............................................ 4, 6, 12

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ........................................................................... passim

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952) ............................................................................................... 3

*Lighthouse Consulting Grp., LLC v. Truist Bank*,
    No. 2:19-cv-00340, 2020 WL 6781977 (E.D. Tex. April 6, 2020) .................................. passim

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014) ................................................................................ 7

*Network Sys. Techs., LLC v. Samsung Elecs. Co.*,
    No. 2:22-cv-00481-JRG, 2023 U.S. Dist. LEXIS 203583 (E.D. Tex. Nov. 14, 2023) ............. 5

*Network Sys. Techs., LLC v. Texas Instruments Inc.*,
    No. 2:22-cv-00482-RWS, ECF No. 96 (E.D. Tex. Sept. 26, 2023) .......................................... 5

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
    279 F. Supp. 2d 554 (D. Del. 2003)........................................................................ 12

*Shifferaw v. Emson USA*,
No. 2:09-cv-00054, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ............................ 11, 12, 13

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
657 F.3d 1349 (Fed. Cir. 2011) .................................................................... 4, 5, 9, 11

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*,
458 F.3d 1335 (Fed. Cir. 2006) ................................................................................. 5

*Victaulic Co. v. Romar Supply, Inc.*,
No. 3:13-CV-02760-K, 2013 WL 6027745 (N.D. Tex. Nov. 14, 2013) ................................. 12

*Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*,
No. 2:21-cv-0453, 2023 WL 318466 (E.D. Tex. Jan. 19, 2023) ...................................... passim

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................ 3

**Rules**

Fed. R. Civ. P. 21 .................................................................................................. 3

**Other Authorities**

Manual for Complex Litigation, Third, § 33.63 (Fed. Jud. Center 2003) ...................................... 4

## STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO LOCAL RULE 7(a)(1)

1. Whether, pursuant to the customer suit exception or its inherent power, the Court should transfer this case in which Plaintiff Fall Line Patents LLC alleges that customer Defendants Sprouts Farmers Markets, Inc., and SFM, LLC have infringed U.S. Patent No. 9,454,748 to the Northern District of Oklahoma, in favor of a pending case in which the supplier Maplebear, Inc., d/b/a Instacart seeks a declaration that its supplied functionality does not infringe the asserted patent.

2. Alternatively, whether, pursuant to the customer suit exception or its inherent power, the Court should stay this case in which Plaintiff Fall Line Patents LLC alleges that customer Defendants Sprouts Farmers Markets, Inc., and SFM, LLC have infringed U.S. Patent No. 9,454,748 in favor of a pending case in the Northern District of Oklahoma in which the supplier Maplebear, Inc., d/b/a Instacart seeks a declaration that its supplied functionality does not infringe the asserted patent.

## I.   INTRODUCTION

Plaintiff Fall Line Patents, LLC has brought this case against the wrong party. Although it sued Defendants Sprouts Farmers Market, Inc. and SFM, LLC D/B/A SF Markets, LLC (collectively, "Sprouts"), the true focus of its infringement claims should be Maplebear, Inc., d/b/a Instacart ("Instacart"), the creator and operator of the mobile application functionality at issue. Instacart recently filed a declaratory judgment action against Fall Line in the Northern District of Oklahoma[1] (where Fall Line resides) ("Instacart Action") to address these very claims.

Instacart's declaratory judgment action is the dominant action under the "customer-suit exception." Sprouts agrees to abide by the outcome of that case. Continuing this litigation against Sprouts would be inefficient, duplicative, and unnecessary. For these reasons, Sprouts respectfully moves to sever and transfer this case to the Northern District of Oklahoma. At a minimum, the case against the Sprouts defendants should be stayed pending resolution of the Instacart Action.

## II.   BACKGROUND

Sprouts is a grocery retailer with locations throughout the United States, focusing on natural and organic foods. Sprouts partners with Instacart for online ordering, fulfillment, delivery, and pickup services. As part of this partnership, Instacart designed and maintains the Sprouts mobile application, which bridges the gap between Sprouts's retail catalog and Instacart's ordering and fulfillment services.

Fall Line is a patent assertion entity with a single stream of revenue: filing patent infringement lawsuits. Fall Line owns U.S. Patent No. 9,454,748 ("the '748 Patent"), directed at systems and methods for data management. In November 2024, Fall Line sued Sprouts and other

---

[1] Captioned *Maplebear, Inc., d/b/a Instacart v. Fall Line Patents, LLC*, Case No. 4:25-cv-00137 (N.D. Okla. March 25, 2025).

1

defendants for alleged infringement of the '748 patent. Dkt. 1, ¶ 11. As detailed in Sprouts' pending Motion to Dismiss, Fall Line's complaint failed to provide a proper basis for its claims.  Dkt 17. On March 13, 2025, Fall Line served Sprouts and other defendants with its Preliminary Infringement Contentions, making clear that the allegations relate to Instacart's technology. Ex. 1, Pl.'s Initial Disclosures, p. 6.

Fall Line asserts that the Sprouts mobile application infringes the '748 Patent.  Dkt 1 ¶¶ 11, 12.  Fall Line asserts that the Sprouts mobile application "create[s] and execute[s] a location-specific questionnaire to collect responses from users."  Dkt. 1 ¶ 11.  However, Instacart—not Sprouts—is the true party responsible for the accused technology.  Instacart designed, operates, and maintains the Sprouts mobile application on behalf of Sprouts as a "white-label" application, controlling all aspects of the functionality that Fall Line accuses of infringement.  Instacart Decl. Ex. 3 ¶¶ 4-6.  The "Sprouts servers" which Fall Line alleges are used alongside the Sprouts mobile application (Dkt. 1, ¶ 11) are actually Instacart servers.  Ex. 3 ¶ 4.  Instacart's role is evidenced throughout the application, and further identified in Fall Line's Preliminary Infringement Contentions to Sprouts. Ex. 1, Claim Chart for U.S. Patent No. 9,454,748, cit. 28 ("By placing your order, you agree to be bound by **Instacart's Terms of Service and Instacart's Privacy Policy**") (emphasis added); *see, e.g.,* cits. 7-9, 25, 38-39 (showing Instacart URLs called by Sprouts mobile application).

In recognition that Instacart is the true defendant, Sprouts agrees to be bound by the outcome of the Instacart Action. Further, Instacart has other retail partners which either have white-label applications controlled by Instacart or which implement the Instacart APIs to the same effect.

Ex. 3 ¶ 7. One of these partners, ALDI Inc. and ALDI (Texas) L.L.C. (collectively, "ALDI"), is a defendant in the same docket as Sprouts.[2] Dkt. 19.

Confronted with Fall Line's complaint against some of its customers, along with Fall Line's allegations that Instacart's technology and servers infringe the '748 Patent, Instacart filed a declaratory judgment action complaint in the Northern District of Oklahoma on March 25, 2025. Ex. 2. Specifically, Instacart requested a declaration that its products do not infringe the '748 Patent. Continuing with the case against Sprouts would be an inefficient use of the Court's resources. All of the infringement allegations pled by Fall Line against Sprouts will be resolved by the Instacart Action.

## III. SUMMARY OF ARGUMENT

Because Instacart created and operates the Sprouts mobile application functionality accused of infringement by Fall Line, the present case should be transferred to the Northern District of Oklahoma in favor of the Instacart Action under the "customer-suit exception." Alternatively, the case against Sprouts should be stayed pending resolution of the declaratory judgment action.

## IV. LEGAL STANDARD

As a general rule, when similar cases are filed in one or more courts, priority is given to the first-filed suit. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990); *see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co*., 342 U.S. 180, 184-86 (1952). In such cases, the Court has discretion to sever and transfer cases in favor of the priority suit. *E.g.*, Fed. R. Civ. P. 21; 28 U.S.C. § 1404(a). Exceptions to this "first-to-file" rule are "not rare, and are made when justice or expediency requires." *Genentech v. Eli Lilly & Co*., 998 F.2d 931, 937 (Fed. Cir. 1993).

---

[2] ALDI is likewise filing a motion asking the Court to sever and transfer, or alternatively sever and stay, its respective case, in favor of the Instacart Action.

One such exception is the "customer suit exception," in which courts give priority to a manufacturer's later-filed declaratory judgment action over a plaintiff's earlier infringement suit against the manufacturer's customers. *See*, *e.g.*, *Katz*, 909 F.2d at 1464 ("litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"); *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014) (ordering severance and transfer of Nintendo's suit and staying suits against sellers of Nintendo products); *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) ("courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum"); *Glob. Equity Mgmt. (SA) Pty., Ltd. v. Ericsson, Inc.*, No. 2:16-cv-00618, 2017 WL 365398, at *5-6 (E.D. Tex. Jan. 25, 2017) (hereinafter "GEMSA"); *IP Innovation L.L.C. v. Dell Comput. Corp.*, No. 2:02-cv-295-TJW, D.I. 25, at 3 (E.D. Tex. April 22, 2003) (attached as Ex. 4); *see also* Manual for Complex Litigation, Third, § 33.63 (Fed. Jud. Center 2003).

The customer suit exception promotes fairness and efficiency by enabling the manufacturer to defend its own products, of which it has the greatest knowledge and in which it has the greatest interest. It recognizes that "in reality, the manufacturer is the true defendant in the customer suit" and "must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464; *IP Innovation*, Case No. 2:02-CV-295-TJW, D.I. 25, at 3.

This Court typically evaluates three factors when considering whether to apply the customer suit exception: "(1) whether the customer in the first action is a mere reseller of products manufactured or supplied by the party in the second filed action, (2) whether the customer in the first filed action has agreed to be bound by any decision in the second filed action, and (3) whether

the party in the second filed action is the only source of the allegedly infringing activity or product." *Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*, No. 2:21-cv-0453, 2023 WL 318466, at *2 (E.D. Tex. Jan. 19, 2023)  (*citing Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)); *GEMSA*, 2017 WL 365398, at *5 n. 3.

This Court and others have applied this three-factor test to determine whether a manufacturer's suit is given priority, thus resulting in the customer suit being either stayed or transferred. *See, e.g.*, *Spread Spectrum*, 657 F.3d at 1357 ("Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum"); *Katz*, 909 F.2d at 1464 (affirming district court's action enjoining customer suit pending resolution of manufacturer suit); *Network Sys. Techs., LLC v. Samsung Elecs. Co.*, No. 2:22-cv-00481-JRG, 2023 U.S. Dist. LEXIS 203583, at *9 (E.D. Tex. Nov. 14, 2023); *Network Sys. Techs., LLC v. Texas Instruments Inc.*, No. 2:22-cv-00482-RWS, ECF No. 96 at 3-4, slip op. (E.D. Tex. Sept. 26, 2023) (attached as Ex. 5); *Dodots Licensing Sols. LLC v. Samsung Elecs. Co.*, No. 6:22-CV-00535-ADA, 2023 U.S. Dist. LEXIS 125803, at *5-12 (W.D. Tex. July 20, 2023); *Dali Wireless, Inc. v. Ericsson Inc.*, No. 6:22-CV-01313-ADA, 2023 U.S. Dist. LEXIS 15774, at *7 (W.D. Tex. Jan. 30, 2023); *Flygrip, Inc. v. Walmart Inc.*, No. 6:21-cv-01082-ADA, 2022 U.S. Dist. LEXIS 115655, at *4-5, 9-10 (W.D. Tex. June 29, 2022); *Capital Sec. Sys. Inc. v. ABNB Federal Credit Union*, No. 2:14-cv-00265, 2014 WL 5334270, at *6 (E.D. Va. Oct. 20, 2014) ("transfer of the [customer actions] minimizes the possibility of inconsistent judgements, not only between manufacturer and customer, but also between similarly situated customers"); *GEMSA*, 2017 WL 365398, *10.

When the customer suit exception applies, as here, courts routinely either transfer the customer suit to the venue of the manufacturer's action or stay the customer suit pending resolution

of the manufacturer's action. This approach recognizes that "[p]atent law provides that a [manufacturer suit] ordinarily dominates a suit on the same patent against a customer", and that "[t]hese rules determine the outcome of [a] defendant's motion to transfer [or stay]." *IP Innovation*, Case No. 2:02-CV-295-TJW, D.I. 25, at 1. Courts typically choose between transfer and stay based on case-specific considerations: the stage of the proceedings, the relationship between the cases, judicial economy, and others. *Compare Capital Sec. Sys.*, 2014 WL 5334270, at *6 (granting customer-defendant's motion to transfer because, "[c]onsolidated under the roof of a single courthouse, the suits against the customer [] can be handled uniformly, and then quickly dealt with once the manufacturer suit is resolved.") with *Lighthouse Consulting Grp., LLC v. Truist Bank*, No. 2:19-cv-00340, 2020 WL 6781977, at *2 (E.D. Tex. April 6, 2020) (favoring stay when patentee could seek discovery more efficiently from manufacturer).

As demonstrated below, all three factors for applying the customer suit exception are satisfied, and while either remedy would serve judicial economy, transfer is particularly appropriate given the early stage of this litigation, and the significant connection between Fall Line, the patent-in-suit, and the Northern District of Oklahoma.

## V. The Customer Suit Exception Applies

The customer suit exception applies to the lawsuit against Sprouts. Instacart developed and operates the accused functionality, Sprouts will be bound by any decision in the declaratory judgment action, and Instacart is the only source of Sprouts's allegedly infringing activity.

### A. Instacart Developed and Operates the Accused Functionality in the Sprouts Mobile Application

Courts "routinely" consider software implementers as "customers" under the customer-suit exception, with the software producer as the manufacturer. *See*, *e.g.*, *GEMSA*, 2017 WL 365398, at *6; *In re Google*, 588 F. App'x at 990; *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d

899, 905 (Fed. Cir. 2014) (finding that Microsoft and SAP had standing when infringement claim charts pointed exclusively to functionality offered by Microsoft and SAP). To determine whether a software implementer is a customer under the customer-suit exception, courts have applied the same analysis as to physical components or methods. *Compare, e.g.*, *Microsoft*, 755 F.3d at 907 (noting that Microsoft developed, sold, and provided instructions for the accused functionality), *with Westport*, 2023 WL 318466, at \*3 (finding Ford was a "mere reseller" because Ford implemented the accused fuel injector in cars, but did not modify or customize the injector) *and Katz*, 909 F.2d at 1464 (Fed. Cir. 1990) (affirming that customer suit exception applied to retailer selling products from manufacturer).

Here, Instacart provides and operates the Sprouts mobile application as a "white label" application. Ex. 3 ¶ 4. Similar to *Microsoft* and *GEMSA*, the alleged infringing functionality is provided by the manufacturer. Ex. 1, Claim Chart, cit. 28 ("…you agree to be bound by Instacart's Terms of Service," showing that Instacart provided cited functionality); *Microsoft*, 755 F.3d at 905; *GEMSA*, 2017 WL 365398, at \*4 (agreeing with manufacturer that "Amazon's technology—not the technology provided by, or specific to, any of the disparate Amazon customers [GEMSA] has sued" was the alleged infringing technology). Any alleged infringing communications from the Sprouts mobile application go to Instacart servers, not Sprouts servers. Ex. 3 ¶¶ 4-6. Instacart controls any functionality which, as alleged by Fall Line, "create[s] and execute[s] a location-specific questionnaire." Dkt. 1 ¶ 11; Ex. 3 ¶ 4.

Instacart's role in the Sprouts mobile application is evident from Fall Line's Preliminary Infringement Contentions. *See, e.g.,* Ex. 1, Claim Chart, cits. 7-9, 28, 48, 61, 143, 149. When Fall Line contends that a Sprouts URL response infringes, an Instacart URL is frequently just before or after the highlighted Sprouts URL. *See, e.g., id.* cit. 7-9 (showing an Instacart domain before

7

the highlighted Sprouts domain). For each subpart of the asserted claim 7, Fall Line's contentions show an Instacart domain. *See, e.g., id.* cits. 38 (subpart (a)); 59 (subpart (b)); 83 (subpart (c)); 104 (subpart (d)); 128 (subpart (e)), *and* 159 (subpart (f)). Where Fall Line contends that "information flows from the user's phone to Sprouts Farmers Market's servers," in the contentions for subpart (f), the checkout page in the Sprouts mobile application identifies Instacart. *Id.*, Claim Chart, p. 192; cit. 179 (image of Sprouts mobile application checkout page, stating that "By placing your order, you agreed to be bound by **Instacart's Terms of Service and Instacart's Privacy Policy**…") (emphasis added). Multiple images contain offers for Instacart+, a service offered by Instacart. *See, e.g., id.* cit. 28, 143, 179.

Instacart also possesses the codebase, servers, engineers, and any other institutional knowledge needed to dispute Fall Line's infringement allegations. Ex. 3 ¶ 4. By contrast, Sprouts does not control the necessary technical documents or potential witnesses that would be needed to respond fully to Fall Line's allegations. *Id.* ¶ 5; *see, e.g., GEMSA*, 2017 WL 365398, at *9 (prioritizing Amazon's suit when Amazon "maintain[ed] offices, employees, and data centers that provide, support, and create the accused technology"); *In re Google*, 588 F. App'x at 991 (ordering transfer to Google's declaratory judgment venue based on Google's declaration that records and witnesses related to development were in that venue); *Lighthouse*, 2020 WL 6781977, at *2 (favoring stay when patentee could seek discovery more efficiently from manufacturer).

Because Sprouts did not design the Sprouts mobile application, does not operate the corresponding servers, and does not control the technical information necessary to determine infringement, the first factor strongly weighs in support of the customer suit exception.

### B. Infringement in the Sprouts Case Will be Resolved by the Decision in the Instacart Action

The second factor also favors application of the customer suit exception because Sprouts agrees that it will be bound by the outcome of the Instacart Action. *Westport*, 2023 WL 318466, at *3 (finding that customer suit exception applied when customer agreed to be bound by outcome of declaratory judgment); *see also Spread Spectrum*, 657 F.3d at 1358 (citing *Katz,* 909 F.2d at 1464) ("the manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay [or transfer] of the customer suits.").

Furthermore, because Sprouts does not provide the functionality of the Sprouts mobile application, including any alleged "creat[ing] and execut[ing] a location-specific questionnaire," the infringement issues in the present case will be disposed of by the Instacart Action. Dkt. 1 ¶ 11; Ex. 3 ¶¶ 4-6; *see Westport*, 2023 WL 318466, at *3 (finding this factor favored customer when customer only installed the accused product, but did not modify or customize it); *GEMSA*, 2017 WL 365398, at *10 (noting that patentee solely highlighted Amazon products, not any implementation specific to any customer-defendant); *Lighthouse*, 2020 WL 6781977, at *2 (customer-defendants licensed accused mobile check technology from manufacturer).

### C. Instacart is the Only Source of Allegedly Infringing Functionality in the Sprouts Mobile Application

The third factor also favors the customer-suit exception because Instacart is the sole source of the allegedly infringing technology in the Sprouts case and provides the allegedly infringing technology to other partners. Dkt. 1, ¶¶ 11, 12; Ex. 3 ¶¶ 6-7; Ex. 1, Claim Chart, cit. 28; *Lighthouse*, 2020 WL 6781977, at *2 (staying when manufacturer was "only supplier of this technology to [customer-defendants]"). A manufacturer like Instacart, whose product line is at risk, has a far greater incentive than its customers, who can use a different product, to refute patent infringement

9

claims. *See, e.g., Katz*, 909 F.2d at 1464 ("a manufacturer must protect its customers, either a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products") (*quoting Codex*, 553 F.2d at 737-38); *GEMSA*, 2017 WL 365398, at *10 (Amazon had great interest in resolving infringement allegations for nearly thirty customer-defendants). Additionally, as discussed above, Instacart is better situated to contest the infringement of the patent-in-suit because it has intimate knowledge of the design, operation, and use of the technology at issue. *In re Google*, 588 F. App'x at 990-91; *GEMSA*, 2017 WL 365398, at *4-6; *Lighthouse*, 2020 WL 6781977, at *2 (manufacturer case favored when patentee "will have full access to relevant discovery regarding the accused technology" in manufacturer case).

Moreover, Instacart has supplied the accused functionality to other partners not currently named as defendants by Fall Line. Ex. 3 ¶ 7. Thus, only the Instacart Action can fully and more efficiently answer the allegations of patent infringement posed by Fall Line. The action filed by Fall Line will not. While Fall Line has filed suits against non-Instacart customers, the Instacart Action will resolve the issues of infringement for any customer of Instacart's software. *Id*. Fall Line's pattern of repeatedly bringing infringement suits shows that Instacart's other customers face a risk of future lawsuits. *See GEMSA*, 2017 WL 365398, at *8 (possibility of further patent suits, on top of thirty suits already before the Court, favored stay pending Amazon's declaratory judgment). Instacart is the true defendant, and its request for declaratory judgment should be prioritized over Fall Line's claims against certain of its customers.

## VI. The Suit Against Sprouts Should be Severed and Transferred or, in the Alternative, Stayed

Having established that all three factors strongly favor application of the customer suit exception, the question is now which remedy—transfer or stay—would best serve the interests of justice and judicial economy.

It is well-established that where the customer suit exception applies, courts will stay or transfer "[an] earlier-filed litigation against a customer when a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum*, 657 F.3d at 1357; *Katz*, 909 F.2d at 1464; *Capital Sec. Sys.*, 2014 WL 5334270, at *6 ("transfer of the [customer actions] minimizes the possibility of inconsistent judgements, not only between manufacturer and customer, but also between similarly situated customers"); *GEMSA*, 2017 WL 365398, *10 (staying customer suits "as a matter of judicial efficiency and economy" while transferring Amazon suit).

Given these principles, either transfer or stay would be appropriate, as both options would prevent unnecessary duplication of effort and the possibility of inconsistent judgments. Transfer is particularly appropriate where, as here, the customer case can be consolidated with the manufacturer suit before substantial proceedings have occurred, allowing for resolution in a single forum. Accordingly, Sprouts primarily requests transfer of this case to the Northern District of Oklahoma, where the Instacart Action is pending, or alternatively, a stay pending its resolution.

## A. Private and Public Factors Favor Transferring This Case to the Northern District of Oklahoma

In deciding whether to transfer a case under the customer suit exception, courts often consider both private interests of the parties and public interests such as court congestion and local interests. *See Shifferaw v. Emson USA*, No. 2:09-cv-00054, 2010 WL 1064380, at *2 (E.D. Tex. Mar. 18, 2010) (citations omitted). Both sets of factors support transfer here.

***The Private Interest Factors Support Transfer***. Key private transfer factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Shifferaw*, 2010 WL 1064380, at *2.

11

Factors (1), (2), and (3) all strongly favor the Northern District of Oklahoma because Plaintiff, the original assignee of '748 Patent, the inventor, and the prosecuting firm all reside in or have addresses near Tulsa. *Id.*; *see, e.g.,* Dkt. 1 ¶ 1 (Plaintiff's address in Tulsa); Ex. 6 (the '748 Patent, showing inventor's address near Tulsa); Ex. 7 (original assignee and prosecuting firm residing in Tulsa); Ex. 8 (assignment from MacroSolve, Inc. to Ediche, LLC, also residing in Tulsa); Ex. 9 (assignment from Ediche, LLC to Fall Line).

Factor (4), "all other practical problems that make trial of a case easy, expeditious, and inexpensive," is either neutral or favors transfer. *Shifferaw*, 2010 WL 1064380, at *2. While the Eastern District of Texas is handling other cases in which Fall Line is asserting its patent, Instacart's declaratory judgment action is pending in the Northern District of Oklahoma. It would make the most practical sense for the Sprouts case to be handled in the same venue. *IP Innovation*, Case No. 2:02-CV-295-TJW, D.I. 25 at 4 ("it would be an unnecessary waste of resources for this court to duplicate the efforts of [the court handling the dominant case]."); *Capital Sec. Sys., Inc.*, 2014 WL 5334270, at *6 (granting customer-defendant's motion to transfer because, "[c]onsolidated under the roof of a single courthouse, the suits against the customer [] can be handled uniformly, and then quickly dealt with once the manufacturer suit is resolved."); *Victaulic Co. v. Romar Supply, Inc.*, No. 3:13-CV-02760-K, 2013 WL 6027745 *3 (N.D. Tex. Nov. 14, 2013) (finding that "the appropriate action is to transfer" a customer suit in favor of a manufacturer suit); *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003) (granting customer-defendant's motion to transfer to the venue of second-filed manufacturer's declaratory judgment action); *see also In re Nintendo*, 756 F.3d at 1365-66 ("the customer-suit exception, Rule 21, and § 1404(a) are all designed to facilitate just, convenient, efficient, and less expensive

determination."). Finally, neither Sprouts nor Fall Line have particular ties to Texas, while Fall Line resides in the Northern District of Oklahoma. Dkt. 1 ¶ 1.

***The Public Interest Factors Support Transfer***. The factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Shifferaw*, 2010 WL 1064380, at *2.

Regarding factor (1), court congestion, over 1000 patent cases were filed in the Eastern District of Texas in 2024, with another 306 patent cases filed this year. Ex. 10. In stark contrast, the Instacart Action is the sole patent case filed in the Northern District of Oklahoma in 2025, with three filed last year. Ex. 11. According to Lex Machina statistics, over the last ten years, the median time to trial between the two districts is not appreciably different—the Northern District of Oklahoma has a median time to trial of 771 days, while the median time to trial in the Eastern District of Texas is 613 days. Ex. 12.

Factor (2), considering "the local interest in having localized controversies decided at home" (*Shifferaw*, 2010 WL 1064380 *2), also strongly favors transfer. Fall Line has not pled any facts local to Texas, but resides in the Northern District of Oklahoma. Dkt 1 ¶ 1.

Factor (3), "the familiarity of the forum with the law that will govern the case" is neutral–the federal courts in Texas and Oklahoma are familiar with U.S. patent law. *Shifferaw*, 2010 WL 1064380 *2.

Factor (4), "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law," is neutral or favors transfer. Shifferaw, 2010 WL 1064380 *2. There are no conflict of law issues or foreign law here. The Northern District of Oklahoma will be deciding the

Instacart Action, which should be prioritized over the Sprouts case. Thus, to the extent there is the possibility for any conflict between cases, any such conflict would be resolved by transferring the Sprouts case.

On balance, the public interest factors either favor transfer or are neutral, with none weighing against transfer. Because both the public and private factors favor a transfer, this case should be severed and transferred to the Northern District of Oklahoma.

### B. Alternatively, the Court Should Sever and Stay the Sprouts Case

Alternatively, should this Court decline to transfer the Sprouts case, the Court should sever and stay the Sprouts case pending the outcome of the Instacart Action. In deciding whether to stay a customer suit, this Court considers "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Lighthouse*, 2020 WL 6781977, at *2 (internal citations omitted). These all favor a stay.

First, Fall Line will not be unduly prejudiced by a stay. As discussed above, Instacart is the sole provider of the accused technology. Ex. 3 ¶¶ 4-6. Like the *Lighthouse* patentee, Fall Line "will have full access to relevant discovery regarding the accused technology directly from the developer and supplier," i.e., Instacart. 2020 WL 6781977, at *2; *see also Westport*, 2023 WL 318466, at *3 ("discovery directly from [manufacturer] Bosch will likely yield better evidence because Bosch likely has greater access to evidence regarding the functionality of the accused device than would any of its customers"). Furthermore, Fall Line resides in the Northern District of Oklahoma. Fall Line will not suffer prejudice by changing venue to its home district.

Second, a stay would simplify the issues in this suit. Sprouts agrees to be bound by the outcome of the Instacart Action, which the Court has frequently found favors a stay. *Lighthouse*, 2020 WL 6781977, at *2; *Westport*, 2023 WL 318466, at *3. The question of infringement for

the Instacart products will be decided in the declaratory judgment case involving the party, Instacart, with the most relevant information and interest in litigating the issue.  It would not have to be decided by this Court at all.

Third, the Sprouts case is still in the early stages. Sprouts has not yet filed an answer in light of its motion to dismiss, which is still pending before this Court. Dkt. 17. Should the Court deny Sprouts' motion to dismiss, the trial date is still more than a year away, and discovery has only just opened. Dkt. 69 (setting trial date for July 2026). Additionally, Fall Line served its Preliminary Infringement Contentions on March 13, 2025, not even three weeks ago. Ex. 1, Pl.'s Initial Disclosures, p. 6.  The Court has favored stays when customer-defendants filed early in the case. *Westport*, 2023 WL 346807, at *4 (granting stay when motion filed prior to scheduling conference); *Lighthouse*, 2020 WL 6781977, at *2 (granting stay when trial date is more than a year away).

Because all three stay factors strongly favor Sprouts, if the Court declines to transfer this case, it should stay this action pending resolution of the Instacart Action.

## VII.   CONCLUSION

For the foregoing reasons, Sprouts respectfully requests that the Court sever Fall Line's claims against it and transfer those claims to the Northern District of Oklahoma, where Instacart has filed a declaratory judgment against Fall Line. Alternatively, Sprouts respectfully requests that the Court sever and stay Fall Line's claims against it, pending the outcome of Instacart's declaratory judgment action.

Date: April 2, 2025                          Respectfully submitted,

                                             /s/ John R. Hutchins
                                             _____
                                             Michael C. Smith
                                             SCHEEF & STONE, LLP
                                             State Bar No. 18650410
                                             113 East Austin Street
                                             Marshall, Texas 75670
                                             Office: (903) 938-8900
                                             michael.smith@solidcounsel.com

                                             John R. Hutchins
                                             BANNER & WITCOFF, LTD.
                                             State Bar No. 456749 (DC)
                                             1100 13th St., NW, Suite 1200
                                             Washington, DC 20005
                                             Office: (202) 824-3147
                                             jhutchins@bannerwitcoff.com

                                             Paul T. Qualey
                                             BANNER & WITCOFF, LTD.
                                             State Bar No. 481106 (DC)
                                             1100 13th St., NW, Suite 1200
                                             Washington, DC 20005
                                             Office: (202) 824-3120
                                             pqualey@bannerwitcoff.com

                                             Chunhsi Andy Mu
                                             BANNER & WITCOFF, LTD.
                                             State Bar No. 500784 (DC)
                                             1100 13th St., NW, Suite 1200
                                             Washington, DC 20005
                                             Office: (202) 824-3156
                                             amu@bannerwitcoff.com

                                             Attorneys for Defendants, Sprouts Farmers Market,
                                             Inc. and SFM, LLC d/b/a SF Markets, LLC

## CERTIFICATE OF SERVICE

I certify that on April 2, 2025, a true and accurate copy of the foregoing was filed electronically with the Court's CM/ECF system, which will send notification to all attorneys registered to receive service. Parties may access this filing through the Court's electronic filing system.

/s/ John R. Hutchins
John R. Hutchins

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), the undersigned certifies that counsel for the parties (John Hutchins for Sprouts and Matthew Antonelli for Fall Line) conferred about this motion by telephone on March 27, 2025.  As described in the motion above, Sprouts and Fall Line are conclusively at an impasse, leaving an open issue for the Court to resolve.

/s/ John R. Hutchins
John R. Hutchins

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| FALL LINE PATENTS, LLC,<br><br>    *Plaintiff,*<br><br>        v.<br><br>SPROUTS FARMERS MARKET, INC. and<br>SFM, LLC D/B/A SF MARKETS, LLC,<br><br>    *Defendants.* | Civil Action No. 5:24-cv-00182-RWS |

**DECLARATION OF STEPHEN MUNDAY IN SUPPORT OF SPROUTS
DEFENDANTS' OPPOSED MOTION TO TRANSFER TO
THE NORTHERN DISTRICT OF OKLAHOMA**

I, Stephen Munday, upon oath depose and say:

1. I am currently a Staff Software Engineer for Maplebear, Inc., d/b/a Instacart ("Instacart"), 50 Beale St., Suite 600, San Francisco, California 94105. I have been employed by Instacart since November 2019.

2. I have reviewed the November 2024 complaint filed by plaintiff Fall Line Patents, LLC ("Fall Line") against Sprouts Farmers Market, Inc. and SFM, LLC d/b/a SF Markets, LLC (collectively, "Sprouts"), and am generally aware of the facts and circumstances surrounding this case. I also have knowledge regarding Instacart's mobile grocery application products, including Instacart's "white-label" mobile applications and Instacart's mobile application programming interface ("API"), and their relationship to Sprouts' mobile application. I make this declaration based on

1

Doc ID: 3575af13be2e93ebc791d5d17908addd8cd966fc

matters within my own personal knowledge or that I have been reliably informed thereon. If called as a witness, I could and would competently testify on the matters set forth herein.

3. Fall Line's November 2024 complaint identifies "the Sprouts mobile app that, in conjunction with Sprouts servers, create and executed a location-specific questionnaire to collect responses from users." I understand that the Sprouts mobile app is accused of infringing claim 7 of U.S. Patent No. 9,454,748 ("the '748 patent").

4. Sprouts does not, however, design, operate, or maintain "the Sprouts mobile app" identified by Fall Line. Instead, Sprouts licenses and utilizes a mobile application designed, developed, operated, maintained, and sold by Instacart as a "white-label" application under the Sprouts brand. Additionally, the "Sprouts servers" identified by Fall Line and associated with the Sprouts mobile app are in fact primarily servers maintained and controlled by Instacart rather than Sprouts. Instacart provides the servers for handling orders placed through the Sprouts mobile app. The engineers who design, develop, manufacture, test, and implement the code dictating the functionality of the Sprouts mobile app are employees of Instacart. The individuals who market and sell the white-label application are employees of Instacart.

5. Instacart designs, develops, and controls the codebase for the Sprouts mobile app. This includes the code controlling the catalog system, checkout pages, and any other portion of the Sprouts mobile app that Fall Line alleges "create[s] and execute[s] a location-specific questionnaire to collect responses from users." Instacart designs, develops, and controls any code that defines the questions or

2

prompts that are displayed to a user of the Sprouts mobile app. Any location information associated with use of the Sprouts mobile app is stored, at least temporarily, by the servers maintained and controlled solely by Instacart, not Sprouts. Additionally, the Sprouts mobile app includes the Instacart Terms and Conditions under the "More" tab. Instacart is the entity with the best knowledge about the workings of the codebase for the Sprouts mobile app.

6. Sprouts cannot modify or customize any of the code of the Sprouts mobile app. The functionality of the Sprouts mobile app and its underlying code base and programming are entirely under the control of Instacart.

7. Many other entities providing online applications license and utilize the same white-label mobile application technology that Sprouts licenses and utilizes from Instacart. In each of these cases, Instacart is the sole provider of the underlying code that controls the functionality of the mobile application(s).

8. In response to Fall Line's complaint against Instacart's customers, along with Fall Line's allegations that the Sprouts mobile app product infringes claim 7 of the '748 patent, Instacart filed a declaratory judgment complaint in the Northern District of Oklahoma on March 25, 2025. The case is captioned *Maplebear, Inc., d/b/a Instacart v. Fall Line Patents, LLC*, Case No. 4:25-cv-00137 and seeks a declaration of noninfringement and an injunction against Fall Line from further prosecuting any action alleging infringement of any enforceable claim of the '748 patent.

3

Doc ID: 3575af13be2e93ebc791d5d17908addd8cd966fc

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 2, 2025.

*Stephen Munday*

Stephen Munday

4

Doc ID: 3575af13be2e93ebc791d5d17908addd8cd966fc

                                         Audit trail

| | |
|---|---|
| **Title** | Fall Line declaration |
| **File name** | 2025.03.26_Declar..._to_Transfer.DOCX |
| **Document ID** | 3575af13be2e93ebc791d5d17908addd8cd966fc |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

**SENT**
**04 / 02 / 2025**
08:21:15 UTC-7
Sent for signature to Stephen Munday (stephen.munday@instacart.com) from nicole.altman@instacart.com
IP: 141.239.210.202

**VIEWED**
**04 / 02 / 2025**
08:36:19 UTC-7
Viewed by Stephen Munday (stephen.munday@instacart.com)
IP: 99.237.132.73

**SIGNED**
**04 / 02 / 2025**
09:04:41 UTC-7
Signed by Stephen Munday (stephen.munday@instacart.com)
IP: 99.237.132.73

**COMPLETED**
**04 / 02 / 2025**
09:04:41 UTC-7
The document has been completed.