# EXHIBIT 15

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| FALL LINE PATENTS, LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 5:24-cv-172-RWS |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| ALDI INC. et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

---

| | | |
|---|---|---|
| FALL LINE PATENTS, LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 5:24-cv-182-RWS |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| SPROUTS FARMERS MARKET, INC., et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**FALL LINE'S OPPOSITION TO SPROUTS AND ALDI'S
MOTIONS TO TRANSFER**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   THE FIRST-TO-FILE RULE GOVERNS ........................................................1

III.  THE COURT SHOULD DENY SPROUT AND ALDI'S TRANSFER REQUEST .........2

      A.   The Customer-Suit Exception Does Not Authorize Transfer ..................................2

      B.   Sprouts And Aldi Have Not Even Tried To Show That A Section 1404 Transfer For Convenience Would Be Proper Or Warranted ..................................4

IV.   THE COURT SHOULD DENY SPROUT AND ALDI'S REQUEST FOR A STAY.......8

      A.   The Customer-Suit Exception Does Not Apply.......................................................8

           1.   Sprouts And Aldi Are Not Mere Resellers ..................................................8

           2.   Sprouts And Aldi Have Not Meaningfully Agreed To Be Bound.............10

           3.   Instacart Is Not The Sole Source Of The Infringing Activity...................11

      B.   The Customer-Suit Exception Does Not Allow Forum Shopping........................12

      C.   Instacart Did Not File Its Declaratory Judgment Action Promptly ......................13

      D.   The Traditional Stay Factors Also Weigh Against A Stay ....................................13

V.    CONCLUSION....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
No. 2:17-cv-513-JRG, 2018 WL 2329752 (E.D. Tex. May 23, 2018)............................................5

*A.P.T, Inc. v. Quad Envtl. Tech. Corp., Inc.*, 698 F. Supp. 718 (N.D. Ill. 1988).................... 12-13

*BBC Int'l Ltd. v. Lumino Designs, Inc*., 441 F. Supp.2d 438 (E.D.N.Y. 2006)............................12

*BillJCo, LLC v. Cisco Sys., Inc.*,
No. 2:21-cv-181-JRG, Dkt. 81 (E.D. Tex. Feb. 16, 2022) ...............................................7

*Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999)......................................2

*Cap. Sec. Sys., Inc. v. ABNB Fed. Credit Union*,
No. 2:14CV166, 2014 WL 5334270 (E.D. Va. Oct. 20, 2014) .....................................3

*Cherokee Nation v. Nash*, 724 F.Supp.2d 1159 (N.D. Okla. 2010) ................................2

*Flygrip, Inc. v. Walmart Inc.*,
No. 6:21-cv-1082-ADA, Dkt. No. 38 (W.D. Tex. June 29, 2022) ................................4

*Genentech v. Eli Lilly & Co.,* 998 F.2d 931(Fed. Cir. 2008)...........................................1

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*,
No. 2:16-CV-00618-RWS-RSP, 2017 WL 365398 (E.D. Tex. Jan. 25, 2017) ("*GEMSA*")...........3

*In re Clarke*, 94 F.4th 502 (5th Cir. 2024).....................................................7

*In re Google Inc.*, 412 F. App'x 295 (Fed. Cir. 2011) ...................................6

*In re Nitro Fluids L.L.C.*, 978 F.3d 1308 (Fed. Cir. 2020) .............................4

*In re SK Hynix Inc.*, 847 Fed. Appx. 847 (Fed. Cir. 2021).............................4

*Jaipuria v. LinkedIn Corp.,* No. 6:11-cv-66, Dkt. No. 84 (E.D. Tex. March 29, 2012) ............. 5-6

*Katz v. Lear Siegler, Inc.,* 909 F.2d 1459 (Fed. Cir. 1990) ...........................................3

*Liberty Access Tech. Licensing LLC v. Wyndam Hotels & Resorts, Inc.*,
No. 2:24-cv-125-JRG, 2024 WL 4729750 (E.D. Tex. Nov. 8, 2024) ..........................8, 10, 11, 12

*Mirror Worlds Techs., LLC v. Dell Inc.*,
No. 6:13-CV-941, 2014 WL 11268268 (E.D. Tex. Sept. 29, 2014)............................................10

*Netlist, Inc. v. Samsung Elec. Co., Ltd.*,
No. 2:22-cv-293-JRG, Dkt. No. 121 (E.D. Tex. Aug. 9, 2023)......................................................1

*Robert Bosch, LLC v. Westport Fuel Sys. Canada, Inc.*,
No. 122-CV-370-RDA-JFA, 2023 WL 1422308 (E.D. Va. Jan. 31, 2023) .........................12, 13

*SAS Inst. Inc. v. World Programming Ltd.*,
No. 2:18-CV-00295-JRG, 2019 WL 8331447 (E.D. Tex. Apr. 4, 2019) .....................................10

*SpaceTime3D, Inc. v. LG Elec. Inc.*,
No. 2:22-cv-49-RWS, Dkt. No. 114 (E.D. Tex. Jan. 6, 2023).......................................................5

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349 (Fed. Cir. 2011) ........ 2-3

*St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co.*,
No. 04–1436–JJF–LPS, 2010 WL 1213367 (D. Del. Mar. 28 2010) ............................................7

**Statutes**

28 U.S.C. § 1404....................................................................................................................2, 3, 4

**Other**

M. Lavine, "Trial Date Drives PTAB's Denial of IPR Institution" (Ex. 14) ...............................14

## I.    INTRODUCTION

The first-to-file rule governs Sprouts and Aldi's motions.  When sufficiently overlapping actions are filed in separate districts, the first-to-file rule dictates that priority be given to the first-filed action.  Under that rule, the Court should deny Sprouts and Aldi's motions:  Instacart's later-filed action in Oklahoma must give way to Fall Line's first-filed actions—not *vice versa*.

Sprouts and Aldi argue that the "customer-suit exception" to the first-to file rule compels the opposite result and that the actions against them should thus be transferred or stayed.  They are wrong.  The customer-suit exception does not authorize the transfer Sprouts and Aldi seek.  That requires a sufficient showing under section 1404—a showing that Sprouts and Aldi did not even try to make.  Nor does the customer-suit exception warrant staying their actions.  Sprouts and Aldi are nothing like mere resellers of products manufactured by Instacart.  They are accused of infringing a method claim that is performed on systems that are only partially provided by Instacart.  Accordingly, resolution of the Instacart action will not necessarily—or even likely—resolve the actions against Sprouts and Aldi.

## II.    THE FIRST-TO-FILE RULE GOVERNS

When similar declaratory judgment and infringement actions are filed in different venues, courts favor the forum of the first-filed action.  *See, e.g., Netlist, Inc. v. Samsung Elec. Co., Ltd*., Case No. 2:22-cv-293-JRG, Dkt. No. 121 at 4 (E.D. Tex. Aug. 9, 2023).  Departure from this "first-to-file" rule requires "sound reason that would make it unjust or inefficient" to favor the first-filed action.  *Id*. (quoting *Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 938 (Fed. Cir. 2008)).

There is no dispute that the first-to-file rule applies generally in this case.  Sprouts and Aldi concede that by invoking the customer-suit exception to the rule.  And Instacart concedes that by premising its declaratory judgment action on it being duplicative of the actions here.  *See*

Ex. 1 [Instacart Complaint].  That means that the Oklahoma court should transfer Instacart's action to this Court to decide how the actions should proceed—not that this Court should transfer the Sprouts and Aldi actions to Oklahoma.  *See, e.g., Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605-06 (5th Cir. 1999) ("Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed."); *Cherokee Nation v. Nash*, 724 F.Supp.2d 1159, 1166-67 (N.D. Okla. 2010) (collecting cases and explaining that "[d]istrict courts within the Tenth Circuit have stated that the preference is for the court of first-filing to decide the application of the first to file rule") (citations omitted).

## III.    THE COURT SHOULD DENY SPROUT AND ALDI'S TRANSFER REQUEST

The Court should deny Sprouts and Aldi's motions to transfer because the customer-suit exception does not provide a basis to transfer a first-filed action to a court where a second action is later filed.  To secure the transfer that they seek, Sprouts and Aldi were required to satisfy the requirements of 28 U.S.C. § 1404.  They did not even try to do so.

### A.    The Customer-Suit Exception Does Not Authorize Transfer

The customer-suit exception is an exception to the first-to-file rule.  It can be invoked to stay a first-filed action in favor of the second-filed action.  But it does not authorize transfer of a first-filed action to a second-filed court.

Sprouts and Aldi tell the Court that, under the customer-suit exception, "[i]t is well-established" that first-filed actions can be transferred to second-filed courts.  *See* Sprouts Motion at 11; Aldi Motion at 11.  They cite *Spread Spectrum*, *Katz*, *Capital Security*, and *GEMSA*.  *Id*. None of those cases establish what Sprouts and Aldi say they establish.

In *Spread Spectrum*, an action against a manufacturer was transferred under 28 U.S.C. §

1404(a). *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1352–53 (Fed. Cir. 2011). That transfer was not challenged on appeal. The Federal Circuit dismissed the appeal of other rulings because they were not final judgments giving rise to appellate jurisdiction. *See id.* at 1354. The Federal Circuit did not come close to holding that the customer-suit exception allows first-filed actions to be transferred to second-filed courts.

In *Katz*, the issues on appeal were whether a court properly joined a party and whether it properly enjoined actions pending in another court. *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1462-64 (Fed. Cir. 1990). The Federal Circuit affirmed for one of the actions pending in the other court and reversed for the other. *Id.* at 1464. Again, the Federal Circuit did not hold that the customer-suit exception allows first-filed actions to be transferred to second-filed courts.

In *Capital Security*, the court granted a motion to transfer for convenience under 28 U.S.C. § 1404(a)—not under the customer-suit exception. *Cap. Sec. Sys., Inc. v. ABNB Fed. Credit Union*, No. 2:14CV166, 2014 WL 5334270, at *1 (E.D. Va. Oct. 20, 2014).

Finally, in *GEMSA,* this Court found that a declaratory judgment action filed by Amazon in Virginia was the first-filed action. It thus applied the first-to-file rule and stayed the later-filed actions here. *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 2:16-CV-00618-RWS-RSP, 2017 WL 365398, at *8 (E.D. Tex. Jan. 25, 2017) ("*GEMSA*"). The Court alternatively ruled, under the customer-suit exception, that it would reach the same result—a stay of the Texas actions—even if the Texas actions had been filed first. *Id.* at *10. The Court did not "transfer[] the Amazon suit" under the customer-suit exception. Sprouts Motion at 11; Aldi Motion at 11. Amazon was the manufacturer, not the customer. *See GEMSA*, 2017 WL 365398 at *12.

Sprouts and Aldi have not cited a single case in which a first-filed action was transferred to a second-filed court under the customer-suit exception. The transfer they seek is not available

under it.  To establish that their cases should be transferred, Sprouts and Aldi were required to make the appropriate showings under 28 U.S.C. § 1404(a).  *See In re SK Hynix Inc*., 847 Fed. Appx. 847, 853-54 (Fed. Cir. 2021) (holding that even when the first-to-file rule is invoked, the threshold requirements of section 1404 must be met); *In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1311 (Fed. Cir. 2020) ("Unless the balance of transfer factors favors keeping the case in the second-filed court, there are no compelling circumstances to justify such an exception [to the first-to-file rule]."); *Flygrip, Inc. v. Walmart Inc.,* Case No. 6:21-cv-1082-ADA, Dkt. No. 38 at 6, 19 (W.D. Tex. June 29, 2022) (denying transfer to the second-filed court, even when the customer-suit exception applied, because consideration of the factors under section 1404 did not establish that the proposed transferee court was "clearly more convenient").

**B.**      **Sprouts And Aldi Have Not Even Tried To Show That A Section 1404 Transfer For Convenience Would Be Proper Or Warranted**

Sprouts and Aldi have not moved for a convenience transfer under 28 U.S.C. § 1404.  Nor have they tried to show that they can meet the high standard for a transfer for convenience.  They did not try to show that Fall Line's actions against them "might have been brought" in the Northern District of Oklahoma.  28 U.S.C. § 1404(a).  And they did not try to show that the private and public factors establish that Oklahoma would be a "clearly more convenient" venue.  Because they have not moved under section 1404—much less made the showings required for such a motion—there is no basis for the transfer that they seek.

To be sure, Sprouts and Aldi try to buttress their bid for a "customer-suit transfer" by arguing that certain convenience factors favor Oklahoma.  *See* Sprouts Motion at 11-14; Aldi Motion at 11-14.  But they do not—and cannot—say that those factors make Oklahoma "clearly more convenient" under section 1404.  They plainly do not.

Sprouts and Aldi argue that the first three private factors (relative ease of access to

4

sources of proof, the availability of compulsory process for witnesses, and the cost of attendance

for willing witnesses) all favor Oklahoma because "Plaintiff, the original assignee of the '748

Patent, the inventor, and the prosecuting firm all reside in or have addresses near Tulsa."

Sprouts Motion at 12; Aldi Motion at 12.

That argument is wrong on the facts. The inventor of the 748 Patent is incapacitated and

has never been available as a witness in any of the actions brought by Fall Line (or any of the

earlier actions brought by MacroSolve). *See* Ex. 2 at 153:5-22 [Fall Line Depo]; Ex. 3 at 124:17-

125:17 [11/13/13 McGill Depo]. So his location is immaterial. MacroSolve, the original

assignee of the 748 Patent, merged with another company that became COMSovereign and, as a

result, is no longer in Oklahoma. *See* Ex. 4 [COMSovereign 10K]. The relevant witnesses who

are in or near Tulsa (for example, Jim McGill, who splits his time between Oklahoma and Peru)

are party witnesses, so their (partial) presence in Oklahoma does not weigh strongly in the

transfer analysis. *See, e.g., SpaceTime3D, Inc. v. LG Elec. Inc.*, No. 2:22-cv-49-RWS, Dkt. No.

114, slip op. at 7 (E.D. Tex. Jan. 6, 2023). Finally, the bulk of relevant documents in Fall Line's

possession are documents that MacroSolve transferred to Fall Line's counsel long before these

actions were filed. They have been maintained in Texas, not Oklahoma, since then.

Sprouts and Aldi's argument is also wrong on the law. It improperly counts the same

documents and witnesses under three separate factors. *AGIS Software Dev. LLC v. Huawei

Device USA Inc.*, No. 2:17-cv-513-JRG, 2018 WL 2329752, *3 ("These factors do not permit a

single source of proof or witness to be 'double counted' or unduly influence the analysis."). It

also asks the Court to improperly rely on the location of Fall Line's outside counsel in Oklahoma

(while ignoring Fall Line's outside counsel in Texas). *See, e.g., Jaipuria v. LinkedIn Corp.,* No.

6:11-cv-66, Dkt. No. 84 at 8 (E.D. Tex. March, 29, 2012) (finding that location of outside

counsel who prosecuted the patent did not weigh in favor of transfer where the movant "has not explained why its outside lawyers . . . would not be willing to testify in this case").

Sprouts and Aldi next argue that the fourth private factor (other practical problems) is neutral or weighs in favor of transfer because judicial efficiency would be served by a transfer to Oklahoma. Sprouts Motion at 12; Aldi Motion at 12. But that begs the question. Instacart's action in Oklahoma can just as easily be transferred here (and just as easily could have been filed here) to obtain the benefits of a single court handling the actions together.

Sprouts and Aldi's argument also waves away—for no articulated reason—the fact that this Court is currently handling numerous other Fall Line actions, many of which have already been consolidated with the actions against Sprouts and Aldi. *See id.* And it completely ignores the many past actions in which this Court has become exceptionally familiar with the 748 Patent and the issues surrounding it. *See, e.g., Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*, Case No. 6:18-cv-407-RWS, Dkt Nos. 106, 151, 164, 228, 234, 334, 345, 348 (showing that the Court has heard and ruled on numerous issues including stays, 101 eligibility, claim construction, standing, discovery disputes, ownership, motions *in limine*, *Daubert* challenges on damages and technical issues, and summary judgment motions).

Given the Court's history with the 748 Patent, the fourth private factor practically demands that Sprouts and Aldi's cases remain here. *In re Google Inc.*, 412 F. App'x 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective.").

Turning to the public factors, Sprouts and Aldi argue that the first factor (court congestion) strongly favors transfer—despite asserting that the time to trial is approximately the

same—because many patent cases are filed in Texas but almost none are filed in Oklahoma. Sprouts Motion at 13; Aldi Motion at 13. But "[t]he mere number of pending cases is not synonymous with court congestion." *BillJCo, LLC v. Cisco Sys., Inc.*, No. 2:21-cv-181-JRG, Dkt. 81 at 11-12 (E.D. Tex. Feb. 16, 2022). The Federal Judicial Center's statistics show that this Court's time to trial over the last five years has been between eighteen and twenty-three months. *See* Ex. 5 [FJC Statistics]. Consistent with that, the Court has set the Sprouts and Aldi actions for trial in July 2026, twenty months after filing.

In contract, Oklahoma would be a much slower venue. Perhaps due to the civil backlog resulting from the Supreme Court's *McGirt* decision, the Oklahoma court has not even reached trial in a sufficient number of civil cases for the FJC to report on time to trial. *See id.* But it has reported that the number of civil cases pending for more than three years is double that of this Court—and has been on an upward trajectory. *See id.* And Sprouts and Aldi concede, even under the rosiest interpretation of the relevant statistics, that the transfer they seek is expected to result in a delay of more than five months. Sprouts Motion at 13; Aldi Motion at 13; *St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co.*, No. 04–1436–JJF–LPS, 2010 WL 1213367, at *3–*4 (D. Del. Mar. 28 2010) (finding a potential six-month delay significant).

Finally, Sprouts and Aldi assert that local interest strongly favors transfer because Fall Line resides in Tulsa. Sprouts Motion at 13; Aldi Motion at 13. But what matters for this factor are the events that gave rise to the actions, not where the parties are located. *See In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024). Fall Line, the current assignee of the 748 Patent, has engaged in enforcement activities exclusively in Texas. As explained above, MacroSolve, which first commercialized the patented technology, moved away from Oklahoma and no longer has any meaningful connection to it. Likewise, Sprouts, Aldi, and Instacart have no meaningful

connections to Oklahoma: they do not assert that any of the infringing technology was developed, or that the infringing activity takes place, there.

## IV.     THE COURT SHOULD DENY SPROUT AND ALDI'S REQUEST FOR A STAY

Sprouts and Aldi ask, in the alternative, for a stay until the Instacart action is resolved. Sprouts Motion at 14; Aldi Motion at 14. The Court should deny that request for four reasons. First, the customer-suit exception does not apply. Second, Sprouts, Aldi, and Instacart are improperly trying to use the customer-suit exception to forum shop. Third, Instacart did not file its action in Oklahoma promptly. Fourth, the traditional stay factors all weigh against a stay.

### A.     The Customer-Suit Exception Does Not Apply

This Court considers three factors to determine if the customer-suit exception applies:

(1)     whether the customers in the first-filed action are mere resellers of products manufactured by the party in the second-file action;

(2)     whether the customers in the first-filed action have agreed to be bound by any decision in the second-filed action; and

(3)     whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product.

*Liberty Access Tech. Licensing LLC v. Wyndam Hotels & Resorts, Inc.*, Case No. 2:24-cv-125-JRG, 2024 WL 4729750, *1 (E.D. Tex. Nov. 8, 2024). None weigh in favor of a stay.

#### 1.     Sprouts And Aldi Are Not Mere Resellers

What is accused of infringement in these actions is the performance of a method that involves certain steps taking place on an end-user's mobile phone and certain steps taking place on servers with which the end-user's mobile phone communicates. While Instacart provides some of the technology that is involved in performing some of those steps, Sprouts and Aldi are nothing like mere resellers of products that are manufactured by Instacart.

Instacart says it provides Sprouts with a "white labeled" mobile app, but ████████



*See* Ex. 6 at 27:16-29:15 [Bagwell Depo].  Sprouts also maintains ██████████████

███████████████████████████████████████████████████████████████

███████████████.  *See id.* at 40:8-41:18. Sprouts also ████████████████

██████████████████████████████████████████████  *See*

Ex. 7 at 18:16-22:10 [Munday Depo].

Nor does Aldi merely resell a product made by Instacart.  Aldi ████████████

████████████████████████████████████████████████████████████████

███████████████████████.  *See, e.g.*, Ex. 8 at 26:18-

28:10 [Reed Depo] (testifying that █████████████████████████████████

████████████████████); *id.* at 38:8-39:8, 41:10-42:7 (testifying

that ███████████████████████████████████████); *id.* at 59:6-17

(testifying that █████████████████████████████); *id.* at 62:16-21

██████████████████████████████████████); *id.* at 65:13-

66:21 (testifying that ████████████████████████████████████████

███████████████████████); Ex. 9 at 34:15-37:25 [Dengis Depo] (testifying that █████

██████████████████████████████████████████).  Moreover, in

some instances, █████████████████████████████████████.  *See*

Ex. 8 at 82:7-85:9; 88:23-89:16 [Reed Depo].

The customer-suit exception can apply in the context of a manufacturer/reseller

relationship because a determination that the manufacturer infringes by making an infringing

product necessarily implies that the reseller infringes by selling it.  But the key infringement

███████████████████████████████████████████

question here is who is responsible for the performance of the various steps of Fall Line's method claim.  Because a method claim is at issue, and because ████████████████████████ ██████████████████████████████████████████, that question is different for Sprouts, Aldi, and Instacart, both in terms of who is performing the steps and in terms of who can be held responsible for that performance.  So this case is nothing like "a traditional manufacturer-distributor case in which the distributor does nothing more than resell the Accused Product made by the manufacturer."  *Liberty Access,* 2024 WL 4729750 at *2 (finding that this factor weighed against a stay because the infringement allegations did not rely exclusively on functionality provided by the manufacturer); *Mirror Worlds Techs., LLC v. Dell Inc.*, No. 6:13-CV-941, 2014 WL 11268268, at *3 (E.D. Tex. Sept. 29, 2014) (finding that the customer-suit exception did not apply because the customer defendants "do not merely resell the [accused software] after receiving it, but instead implement the software on their products in ways that potentially infringe"); *SAS Inst. Inc. v. World Programming Ltd*., No. 2:18-CV-00295-JRG, 2019 WL 8331447, at *4 (E.D. Tex. Apr. 4, 2019) (ruling that customer-suit exception did not apply because a finding that the manufacturer infringed method claims would still require the patent owner to prove infringing acts by the customers and, conversely, a finding that the manufacturer did not infringe the method claims would not preclude a finding that the customers infringed).

### 2.     Sprouts And Aldi Have Not Meaningfully Agreed To Be Bound

Sprouts and Aldi say that they "agree to be bound by the outcome of the Instacart Action."  Sprouts Motion at 2; Aldi Motion at 2.  But their "agreement" is largely illusory.

For example, Sprouts and Aldi say that their agreement will bind them to any "invalidity" determination from the Instacart action.  But they would not agree that they would be barred from putting on an invalidity defense if Instacart failed to establish invalidity in its action.  *See*

███████████████████████████████████████

Ex. 10 at 18 [Sprouts Rog Response]; Ex. 11 at 18 [Aldi Rog Response]; Ex. 8 at 86:22-87:3 [Reed Depo]; Ex. 12 at 117:21-120:23 [DiLalla Depo].  This is particularly important because Instacart's action in Oklahoma seeks a declaratory judgment of non-infringement, not invalidity. *See* Ex. 1 [Instacart Complaint]; *Liberty Access,* 2024 WL 4729750 at *3 (finding that this factor could weigh only slightly in favor of a stay because the declaratory judgment action did not seek a declaration of invalidity).

The same point applies to virtually every other issue.  Sprouts and Aldi's "agreement to be bound" leaves open the possibility that they could seek claim constructions in this action that Instacart fails to seek; that they could argue for a royalty rate different from one established in the Instacart action; that they could raise defenses that Instacart fails to prevail on or fails to raise; that they could argue that they are not judicially estopped or collaterally estopped to the same extent that Instacart is estopped by virtue of the positions it takes; and that they could argue that neither they nor Instacart should be deemed to be responsible for the actions taken by each other.  *See* Ex. 10 at 16-19 [Sprouts Rog Response]; Ex. 11 at 16-20 [Aldi Rog Response]; Ex. 8 at 85:10-88:15 [Reed Depo]; Ex. 12 at 115:21-133:22 [DiLalla Depo].

### 3.    Instacart Is Not The Sole Source Of The Infringing Activity

As discussed with respect to the first factor, Sprouts and Aldi are ███████████

███████████████████████████████████████████████████████

███ .  In multiple instances, what Fall Line has pointed to as meeting a claimed step is an action that is performed when an end-user places an order on the accused mobile apps.  Fall Line alleges that Sprouts and Aldi are responsible for the performance of those steps based on the nature of their relationship with their end users and their involvement with the mobile apps and servers that are used—not based on their reselling a product that Instacart makes.  *See* Case No.

11

███████████████████████████████████████████████

5:24-cv-182, Dkt. No. 1 at ¶ 15 [Sprouts Complaint]; Case No. 5:24-cv-172, Dkt. No. 1 at ¶ 15

[Aldi Complaint].  Sprouts and Aldi are thus sources of infringing activity.  So this factor also

weighs against application of the customer-suit exception.  *See Liberty Access,* 2024 WL

4729750 at *3 (finding that this factor weighed against the customer-suit exception where the

customer's activities were relied on to satisfy certain claim limitations).

### B.    The Customer-Suit Exception Does Not Allow Forum Shopping

Instacart could have filed its declaratory judgment action here.  But it chose to file in

Oklahoma, even though it has no connection to that venue.  *See* Ex. 9 at 71:3-23 [Dengis Depo]

(testifying that ████████████████████████).  And it did so ██████████████████

██████████████████████████████████████ using the same lawyers that

represent it in Oklahoma. ██████████ █████ ████████████████ ██████ ████████

There is only one explanation for Instacart's choice:  it wants to avoid this Court.

The customer-suit exception does apply to Instacart's attempt to forum-shop:

> One of the purposes of the customer suit exception is to guard against forum shopping by the patent holder.  That does not mean, however, that a manufacturer who is not sued can engage in forum shopping and rely on the customer suit exception to allow its choice of forum to stand. . . . . [***T]o effectuate the manufacturer's presumed interest, the customer suit exception favors its choice of forum only when it files the declaratory judgment action in its home forum****,* where the patentee could have originally filed suit.  To that end, ***numerous courts have declined to apply the customer suit exception when the declaratory plaintiff does not file for relief in its home forum***.  Otherwise, a manufacturer would be free to forum shop itself when filing its declaratory judgment action.

*Robert Bosch, LLC v. Westport Fuel Sys. Canada, Inc.*, No. 122CV370RDAJFA, 2023 WL

1422308, at *10 (E.D. Va. Jan. 31, 2023) (cleaned up, citations omitted, emphasis added); *BBC*

*Int'l Ltd. v. Lumino Designs, Inc.*, 441 F. Supp.2d 438, 443 (E.D.N.Y. 2006) ("The [customer

suit] exception is inapplicable because [plaintiff] did not properly file its declaratory judgment

action in its home forum."); *A.P.T, Inc. v. Quad Envtl. Tech. Corp., Inc.*, 698 F. Supp. 718, 722

(N.D. Ill. 1988) ("A defendant manufacturer should not be able to use a rule that has been crafted for the explicit purpose of deterring forum shopping to pick a district in which a patent suit will proceed that is not its home forum.").

### C.    Instacart Did Not File Its Declaratory Judgment Action Promptly

The customer-suit exception also requires the manufacturer to move promptly. Instacart did not file its action until four months after Fall Line's actions here. Instacart's delay is another reason why the Court should decline to apply the customer-suit exception. *See, e.g., Robert Bosch, LLC v. Westport Fuel Sys. Canada, Inc.*, No. 122-CV-370-RDA-JFA, 2023 WL 1422308, at *11 (E.D. Va. Jan. 31, 2023) (holding that "the four-month delay between Westport's suit and the filing of the instant suit also weighs against" applying the customer-suit exception).

### D.    The Traditional Stay Factors Also Weigh Against A Stay

Sprouts and Aldi are also wrong when they argue that the traditional stay factors weigh in their favor. Sprouts Motion at 14; Aldi Motion at 14.

Fall Line would be significantly prejudiced if its actions against Sprouts and Aldi are stayed. The owner of Fall Line and its key witness, James McGill, is 81 years old. Mr. McGill worked with the inventor of the patent-in-suit, David Payne, more than twenty years ago to file the application that ultimately led to the issuance of the patent-in-suit and to form the publicly traded company, MacroSolve, that initially commercialized it. *See, e.g.*, Ex. 13 at 44:11-45:16; 55:12-56:9; 57:21-61:24 [11/12/13 McGill Depo]. Mr. McGill is an especially important witness because Mr. Payne is not able to testify. *See, e.g., id*. at 51:16-23; Ex. 3 at 124:17-125:17 [11/13/13 McGill Depo]. Delay thus risks both (1) Mr. McGill not being available to provide key testimony to the jury and (2) Mr. McGill not being able to enjoy any award of damages after a jury verdict.

Delay likewise would provide Sprouts and Aldi with a major tactical advantage.  At about the same time it filed its declaratory judgment action, Instacart filed a petition for inter partes review in the Patent Office.  A key factor in the Patent Office's decision whether to institute that inter partes review will be the likelihood that district court will be able to resolve invalidity challenges to Fall Line's patent first.  *See, e.g.,* Ex. 14 [M. Lavine, "Trial Date Drives PTAB's Denial of IPR Institution"].  A delay of the Sprouts and Aldi actions could thus easily be the reason why Fall Line would have to defend its patent in yet another forum.

Handling the actions in sequence will also tactically disadvantage Fall Line because it would allow Sprouts and Aldi to take positions that are inconsistent with those taken by Instacart.  If the actions proceed together, it will be much more difficult for Sprouts and Aldi to disclaim responsibility for Instacart's actions while Instacart simultaneously disclaims responsibility for the actions of Sprouts and Aldi.

A stay would also be unlikely to meaningfully simplify the issues that the Court must decide.  As discussed above, Fall Line is asserting a method claim.  That method is infringed through the use of a combination of components, only some of which are provided by Instacart.  So, as discussed above, the extent to which each defendant performs, or is responsible for the performance of, the claimed method presents different questions for each defendant.

A stay would also require the Sprouts and Aldi cases to be severed from the other cases pending in this district with which they have already been consolidated.  It would thus undo the simplification that the Court recognized would result from consolidation.  *See* Case No. 5:24-cv-167, Dkt. 19 [2/12/25 Consolidation Order].

Finally, the Sprouts and Aldi actions have already significantly progressed, and a trial date has been set.  The Court has set a schedule for these actions, including a *Markman* hearing

on October 7, 2025, and a trial date of July 27, 2026. *See* Case No. 5:24-cv-167, Dkt. No. 69 [3/17/25 Docket Control Order]. The parties have jointly negotiated and agreed to scheduling, discovery, e-discovery, and protective orders, each of which has been entered. *See id.; see also* Dkt. No. 70 [Protective Order]; Dkt. No. 71 [Discovery Order]; Dkt. No. 72 [E-Discover Order]. Initial disclosures and document productions have already been exchanged. *See, e.g.,* Dkt. Nos. 93, 94 [5/1/25 Notices of Discovery Disclosures]. Fall Line has served its infringement contentions and defendants have responded with their invalidity contentions. *See, e.g.,* Dkt. Nos. 106, 107 [5/1/25 Notices of Compliance Regarding Invalidity Contentions]. Written discovery has been served and responded to and the parties have started the claim-construction process. *See* Dkt. No. 69 at 9 [3/17/25 Docket Control Order] (setting June 3 deadline for initial exchange of terms to be construed). And substantive motions have been filed, fully briefed, and argued. *See, e.g.,* Dkt. No. 121 [Minute Entry For Motions Hearing].

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Sprouts and Aldi's motions to transfer (as well as their alternative requests to stay).

Dated: June 10, 2025

Respectfully submitted,

/s/ *Matthew J. Antonelli*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Rehan M. Safiullah
Texas Bar No. 24066017
rehan@ahtlawfirm.com

Hannah D. Price
Texas Bar No. 24116921
hannah@ahtlawfirm.com
ANTONELLI, HARRINGTON &
THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000
(713) 581-3020 (fax)

*Attorneys for Fall Line Patents, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of June 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew Antonelli*
Matthew Antonelli

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that I am authorized to file this brief under seal because it contains information of Sprouts, Aldi, and Instacart that they have designated under the protective order entered in this case.

*/s/ Matthew Antonelli*
Matthew Antonelli