**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MAPLEBEAR, INC., D/B/A INSTACART<br><br>    Plaintiff,<br><br>    v.<br><br>FALL LINE PATENTS, LLC,<br><br>    Defendant. | Civil Action No. 4:25-cv-00137-SEH-MTS<br><br>JURY TRIAL DEMANDED |

**<u>PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS</u>**

### TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 2

III.    ARGUMENT .............................................................................................................. 5

    A.    The '748 Patent is Invalid Under 35 U.S.C. § 101 ................................................5

        1.    *Alice* Step 1: The '748 Patent is directed to the abstract idea of
                asking questions in a questionnaire and collecting responses. ...................6

        2.    *Alice* Step 2: No inventive concept to transform the abstract idea
                into patent-eligible subject matter is disclosed. .........................................7

    B.    The Counterclaims of Infringement Fail to Assert any Facts to Plausibly
        Support its Legal Allegations.................................................................................18

        1.    The Counterclaims Fail to Assert any Facts to Plausibly Support a
                Claim of Direct Infringement...................................................................20

        2.    The Counterclaims Fail to Assert any Facts to Plausibly Support a
                Claim of Indirect Infringement ................................................................22

        3.    The Counterclaims Fail to Assert any Facts to Plausibly Support a
                Claim of Willful Infringement .................................................................24

IV.     CONCLUSION ......................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
   573 U.S. 208 (2014)...................................................................................... 1, 5, 7, 14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...................................................................................... 18, 19, 23

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)...................................................................................... 18, 19, 20

*Berkheimer v. HP Inc.,*
   881 F.3d 1360 (Fed. Cir. 2018) ................................................................... 17

*Beteiro, LLC v. DraftKings Inc.,*
   104 F.4th 1350 (Fed. Cir. 2024) .................................................................. passim

*Bilski v. Kappos,*
   561 U.S. 593 (2010)...................................................................................... 15

*Bot M8 LLC v. Sony Corporation of America,*
   4 F.4th 1342 (Fed. Cir. 2021) ...................................................................... 19, 20, 21, 22

*Brit. Telecomm. PLC v. IAC/InterActiveCorp,*
   381 F. Supp. 3d 293 (D. Del. 2019).............................................................. 11, 17

*Brit. Telecomm. PLC v. IAC/InterActiveCorp,*
   813 F. App'x 584 (Fed. Cir. 2020) ............................................................... 11

*Bryson v. Gonzales,*
   534 F.3d 1282 (10th Cir. 2008) ................................................................... 18

*BSG Tech LLC v. Buyseasons, Inc.,*
   899 F.3d 1281 (Fed. Cir. 2018) ................................................................... 1, 5

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
   859 F.3d 1352 (Fed. Cir. 2017) ................................................................... 6

*Commil USA, LLC v. Cisco Sys., Inc.,*
   575 U.S. 632 (2015)...................................................................................... 22

*Crystal Lagoons U.S. Corp. v. Cloward H2O LLC,*
   767 F. Supp. 3d 1179 (D. Utah 2025)........................................................... 25

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011) ................................................................... 6

*Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*,
No. 6:18-cv-00407, 2021 U.S. Dist. LEXIS 251484 (E.D. Tex. May 25, 2021) ......... 1, 6, 7, 12

*Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*,
No. 6:18-cv-00407, Dkt. No. 1 (E.D. Tex. Aug. 15, 2018) ....................................................... 7

*Gardner v. Engenious Designs LLC*,
No. 2:21-cv-02548, 2022 WL 22893387 (D. Kan. Jan. 21, 2021) .................................... 19, 21

*Global-Tech Appliances, Inc. v. SEB S. A.*,
563 U.S. 754 (2011) ........................................................................................................... 22

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ............................................................................................................... 6

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) ........................................................................................................ 20, 24

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ............................................................................................. 14

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ........................................................................................... 13

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed Cir. 2015) ............................................................................................ 14

*Jewel Pathway LLC v. Polar Electro Inc.*,
556 F. Supp. 3d 335 (S.D.N.Y 2021) ........................................................................... 8, 11, 12

*K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*,
714 F.3d 1277 (Fed. Cir. 2013) ........................................................................................... 19

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
572 U.S. 915 (2014) ........................................................................................................... 22

*Linear Tech. Corp. v. Impala Linear Corp.*,
379 F.3d 1311 (Fed. Cir. 2004) ........................................................................................... 22

*Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*,
564 F. Supp. 3d 1126 (D. Utah 2021) .................................................................................. 24

*Miller Mendel, Inc. v. City of Anna, Texas*,
598 F. Supp. 3d 486 (E.D. Tex. 2022) ......................................................................... 8, 11, 12

*Nu-You Techs., LLC v. Beauty Town Int'l Inc.*,
No. 3:15-cv-03433, 2016 WL 4717991 (N.D. Tex. July 7, 2016) ........................................... 19

iii

*Opticurrent, LLC v. Power Integrations, Inc.*,
    No. 2:16-cv-00325, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016) .......................... 19

*Recentive Analytics, Inc. v. Fox Corp.*,
    134 F.4th 1205 (Fed. Cir. 2025) ................................................................. 15

*Sanderling Mgmt Ltd. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) ................................................................ 6, 18

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ................................................................... 6

*SIPCO, LLC v. Jasco Products Co.*,
    No. 5:19-cv-00709, 2022 WL 610192 (W.D. Okla. Mar. 1, 2022) ................... passim

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
    601 F.3d 1319 (Fed. Cir. 2010) ................................................................. 10

*Total Quality Systems, Inc. v. Universal Synaptics Corp.*,
    No. 1:22-cv-00167, 2024 WL 2396979 (D. Utah May 23, 2024) ........................... 6

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ................................................................ 6, 7

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
    No. 2023-1639, 2025 WL 1659297 (Fed. Cir. June 12, 2025) .................... 7, 13, 15

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015) ................................................................. 14

**Statutes**

35 U.S.C. § 101 ......................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1, 25

Fed. R. Civ. P. 8 ...................................................................................... 18

Fed. R. Civ. P. 8(a)(2) .............................................................................. 18

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff Maplebear, Inc. d/b/a Instacart ("Instacart") respectfully moves the Court for an order dismissing the Counterclaims for Patent Infringement ("Counterclaims") filed by Defendant Fall Line Patents, LLC ("Fall Line") for failure to state a claim upon which relief can be granted.

## I.    INTRODUCTION

Fall Line's Counterclaims should be dismissed for a simple reason: the sole asserted patent claim (Claim 7) covers an abstract idea—asking questions in a questionnaire and collecting responses—that is ineligible for patent protection.  Fall Line tacitly acknowledges as much by dedicating the majority of its "additional allegations regarding patentability" to features Claim 7 does not even recite.  ECF 39, ¶¶ 42-45. Following the Supreme Court's ruling in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 2083 (2014), courts routinely dismiss patent claims—such as this Claim 7—that improperly attempt to claim ownership of laws of nature or abstract ideas.

Indeed, in 2021 a sister district court agreed that Claim 7 is directed to an abstract idea, but allowed that case to proceed on a now-discredited theory: that integrating GPS with a mobile device was an "inventive concept" sufficient to transform the abstract idea into a patentable invention.  *Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*, No. 6:18-cv-00407, 2021 U.S. Dist. LEXIS 251484, at *14 (E.D. Tex. May 25, 2021) .  That rationale no longer holds in light of recent Federal Circuit decisions.  *See Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1357 (Fed. Cir. 2024) (citing *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)).  The Federal Circuit has made clear that applying generic, off-the-shelf GPS technology to an abstract idea does not supply the "inventive concept" required under *Alice*.  *Beteiro*, 104 F.4th at 1359. Because Claim 7 merely applies well-understood technology like GPS to an abstract idea, it fails under *Alice* and cannot support a viable infringement claim.

1

Further, even if Claim 7 were patent-eligible (which it is not), Fall Line has not plausibly alleged that Instacart infringes it. The Counterclaims fail to include a single factual allegation from which one could plausibly conclude that any of Claim 7's six steps are performed by any particular Instacart application or server. Instead, the Counterclaims offer only a bare conclusion that "the Instacart mobile app and/or the mobile apps of retail partners" operates in conjunction with "Instacart servers" to infringe Claim 7. ECF 39, ¶¶ 29-30. That type of conclusory assertion does not satisfy Rule 8.

For at least these reasons, and those set forth below, the Counterclaims should be dismissed in their entirety.

## II.    FACTUAL BACKGROUND

On March 25, 2025, Instacart brought suit against Fall Line, seeking a Declaratory Judgment of Non-Infringement of the '748 Patent. ECF 2. On May 30, 2025, Fall Line counterclaimed for infringement of the '748 Patent. ECF 39. The '748 Patent, entitled "System and Method for Data Management," issued on September 27, 2016 and expired on December 31, 2024.

The '748 Patent includes a total of twenty-two claims, but many have been invalidated in previous proceedings. Fall Line presently asserts only Claim 7, reproduced below:

> 7. A method for collecting survey data from a user and making responses available via the Internet, comprising:
>
> (a) designing a questionnaire including at least one question said questionnaire customized for a particular location having branching logic on a first computer platform wherein at least one of said at least one questions requests location identifying information;
>
> (b) automatically transferring said designed questionnaire to at least one loosely networked computer having a GPS integral thereto;

(c) when said loosely networked computer is at said particular location, executing said transferred questionnaire on said loosely networked computer, thereby collecting responses from the user;

(d) while said transferred questionnaire is executing, using said GPS to automatically provide said location identifying information as a response to said executing questionnaire;

(e) automatically transferring via the loose network any responses so collected in real time to a central computer; and

(f) making available via the Internet any responses transferred to said central computer in step (e).

ECF 9, at 17 ('748 Patent, Claim 7).

In support of its contention that Claim 7 is patent eligible, Fall Line identifies three purported improvements over the prior art: (1) device-independent (or device-indifferent) tokens and the creation of tokenized questionnaires; (2) temporary storage of information on a loosely-networked device if a network connection is unavailable; and (3) an integral GPS for causing location information to be automatically collected by a questionnaire.  ECF 39, ¶¶ 44-46.

But the first two alleged improvements are irrelevant, as Claim 7 recites no limitations concerning tokenization or temporary storage.  As to the third alleged improvement, i.e., the use of a GPS for location transmission, Claim 7 requires (and the '748 patent discloses) only the use of GPS technology in a generic, routine, and conventional manner, which cannot impart patent eligibility.  Indeed, recent cases have invalidated GPS-related patents under *Alice* for exactly this reason.

Moreover, despite the many limitations of Claim 7—including branching logic, GPS integration, and a data transfer process—the Counterclaims' allegation of infringement is remarkably sparse, stating only that:

29.    Instacart made, had made, used, imported, provided, supplied, distributed, sold, and/or offered products and/or services by which the Instacart mobile app and/or the mobile apps of retail partners, in conjunction with Instacart servers, create and execute location-specific questionnaires to collect responses from users.

30.    By doing so, Instacart has directly infringed (literally and/or under the doctrine of equivalents) Claim 7 of the 748 Patent.

ECF 39, ¶¶ 29-30.

The Counterclaims' only other allegation regarding the purported basis for direct infringement is similarly conclusory:

33.    Instacart has also directly infringed the 748 Patent by exercising direction or control over the use of the accused products by retail partners and/or end-user customers.  Instacart puts the accused products into service and conditions the benefit received by retail partners and/or end-user customers from using the accused products (which utilize the methods taught by the 748 Patent).  Use of the accused products in such manner infringes the 748 Patent.

ECF 39, ¶ 33.

Altogether, the Counterclaims are devoid of facts plausibly showing that the six steps required by Claim 7 are met by any particular accused product.  The Counterclaims provide no details regarding how any Instacart mobile app and/or the mobile apps of any alleged retail partners operates in conjunction with any Instacart servers to meet the steps of Claim 7.

Despite having only one Count, for "Direct Infringement," the Counterclaims also contain allegations under a heading entitled "Additional Allegations Regarding Indirect Infringement."

4

ECF 39, ¶¶ 34-39.  Those paragraphs likewise contain no facts that could support a conclusion that any accused product practices the six steps required by Claim 7.

## III.    ARGUMENT

Fall Line's Counterclaims should be dismissed for two independent reasons.  First, Claim 7 is ineligible for patent protection under 35 U.S.C. § 101 because it is directed to an abstract idea and recites no inventive concept.  Second, even if Claim 7 were valid (it is not), Fall Line has failed to plausibly alleged that any Instacart product practices the claimed method.  Either ground is sufficient for dismissal.

### A.    The '748 Patent is Invalid Under 35 U.S.C. § 101

Patent eligibility is governed by 35 U.S.C. § 101, which provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  "Laws of nature, natural phenomena, and abstract ideas," however, are "an important implicit exception" to Section 101 and are not patent eligible.  *Alice*, 573 U.S. at 216.  The Supreme Court has established a two-step test for determining patent ineligibility: the Court must first "determine whether the claims at issue are directed to one of those patent-ineligible concepts" ("step one"); and, if so, the Court must determine whether there is an "inventive concept" by "consider[ing] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application" ("step two").  *Id*. at 217 (internal quotation marks omitted).  "The ultimate determination of Alice step two… is a question of law that may be 'inform[ed]' by '[u]nderlying factual determinations,' such as 'whether a claim limitation or combination of limitations is well-understood, routine, and conventional.'"  *Beteiro*, 104 F.4th 1350, 1357 (Fed. Cir. 2024) (citing *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)).  Fall Line's Asserted Claim fails this test.

Further, courts regularly resolve patent eligibility issues on the pleadings and invalidate patents on motions to dismiss. *See*, *e.g.*, *Sanderling Mgmt Ltd. v. Snap Inc.*, 65 F.4th 698, 703-704 (Fed. Cir. 2023); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *Total Quality Systems, Inc. v. Universal Synaptics Corp.*, No. 1:22-cv-00167, 2024 WL 2396979, at *1 (D. Utah May 23, 2024). The court should do the same here.

1.  *Alice* **Step 1**: **The '748 Patent is directed to the abstract idea of asking questions in a questionnaire and collecting responses.**

Claim 7 is directed to the abstract idea of asking questions in a questionnaire and collecting responses to those questions. This is the basic concept at the "heart" of asserted Claim 7, and represents its "character as a whole." *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15 (Fed. Cir. 2014); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Courts have repeatedly held that such "methods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas – the 'basic tools of scientific and technological work' that are open to all." *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1372 (Fed. Cir. 2011) (quoting *Gottschalk v. Benson,* 409 U.S. 63, 67 (1972)).

A sister district court has already held that Claim 7 fails *Alice* Step 1 as being directed to an abstract idea. In *Zoe's Kitchen*, the Eastern District of Texas concluded that Claim 7 "represents routine tasks that could be performed by a human," relying on benefits that come "from the capabilities of a general-purpose computer, rather than the patented method itself." *Zoe's Kitchen*, 2021 U.S. Dist. LEXIS 251484, at *9. The *Zoe's Kitchen* court further recognized that "people have long collected and transmitted information using questionnaires" including "location identifying information," and that "the need to perform tasks automatically is not a unique technical problem." *Id.* at *9-10.

6

Fall Line's Counterclaims here recycle—nearly verbatim—the same "Additional Allegations Regarding Patentability" that it used in *Zoe's Kitchen*. *Compare* Compl. ¶¶ 32-38, *Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*, No. 6:18-cv-00407 (E.D. Tex. Aug. 15, 2018) *with* Counterclaims, ECF 39, ¶¶ 40-46.

Those allegations, which simply restate the same theory already rejected in *Zoe's Kitchen*, confirm that Claim 7 is directed to a conventional process for gathering and transmitting information. The Federal Circuit has consistently held that automating conventional activity, even with GPS or mobile devices, does not render an abstract idea patent-eligible. *E.g.*, *Beteiro,* 104 F.4th at 1355; *United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2023-1639, 2025 WL 1659297, at \*4 (Fed. Cir. June 12, 2025). Accordingly, for at least the same reasons applied in the *Zoe's Kitchen* decision, this Court should likewise find that Claim 7 is directed to an abstract idea and fails the first step of the *Alice* test.

### 2.     *Alice* Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed.

Where, as here, an asserted claim is directed to an abstract idea, it cannot be patent-eligible unless it satisfies Step 2 of the *Alice* test, which requires the claim to contain an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (internal quotations omitted). In particular, the claim "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted).

Although the *Zoe's Kitchen* court determined that Fall Line sufficiently "pleaded an unconventional use that is not contradicted by the face of the '748 patent," based on the Complaint's allegations that use of an integral GPS device was not well-understood, routine, or conventional at the time of the 2002 priority date (2021 U.S. Dist. LEXIS 251484, at \*14), recent

7

Federal Circuit case law contradicts that conclusion. Multiple decisions have since confirmed that invoking standard GPS functionality was conventional as of its 2002 priority date. *Beteiro*, 104 F.4th at 1357-58; *Miller Mendel, Inc. v. City of Anna*, 598 F. Supp. 3d 486, 499 (E.D. Tex. 2022); *Jewel Pathway LLC v. Polar Electro Inc.*, 556 F. Supp. 3d 335, 342 (S.D.N.Y 2021).

Here, Claim 7 does not claim any improvement to GPS technology or any novel application of it. As such, Fall Line cannot, as a matter of law, rely upon Claim 7's invocation of the well-understood, routine, and conventional use of an integral GPS device to satisfy *Alice* Step 2. Moreover, *all* other recited elements of Claim 7 are also generic and lack meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea. Fall Line's own characterization of Claim 7 requires nothing more than "creat[ing] and execut[ing] location-specific questionnaires to collect responses from users." Counterclaims, ECF 39, ¶¶ 40-46. That description merely restates the abstract idea itself.

The remaining allegations in the Counterclaims do not change the analysis. As indicated above, the Counterclaims alleged three alleged improvements to purportedly demonstrate patent eligibility, but two of the three relate to features not recited in Claim 7. ECF 39, ¶¶ 44-46. And the third alleged improvement merely describes a GPS unit used in a conventional manner. As such, the Counterclaims' allegations do not survive *Alice* Step 2.

### a. Since the *Zoe's Kitchen* decision, Integral GPS Device-Related Limitations Have Been Ruled Conventional

Since the *Zoe's Kitchen* decision, courts have recognized that GPS device-related features such as those in Claim 7 are not patent eligible. In particular, recent decisions have found that: (1) use of an integral GPS device; (2) use of location information; and (3) automatic collection of location information for transmission to a server are conventional and routine uses of GPS technology and do not impart patent eligibility.

<u>Claim 7's Use of an Integral GPS Device is Routine and Conventional</u>

The Federal Circuit has recently held that an integral GPS device as recited by Claim 7 and disclosed by the '748 Specification is well-understood, routine, and conventional as a matter of law. *Beteiro,* 104 F.4th at 1355. In *Beteiro,* the patentee asserted several patents directed to determining if online gambling is allowed at an individual's location, including U.S. Patent No. 10,255,755 ("the '755 Patent"). The pertinent claim recited "wherein the… **communication device comprises a global positioning device…**, wherein the bet message contains**… information regarding the position or location of the… communication device**." *Id.* at 1353-54 (emphasis added). The Federal Circuit noted that the patent specification only briefly and generically described the global positioning device (GPS) on the mobile device, and that the earliest claimed priority date of the *Beteiro* patents (*i.e.*, the date by which the court determined GPS was conventional) was 2002. *Id*. at 1357-58.

Here, the '748 Patent's minimal disclosure of GPS is nearly identical to that in *Beteiro*, *i.e.*, the disclosure of GPS is similarly sparse and cursory (GPS is only referenced twice). ECF 9, at 13, 15 ('748 Patent at 5:42-48, 10:56-58); *Beteiro*, 104 F.4th at 1357-58 ("That only 15 lines out of a specification that runs to no less than 98 columns are addressed to what Beteiro now insists is unconventional technology [use of GPS in a mobile communications device] greatly undermines the plausibility of Beteiro's allegations."). And, the '748 Patent has a priority date of 2002, the same as in *Beteiro*. In finding the *Beteiro* claims patent ineligible, the Federal Circuit reasoned that the lack of disclosure regarding the GPS "can only plausibly mean that the patent applicant drafted the specification understanding that a person of ordinary skill in the art knew what GPS was, how to include it on a mobile device, and that using it for the purposes disclosed in the patent was routine, conventional, and well-understood." *Beteiro*, 104 F.4th at 1357-58. The '748 Patent

9

similarly treats GPS as conventional, describing it as one of a "number of useful subsystems, which may already be present in the handheld device, or easily added later." ECF 9, at 13 ('748 Patent at 5:42-48).

The use of GPS in the '748 Patent stands in contrast to the method of using GPS in *SiRF Tech., Inc. v. Int'l Trade Comm'n,* 601 F.3d 1319 (Fed. Cir. 2010). In *SiRF Tech.,* the Federal Circuit found that the method claims at issue could not be performed without the use of the GPS receiver, which place a "meaningful limit" on the scope of the claims rather than "function solely as an obvious mechanism for permitting a solution to be achieved more quickly." *Id.* at 1332-33. The claims at issue in *SiRF Tech.* specifically recited "calculating an absolute position of a GPS receiver," updating an "estimate of position of the GPS receiver," and receiving "a plurality of satellite signals," such that use of a GPS receiver was found to be "essential to the operation of the claimed methods." *Id.* Consistent with their unconventional usage, the patent is *SiRF Tech.* provided a dense and fulsome description of Assisted-GPS ("A-GPS"). *Id.* at 1322-23 (explaining that the patents-in-suit involve "improvements over conventional A-GPS technology," including "a GPS receiver that can calculate its position without having to wait to receive time information from a satellite, thereby allowing the receiver to calculate its position more quickly and even in weak-signal environments," among other features). In contrast, Claim 7 and the '748 Patent as a whole do not place any meaningful limit on the scope of the integrated GPS, and instead recite the GPS solely as "an obvious mechanism for permitting a solution to be achieved more quickly" in lieu of manual input. *Id.* at 1332-33. And, as noted above, the bare-bones description of GPS in the '748 Patent is like the description in *Beteiro* and unlike the description in *SiRF Tech.* Applying *Beteiro*, the Court should hold that the application of the GPS of Claim 7 is well-understood, routine, and conventional as a matter of law.

<u>Merely Using Location Information Does Not Supply an Inventive Concept</u>

Nor does the mere use of GPS-derived information satisfy *Alice* Step 2. For example, since the decision in *Zoe's Kitchen*, other courts have likewise emphasized that the routine and conventional use of location information—derived using GPS or otherwise—does not impart patent eligibility. For example, in *Miller Mendel, Inc. v. City of Anna*, a claim requiring "generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address" was found to be well-understood, routine, conventional, and invalid as a matter of law. 598 F. Supp. 3d 486, 499 (E.D. Tex. 2022) (citing *Brit. Telecomm. PLC v. IAC/InterActiveCorp,* 381 F. Supp. 3d 293, 313 (D. Del. 2019), *aff'd,* 813 F. App'x 584 (Fed. Cir. 2020) ). Specifically, that Court found that "there is nothing inventive about the generation and transmission of a list of information sources based on user location… [n]or do the claims recite any novel type of information or a new way of gathering, cataloguing, or transmitting that information." Similarly, Claim 7 requires that location information from the GPS be collected automatically for use with a questionnaire, but this is simply the generation and transmission of location information, and not some new way of transmitting that location information. In *Jewel Pathway LLC v. Polar Electro Inc.*, a claim requiring "receiving a first set of location data from a first mobile device" and "generating, using a processor, a traversable path based on the first set of location data without using traditional maps" was also found patent ineligible. 556 F. Supp. 3d 335, 342 (S.D.N.Y 2021). In doing so, the Court explained that the claims "are directed to the abstract idea of collecting, analyzing, and displaying data and rely on well-known mathematical algorithms and generic technological components for implementation." *Id.* at 346. Claim 7's components are likewise generic and well-known.

11

Claim 7 does not recite any novel type of information and is simply determining and sending location-identifying information. Indeed, the Court in *Zoe's Kitchen* explicitly found that "people have long collected and transmitted information using questionnaires" including "location identifying information," and that "the need to perform this task automatically is not a unique technical problem." *Zoe's Kitchen*, 2021 U.S. Dist. LEXIS 251484, at *9-10. Cataloguing location information with a questionnaire instead of a list is also not novel, as "creat[ing] and customiz[ing] electronic documents… to be sent… and returned" is conventional as a matter of law. *Miller Mendel*, 598 F. Supp. 3d at 489. So too is the mere reliance on generic technological components, such as an integrated GPS unit, for customizing an electronic form (e.g., questionnaire). *Jewel Pathway,* 556 F. Supp. 3d at 342.

<u>Automating Location Collection Using Off-the-shelf Technology is Not Inventive</u>

Claim 7's recitation of automatically collecting location-identifying information for transmission to a server so that questions for that location could be generated and sent back to the handheld device, is also nothing more than well-understood, routine, and conventional activity. The *Zoe's Kitchen* court credited Fall Line's allegations that in 2002, then-existing handheld devices were ill-equipped to collect information when dealing with intermittent networks and that the Plaintiff pled an unconventional use by pleading "specific improvements in the prior art resolved by the claimed invention and specific uses of the conventional components" to address said "technical problems with the prior-art remote handheld computers." *Zoe's Kitchen*, 2021 U.S. Dist. LEXIS 251484, at *13-14 (citing Dkt. No. 1 ¶ 33; Dkt. No. 137 at 3-4).

However, in yet another decision issued after *Zoe's Kitchen*, the Federal Circuit held that "[t]he addition of a handheld mobile device to carry out [] routine steps does not make the claim [reciting data collection and analysis steps] any less abstract." *United Servs. Auto. Ass'n v. PNC*

*Bank N.A.*, No. 2023-1639, 2025 WL 1659297, at *4 (Fed. Cir. June 12, 2025).  In particular, where a claim "is directed to improving the user's experience … by allowing the use of familiar and easily acquired electronics," such as a handheld mobile device, "[b]ut the claimed steps do not improve the way in which the handheld mobile device functions," then the device "is merely a tool to perform the conventional steps" and "is insufficient to render the claims directed to patent-eligible subject matter."  *Id*.

In light of all of the above recent cases, the Counterclaims fail to demonstrate that use of the GPS device on a mobile device in Claim 7 confers patent-eligibility.  While the Counterclaims allege that the use of an integral GPS device is a purported patent-eligible improvement, it is unclear what problem this purportedly solved.  ECF 39, ¶ 46.  As previously explained, the '748 Specification references "GPS" only twice and does not disclose how to create an "integral GPS device" or what problem would be addressed by using a GPS.  *See* ECF 9, at 13, 15 ('748 Patent at 5:48 and 10:57). In both instances, the handheld computer is simply optionally equipped with a GPS operable to do what GPS generically does – provide location or position information.  *Id.* This conventional use of GPS does not solve any of the purported problems described by the Counterclaims.  Instead, the patent uses conventional GPS technology to provide the location as an alternative to a user manually providing the location.  *See* ECF 9, at 12 ('748 Patent at 3:38-47).  Using GPS to automatically provide the location in this manner, as recited by Claim 7 "to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015).

For all of these reasons, the post-*Zoe's Kitchen* case law has fundamentally undermined any previous conclusion that the use of GPS device-related features was unconventional or could

confer patent eligibility on Claim 7. The Counterclaims add nothing more to Fall Line's prior pleading in the *Zoe's Kitchen* decision and fail to identify any unconventional use of the claimed GPS device.

### b.      Nothing Else in Claim 7 Imparts Patent Eligibility

Aside from the GPS-related features discussed above, Claim 7 contains only conventional computer components performing routine functions. None of these elements—either on their own or in combination—supply the requisite "inventive concept" required under Alice Step 2.

<u>Generic Computers Performing Generic Functions Are Not Inventive</u>

Claim 7 recites generic computer components (a "computer platform," a "loosely networked computer," a "central computer", and the "Internet") and functions ("designing a questionnaire," "transmitting," "executing," and "making available" questionnaire data), which are patent-ineligible.  *See, e.g., Alice,* 573 U.S. at 225-226; *Intellectual Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, 1315-16 (Fed Cir. 2015) (a general method of screening emails on a generic computer); *In re TLI Commc'ns LLC Patent Litig.,* 823 F.3d 607, 612 (Fed. Cir. 2016) (gathering and analyzing information using conventional techniques and displaying the result); *Versata Dev. Grp., Inc. v. SAP Am., Inc.,* 793 F.3d 1306, 1334 (Fed. Cir. 2015) (a commonplace business method being applied on a general-purpose computer).

As explained above, the Federal Circuit found an "integral GPS unit" to be well-understood, routine, and conventional under nearly identical circumstances, such that the GPS unit is yet another generic computer component.  *Beteiro*, 104 F.4th at 1355.  Transferring location identifying information "automatically" (e.g., by a computer) over a "loose network" (i.e., using a mobile device) also does not provide significantly more than what is well-understood, routine, and conventional.  The abstract idea of asking questions in a questionnaire and collecting responses,

even when performed using generic computer components performing their intended functions to speed the process is patent ineligible, as explained above.

<u>"Loose Network" and Mobile Device Elements Do Not Reflect Any Technological Innovation</u>

Claim 7's recitations of a "loosely connected device" and a "loose network" simply describe mobile computing devices, which are subject to being intermittently connected and disconnected (i.e. loosely-connected) to the network.[1]  Claim 7 does not recite any improvement for addressing problems with such networks; rather, Claim 7 simply recites a loose network and uses a mobile device as the known tool to perform conventional steps, such as sending GPS data. *See United Servs. Auto. Ass'n*, 2025 WL 1659297 at *5 ("the mobile device is a piece of generic hardware," the inclusion of which "does not add an inventive concept" (citing *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1215 (Fed. Cir. 2025)).

The Counterclaims allege an improvement in communications over a "loose network," but do not identify how any limitation or combination of limitations in Claim 7 address the alleged problems with a "loose network."  This is because such a resolution is either not captured by Claim 7 or is conventional.  With respect to issues of network availability and intermittent networks, the Counterclaims assert that the '748 Patent "enables a reduction to the 'load on a communication channel of finite bandwidth.'"  ECF 39, ¶ 45 (citing '748 Patent at 4:36-39).  This purported improvement requires that "if a network connection is unavailable at that moment, the information is temporarily stored in the device and later transmitted when the connection is restored."  *Id.*

---

[1] At most, the recitation of a loosely networked device limits the abstract idea of the questionnaire to a particular field of use.  However, it has been established by the Supreme Court that "[l]imiting an abstract idea to one field of use or adding token postsolution components d[oes] not make the concept patentable."  *Bilski v. Kappos*, 561 U.S. 593, 612 (2010).

(citing '748 Patent at 5:10-12). The '748 Patent further states that, using such an approach, "transmission will be automatically delayed until connection 34 is restored" in multiple examples. ECF 9, at 15 ('748 Patent at 9:65- 67, 10:6-8).

<u>Fall Line's Alleged Network Improvement Reflects Routine Human Behavior</u>

This approach pled by Fall Line is the same conventional approach taken by a human seeking to send information (e.g., electronic document, e-mail, serving a pleading, etc.) over any wireless intermittent network (e.g., cellular network, WiFi). That is, a human can send an e-mail over an available WiFi network via a networked device according to normal network transmissions (e.g., an available network). However, if the device is unconnected to the WiFi network (e.g., while traveling) or the WiFi network is currently unavailable, the human must necessarily wait until a WiFi network connection is restored to send the e-mail. There is nothing significantly more than what is well-understood, routine, and conventional in this "approach" pled by Fall Line. That conventional components (e.g., a mobile device, a GPS) are sending the information upon network connectivity being reestablished does not impart patent eligibility.

Because Claim 7 recites only conventional computing components performing routine tasks, it does not contain an inventive concept and fails *Alice* Step 2.

### c.    **Fall Line's Other Alleged Improvements are Irrelevant to Claim 7**

In its patent eligibility contentions, the Counterclaims highlight the background section of the '748 Patent, which disparages then-existing remote handheld computers and related technology. ECF 39, ¶ 41. The Counterclaims assert these then-existing handheld computers had problems including compatibility issues between remote computing devices, development and deployment of changes to programs, and network availability. *Id.* (citing '748 Patent at 1:45-2:31, 2:41-64, 3:1-7, and 3:64-4:1). However, for this to be relevant, any purported patent-eligible improvements to these problems must be "captured in the claims." *Berkheimer v. HP Inc.*, 881

F.3d 1360, 1369 (Fed. Cir. 2018).  Here, Claim 7 is not directed to improvements that address *any* of these problems.

With respect to issues of compatibility and deployment of programs, the Counterclaims state that issues occur "when the program running on the remote handheld computer needed changing, developers must first make the change on a development system and then re-transfer the entire program to each target device."  ECF 39, ¶ 43 (citing '748 Patent at 3:7-10).   To overcome compatibility issues, the '748 Patent uses "device-independent tokens... and the creation of tokenized questionnaires" to obviate the need to "recompile and reload a software package onto the handheld computer," allowing it to make "changes" automatically.  *Id.* at ¶ 44 (citing '748 Patent at 5:21-32).  However, Claim 7 does not recite anything relating to tokens or tokenization.  Rather, Claim 7 recites designing, automatically transferring, and executing the questionnaire, as well as automatically transferring and making available responses to the questionnaire.  Therefore, Claim 7 does not capture any specific improvement (e.g., use of tokens and/or tokenization) for addressing the alleged compatibility issues.

Furthermore, "executing the questionnaire" as recited by Claim 7 does not require any use or implementation of tokens or tokenization as pled by Fall Line.   And the mere executing, by providing an electronic document with location-identifying information, and transmitting the electronic document for customization has been shown to be well-understood, routine, and conventional.  *See Brit. Telecomm.*, 381 F. Supp. 3d at 313.

In sum, Claim 7 does not provide any elements, individually or in combination, that provide significantly more than what is well-understood, routine, and conventional.  Claim 7, as actually written, does not provide any specific use or improvement over the prior art.  There exists no issue of fact, and "no amount of creative pleading" can transform Claim 7 into patent-eligible subject

17

matter.  Courts regularly invalidate patents as directed to patent ineligible subject matter on motions to dismiss.  *E.g.*, *Sanderling Management*, 65 F.4th at 703-704.  Accordingly, Asserted Claim 7 should be found invalid for reciting patent ineligible subject matter.

### B.    The Counterclaims of Infringement Fail to Assert any Facts to Plausibly Support its Legal Allegations

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  It is long settled that Rule 8 requires more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A viable complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than "a sheer possibility that a defendant has acted unlawfully," and a complaint that does not state a plausible claim for relief cannot survive a motion to dismiss.  *Id.*  The complaint "must also 'show[]' (not merely assert) that relief is appropriate if it is true." *Bryson*, 534 F.3d at 1286 (quoting Fed. R. Civ. P. 8(a)(2)).

Although a complaint's factual allegations are to be taken as true, allegations that are merely conclusory are not entitled to this presumption.  *Iqbal,* 556 U.S. at 681.  Complaints that contain nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" should be dismissed.  *Iqbal*, 556 U.S. at 678.

Even if this Court found Claim 7 to be patent eligible (which it is not), Fall Line's Counterclaims still fail to meet the pleading requirements.  Claims of patent infringement are

subject to the pleading standards enumerated in *Twombly* and *Iqbal*. *See Bot M8 LLC v. Sony Corporation of America*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021); *see also Gardner v. Engenious Designs LLC*, No. 2:21-cv-02548, 2022 WL 22893387, at *1 (D. Kan. Jan. 21, 2021). A patent infringement complaint must place the alleged infringer "on notice of what activity … is being accused of infringement." *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc*., 714 F.3d 1277, 1284 (Fed. Cir. 2013). Notice requires plaintiff to plausibly allege that the accused products meet each and every element of at least one claim of the asserted patent. *SIPCO, LLC v. Jasco Products Co.*, No. 5:19-cv-00709, 2022 WL 610192, at *3 (W.D. Okla. Mar. 1, 2022) ("Absent facts showing how the accused products performs each step of each claim element, the Court is unable to determine how these allegations plausibly plead infringement of the asserted patents"); *Nu-You Techs., LLC v. Beauty Town Int'l Inc.*, No. 3:15-cv-03433, 2016 WL 4717991, at *2 (N.D. Tex. July 7, 2016) (dismissing claim for direct infringement of method patent where complaint failed to allege that the defendant performed "every step of the method"); *see also Bot M8*, 4 F.4th at 1353. More specifically, "[t]o state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that the defendant 'without authority makes, uses, offers to sell, or sells any patented invention…during the term of the patent.'" *SIPCO,* 2022 WL 610192 at *2; *see also Opticurrent, LLC v, Power Integrations, Inc*., No. 2:16-cv-00325, 2016 WL 9275395, at *3 (E.D. Tex. Oct. 19, 2016).

The Federal Circuit has emphasized that "a plaintiff cannot assert a plausible claim for infringement" whether direct or indirect "by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1353.

These pleading standards extend to Fall Line's willful infringement theory as well. The Supreme Court has made clear that "[a]wards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016). Allegations of willful infringement that are based on conclusory allegations of direct infringement should be dismissed. *SIPCO*, 2022 WL 610192 at *4 (dismissing willful infringement claims that relied on deficient allegations of direct infringement).

### 1. The Counterclaims Fail to Assert any Facts to Plausibly Support a Claim of Direct Infringement

A claim for direct infringement cannot simply recite the claim elements and conclude that the accused product has those elements; it must plausibly allege that the accused product meets each and every element of the asserted claim. *Bot M8*, 4 F.4th at 1353; *SIPCO,* 2022 WL 610192 at *3. The Counterclaims fail to provide the necessary factual support for Fall Line's infringement allegations. Instead, Fall Line merely sets forth a *conclusion* that something it refers to as "the Instacart mobile app," and/or "the mobile apps of retail partners" possibly in conjunction with unidentified "Instacart servers," infringes Claim 7. ECF 39, ¶¶ 29-30. The Counterclaims are bereft of factual allegations sufficient to permit the Court to plausibly conclude that any accused product infringes Claim 7. This falls far short of the required pleading standard.

Here, Fall Line has not properly identified the accused mobile app system or systems, and instead makes only vague references to "the Instacart mobile app and/or the mobile apps of retail partners" without any meaningful description of the allegedly infringing functionality or even an identification of which mobile apps or which retailers are referenced. This fails to provide the notice required. *See Twombly*, 550 U.S. at 574.

Furthermore, the Counterclaims fail to even recite the six steps of Claim 7, let alone explain how any portion of any Instacart mobile app or mobile app of a retailer operates to allegedly perform those six steps. The Counterclaims state only that "the Instacart mobile app and/or the mobile apps of retail partners, in conjunction with Instacart servers, create and execute location-specific questionnaires to collect responses from users" and that "[b]y doing so, Instacart has directly infringed (literally and/or under the doctrine of equivalents) Claim 7 of the 748 Patent." ECF 39, ¶¶ 29-30. Such a broad and unsupported statement fails to meet the requisite plausibility standard. *Bot M8*, F.4th at 1353; *see also SIPCO*, 2022 WL 610192 at *3 ("Absent facts showing how the accused products performs each step of each claim element, the Court is unable to determine how these allegations plausibly plead infringement of the asserted patents"); *Gardner*, 2022 WL 22893387 at *2 (holding that reciting the claim elements and merely concluding that the accused product has those elements is not sufficient).

Specifically, although Claim 7 requires six different steps (labelled (a) through (f)), the Counterclaims do not explain how the accused system meets any of these requirements. For example, the method recites functions such as "designing a questionnaire … customized for a particular location having branching logic on a first computer platform"; "automatically transferring said designed questionnaire to at least one loosely networked computer having a GPS integral thereto"; and "making available via the Internet any responses transferred to [a] central computer." '748 Patent, claim 7. The Counterclaims do not explain how the "location-specific questionnaire" allegedly created by any Instacart mobile app and/or any mobile app of a retail partner is "customized for a particular location having branching logic," does not make any mention of a "loosely networked computer having a GPS," and does not mention the Internet at all. It includes no claim chart, no description of how any Instacart mobile app and/or mobile apps

21

of retail partners operates "in conjunction with Instacart servers" to allegedly meet the various steps of Claim 7, no description or identifying information of what is meant by "retail partners," and no factual information at all regarding the functionality of the Instacart mobile app.

By failing to provide any factual allegations connecting the accused system to the claim elements, the Counterclaims fall well short of the pleading standard. *Bot M8*, F.4th at 1353; *see also SIPCO*, 2022 WL 610192 at *3. Accordingly, Fall Line's claims of direct infringement should be dismissed.

### 2. The Counterclaims Fail to Assert any Facts to Plausibly Support a Claim of Indirect Infringement

In contrast to direct infringement, liability for indirect infringement attaches only if the alleged infringer knew of the patent and that the alleged acts constitute direct patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642 (2015). Contributory infringement also requires that the asserted product not be suitable for any substantial non-infringing use. *Id*. The Counterclaims' allegations of indirect infringement fail for three independent reasons, each of which warrants dismissal.

First, and most fundamentally, it is well settled that "there can be no indirect infringement without direct infringement." *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 572 U.S. 915 (2014); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004). As discussed above, the Counterclaims fail to plausibly allege that the accused system meets any – let alone all – of the limitations of Claim 7. Without adequately pleading direct infringement, the indirect infringement allegations necessarily fail.

Second, the Counterclaims fail to provide adequate factual allegations of any specific intent to infringe. *Commil USA*, 575 U.S. at 642 (citing *Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754, 760 (2011)). Fall Line merely offers conclusory allegations that "Instacart took active

steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringes Claim 7 of the 748 Patent." ECF 39, ¶ 34. The Counterclaims assert such steps include "advising or directing customers and/or end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions to use the accused products in an infringing manner." *See, e.g.*, *id.* Yet these allegations fail to specify not only which features of the Instacart mobile app and/or mobile apps of retail partners are at issue, but also what "advising or directing," "advertising and promoting", or "distributing instructions" that Instacart allegedly performs that would cause its users to infringe Claim 7.

Third, the Counterclaims' contributory infringement allegations are equally deficient. It merely recites, without support, that "[t]he accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe" and that "[t]he features constitute a material part of the invention of one or more of the claims of the 748 Patent and are not staple articles of commerce suitable for substantial non-infringing use." ECF 39, ¶ 35. But Fall Line's allegations fail to identify what this allegedly infringing use actually is, or how the accused products are material to that use or why the scope of the claims is such that the accused products are incapable of substantial non-infringing use. These assertions are precisely the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that fail under *Iqbal*. 556 U.S. at 678.

Having failed to provide any factual support for direct infringement, specific intent, or the elements of contributory infringement, the Counterclaims' indirect infringement allegations should be dismissed.

### 3. The Counterclaims Fail to Assert any Facts to Plausibly Support a Claim of Willful Infringement

Fall Line further asserts that Instacart's alleged infringement of the '748 Patent "was willful, intentional, deliberate, and/or in conscious disregard of Fall Line's rights under the patent." ECF 39, ¶ 38.  Such a conclusory allegation of willful infringement that is based on conclusory allegations of direct infringement should be dismissed.  *SIPCO*, 2022 WL 610192 at *4.  The Supreme Court has explained that enhanced damages for willful infringement "are not to be meted out in a typical infringement case" absent conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo Elecs.*, 579 U.S. at 103-104.  The Counterclaims' allegations of willfulness fall far short of this standard. "To state a claim of willfulness, [a plaintiff] must plausibly allege that (1) [defendant] had knowledge of the Asserted Patent[] at the time of infringement and (2) deliberately infringed them." *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, 564 F. Supp. 3d 1126, 1134 (D. Utah 2021).  The Counterclaims fail to meet these elements.

First, the Counterclaims allege knowledge of the patent only through the actions filed against Sprouts and ALDI on November 25, 2024 (ECF 39, ¶ 36).  The Counterclaims fail to plead any facts sufficient to plausibly allege that Instacart deliberately infringed the claims of the '748 Patent after the filing of the Sprouts and ALDI actions, particularly because the '748 Patent expired December 31, 2024, barely a month after the Sprouts and ALDI actions were filed.

Second, beyond conclusory assertions that Instacart's conduct "was willful, intentional, deliberate, and/or in conscious disregard" of Fall Line's rights (ECF 39, ¶ 38), the Counterclaims provide no factual allegations of egregious behavior that could support enhanced damages under *Halo Elecs.*, 579 U.S. at 110 ("the Court's references to 'willful misconduct' do not mean that a

court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more*") (Justice Breyer, concurring).

Third, the Counterclaims' bare allegation that "Instacart has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others)" is both unsupported and insufficient to establish the knowledge and intent required for willfulness. The Counterclaims provide no factual basis for this assertion, much less how such a policy would demonstrate the egregious misconduct required for enhanced damages.

Fourth, as noted above, the Counterclaims fail to allege facts sufficient to support a claim of direct infringement. Accordingly, the willful infringement claims should be dismissed because there can be no willful infringement without direct infringement. *SIPCO*, 2022 WL 610192 at *4; *see also Crystal Lagoons U.S. Corp. v. Cloward H2O LLC*, 767 F. Supp. 3d 1179, 1203-1204 (D. Utah 2025).

Having failed to plead any facts supporting pre-suit knowledge, egregious conduct, or knowing infringement, Fall Line's claims of willful infringement should be dismissed.

## IV.    CONCLUSION

For at least these reasons, the Counterclaims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: July 7, 2025

Respectfully submitted,

*/s/ John R. Hutchins*

John R. Hutchins (*pro hac vice*)
District of Columbia Bar No. 456749
jhutchins@bannerwitcoff.com
C. Andy Mu (*pro hac vice*)
District of Columbia Bar No. 500784
amu@bannerwitcoff.com
Paul T. Qualey (*pro hac vice*)
District of Columbia Bar No. 481106
pqualey@bannerwitcoff.com
**BANNER & WITCOFF, LTD.**
1100 13th St., NW, Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000
Facsimile: (202) 824-3001

Robert P. Fitz-Patrick, OBA #14713
rfitzpatrick@hallestill.com
**HALL, ESTILL, HARDWICK,**
**GABLE, GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone: (918) 594-0400
Facsimile: (918) 594-0505

*Attorneys for Plaintiff Maplebear, Inc.*
*d/b/a Instacart*

## **DUTY TO CONFER STATEMENT**

Pursuant to Chambers Rules for Judge Sara Hill, Civil Rules No. 1, counsel for the

parties conferred and Defendant opposes this motion.


/s/ *John R. Hutchins*
John R. Hutchins

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 7, 2025, a true and accurate copy of the foregoing was filed electronically with the Court's CM/ECF system, which will send notification to all attorneys registered to receive service. Parties may access this filing through the Court's electronic filing system.

/s/ *John R. Hutchins*
John R. Hutchins