# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| FALL LINE PATENTS, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:18-CV-00407-RWS |
| | § | (LEAD CASE) |
| v. | § | |
| | § | |
| ZOE'S KITCHEN, INC., ET AL, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**<u>ORDER</u>**

On April 11, 2023, the Court heard argument on the parties' dispositive motions, as well as other motions relating to expert witnesses and sanctions. Docket No. 265.[1] At the hearing, the parties argued their motions by topic (*i.e.*, Section 101, Section 112, infringement and damages). While this argument structure was beneficial for the purposes of efficiently addressing the overlapping issues contained in five motions to exclude expert testimony and the four motions for summary judgment at the hearing, this order will address the parties' motions as briefed rather than by topic. This order addresses the parties' motions regarding expert witnesses in Section I and motions for summary judgment in Section II.

**I. EXPERT WITNESSES**

**A. Legal Standard**

Under Federal Rule of Evidence 702, a qualified expert may testify if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3)

---

[1] The Court will address the parties' arguments related to sanctions in a separate order.

the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.

An expert may base their opinion on facts or data that the expert has been made aware of or personally observed. FED. R. EVID. 703. "Faced with a proffer of expert scientific testimony under Rule 702, the trial judge must determine . . . whether the reasoning or methodology underlying the testimony is scientifically valid and [] whether that reasoning or methodology [can properly] be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993). Many considerations bear on this inquiry. And a court, in its "gatekeeping" role, must focus "solely on principles and methodology." *Id.* at 594–95.

### B.    Dr. Stephen Gray (Docket Nos. 248, 249)

In its motions, Fall Line seeks to exclude as unreliable certain opinions of McDonald's[2] non-infringement and invalidity expert, Stephen Gray. *See generally* Docket Nos. 248, 249.

Fall Line urges the Court to exclude Gray's opinions relating to non-infringement because his opinions (1) include improper legal opinion; (2) apply claim constructions that conflict with the Court's claim construction order; (3) regarding any non-infringing alternatives are unsupported by his report; and (4) regarding substantial non-infringing uses are based on an improper application of the law. *See generally* Docket No. 248.

Fall Line also urges the Court to exclude Gray's opinions relating to invalidity because his report is "replete with unreliable and unfair opinions." Docket No. 249 at 3. More specifically, Fall Line challenges Gray's (1) 35 U.S.C. § 101 positions based on his *Alice* analysis and (2) prosecution history opinions. *See generally*, Docket No. 249. These motions have been fully briefed and argued. Docket Nos. 248, 261, 279, 286, 249, 262, 280, 285, 301.

---

[2] "McDonald's" refers to both McDonalds Corporation and McDonalds USA, LLC.

1.      **Gray's Non-Infringement Opinions (Docket No. 248)**

a.  *Gray shall refrain from offering impermissible legal opinions at trial.*

Fall Line first argues that Gray's improper legal opinions regarding the law of claim construction should be excluded. Docket No. 248 at 4; *see also* Docket No. 279 at 2. In response, McDonald's argues that Gray's expert report does not include legal opinions and that he merely summarizes the "legal principles provided to him by attorneys in order to more completely formulate his opinions" to increase the reliability of his report. Docket No. 261 at 5; *see also* Docket No. 286 at 2. At the hearing, McDonald's represented that Gray would not opine on the law and reiterated that the legal principles included in Gray's report were intended to "just explain[] the legal standards as he understands them." Docket No. 301 at 120:2–14.

It is well known that experts may not offer legal opinions in the guise of expert testimony. *See, e.g.*, *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (citation omitted) ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge."); *Owen v. Kerr McGee Corp.,* 698 F.2d 236, 240 (5th Cir. 1983) (explaining that "[an expert's] opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant"). Experts, however, may rely on legal standards to produce a proper, admissible expert opinion. *See, e.g., Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2016 WL 7665773, at *5 (E.D. Tex. July 19, 2016) (using legal standards summarized in an expert report to assess admissibility of expert testimony). And it is common practice for expert reports to summarize the legal principles upon which the expert relies to reach their opinion. *See, e.g., id.* (discussing the legal standards described in an expert's report).

In view of McDonald's representations that Gray does not intend to offer an impermissible legal opinion, there should be no issue on this matter at trial. Thus, Fall Line's motion on this issue is **DENIED-AS-MOOT**. Gray will not seek to offer impermissible legal opinions on the law of claim construction, or otherwise, at trial.

### b. Gray failed to apply the Court's constructions of the terms present in step (c) of Claim 7, the "questionnaire" term, and the "central server" term.

Fall Line next argues that "Gray offers numerous opinions based on new claim constructions that he arrives at based on his own analysis of the intrinsic evidence," and "does so even when his construction directly contradicts the Court's construction." Docket No. 248 at 4. Fall Line puts forth several arguments where it contends Gray departed from the Court's constructions in his expert report. *Id.* at 4–12; *see also* Docket No. 279 at 2–5. More specifically, Fall Line takes issue with Gray's opinions that (1) infringement requires "executing" when the user "arrives" at the location; (2) the "questionnaire" must ask questions about the location; and (3) McDonald's application does not operate with a "central server" as a person of ordinary skill would have understood the term. Docket No. 248 at 4–12; *see also* Docket No. 279 at 2–5. McDonald's responds that Gray's opinions rely upon proper methodology and that none of his opinions should be struck. Docket No. 261 at 4–8.

An expert's testimony must rest on a proper foundation to be admissible. *Daubert*, 509 U.S. at 597. This includes a proper legal foundation. For example, a court may properly strike expert testimony "when such testimony is based on a claim construction that is materially different" from the court's construction. *See, e.g.*, *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022) (citations omitted). As the Federal Circuit noted, when an expert fails to apply the constructions proposed by the parties, his opinions are "suspect" and may be excluded. *Id.* Here, Gray's opinions ignore portions of the Court's construction order entirely.

*First*, Gray's opinion that infringement requires "executing" when the user "arrives" at the location contradicts the Court's claim construction order.

Fall Line argues that Gray's opinion applies a contradictory construction (*i.e.*, the "based upon . . . arriving" construction)—a construction that McDonald's "expressly abandoned" and that the Court "expressly rejected." Docket No. 248 at 4–8. Fall Line explains that, based on his improper application of a contradictory construction, "Gray opines that using the McDonald's mobile app to place an order at a location anywhere other than a McDonald's restaurant cannot infringe." *Id.* at 6.

McDonald's responds that "Gray did not depart from the Court's claim constructions" and that he "stayed within the Court's guidelines and properly applied its constructions." Docket No. 261 at 5. Specifically, McDonald's argues that "Gray applied the plain and ordinary meaning of "executing." Docket No. 261 at 5. McDonald's also provides that "while [the Court] rejected the argument that the questionnaire must necessarily be executed 'upon arrival,' it did agree that it had to be executed *at* 'said particular location.'" *Id.* (citing Docket No. 228 at 10) (emphasis in brief).

McDonald's argument is misleading and parses the language of the claim construction order inaccurately. Claim 7, read in full, provides:

> 7. A method for collecting survey data from a user and making responses available via the Internet, comprising:
>
> > (a) designing a questionnaire including at least one question said questionnaire customized for a particular location having branching logic on a first computer platform wherein at least one of said at least one questions requests location identifying information;
> >
> > (b) automatically transferring said designed questionnaire to at least one loosely networked computer having a GPS integral thereto;
> >
> > ***(c) when said loosely networked computer is at said particular location, executing said transferred questionnaire on said loosely networked computer, thereby collecting responses from the user;***

> (d) while said transferred questionnaire is executing, using said GPS to automatically provide said location identifying information as a response to said executing questionnaire;
>
> (e) automatically transferring via the loose network any responses so collected in real time to a central computer; and,
>
> (f) making available via the Internet any responses transferred to said central computer in step (e).

'748 Patent, Claim 7 (emphasis added).

The claim construction order construed step (c) of Claim 7 (emphasized above) to have its plain and ordinary meaning. Docket No. 228 at 8–11.[3] In doing so, the Court noted that McDonald's agreed that no further construction was needed for the term "when said loosely networked computer is at said particular location." *Id.* at 9 (citing Docket No. 205 at 7). The Court then continued to expressly deny McDonald's originally proposed requirement that the questionnaire be executed upon the device "arriving at the location." *Id.* (citing the '748 Patent at 8:18–24). The Court provided: "[T]o the extent that Defendants argue that a questionnaire must be executed upon arrival, the Court rejects this argument. The Court agrees with Defendants that the execution occurs 'when said loosely networked computer is at said particular location,' not before when the computer is at some other location." Docket No. 228 at 10.

Now, in what seems to be an attempt to circumvent the Court's claim construction order, McDonald's seeks to rely on the "at said particular location"—a term that McDonald's previously represented needed no further construction—to repurpose its "executed upon arrival" requirement. *See* Docket No. 301 at 73:14–19 (arguing at the hearing that: "After the briefing [on McDonald's motion for summary judgment of noninfringement], it's clear that there's one simple issue left for the Court to resolve, and that's does Claim 7 require designing a

---

[3] In contrast with the Court's order, Gray's report states "[n]o construction necessary" for this term, rather than plain and ordinary meaning. Docket No. 248-1 at ¶ 57.

questionnaire customized for a particular location prior to the steps of executing that questionnaire at the particular location and using the GPS to provide a response to that customized questionnaire?" and illustrating this question with the "mystery shopper" example where the questionnaire is executed after arriving at a particular location). This "simple issue left for the Court to resolve" has been resolved. Docket No. 228. [4]

Gray's expert report, in which Gray notes that he has "applied" the Court's claim constructions from its January 23, 2023 order, attempts to capture at least a portion of Defendants' construction that was rejected by the Court in his analysis of step (c). Docket No. 248-1 at 40–42 (opining that execution of the questionnaire must occur when or shortly after arriving at a particular location). Such disregard for the Court's construction exhibits that Gray has failed to reliably apply the legal principles of claim construction to the facts of the case. Thus, portions of Gray's opinions rest on unreliable legal foundations. *See Daubert*, 509 U.S. at 597. The Court, therefore, finds that Gray's opinions regarding step (c) of Claim 7 as requiring "when arriving" or "shortly after arriving" at a particular location must be excluded. *Treehouse Avatar LLC*, 54 F.4th at 715. Gray's opinions on this issue would not assist a trier of fact in understanding the evidence or determining a fact at issue; rather, Gray's opinions would confuse the issues and mislead the jury. Thus, Fall Line's motion on this issue is **GRANTED**. Gray shall

---

[4] Specifically, the Court noted that the "claim language requires a location, not necessarily the location of a brick-and-mortar business, and not necessarily the location of a user. Instead, the claim requires the location information of the loosely networked computer, which secondarily includes the location of the user if they are at the same location." Docket No. 228 at 11–12 (rejecting Defendants' argument that "location" meant "user's location" when construing "requests location identifying information"). Gray's report expressly rejects this concept. Docket No. 248-1, ¶ 108 ("The Russ Report contends that in 'testing,' the 'said particular location' is the location of the user's mobile device . . . . this opinion confuses the purpose of the purported inventions, which was to have a 'questionnaire' customized to a 'particular location,' meaning a place where a handheld device user would visit to submit 'survey data' relating to this remote 'location' or to an experience had at that 'location.'").

not be permitted to testify at trial that step (c) of Claim 7 requires a specific time of arrival (*i.e.*, that execution of the questionnaire must occur when arriving or shortly after arriving at a particular location). As explicitly stated in the claim construction order, "execution occurs 'when said loosely networked computer is at said particular location,' not before when the computer is at some other location." Docket No. 228 at 10. The plain language of the claim only requires the loosely networked computer to be "at said particular location," with no requirement that the computer "arrives at" the location or "shortly after arriving" at the location.

**Second**, Gray's opinion that the "questionnaire" must ask questions about the location contradicts the Court's claim construction order.

According to Fall Line, Gray first argued that "Claim 7 requires the 'questionnaire' to ask questions about the location or about the user's experiences at the location." Docket No. 248 at 8. Fall Line then argues that Gray also tied "his about-the-location" requirement to the preamble term "survey" to ultimately argue that the McDonald's application does not infringe because it does not collect survey data in the manner that a person of skill in the art would understand Claim 7 to require. *Id*. at 9–10 (citing Docket No. 248-1, ¶¶ 84–86).[5] Fall Line argues that Gray's limiting construction of the preamble is an attempt to circumvent the Court's construction of "questionnaire" by importing a "location" limitation into "survey." *Id.* at 8–11. Fall Line argues that Gray's position—that a person of skill in the art would "understand the patent's focus to be

---

[5] Fall Line also argues that McDonald's arguments are untimely. Docket No. 248 at 10. While the issue of timeliness has not been heavily weighed in this order, the Court agrees. After receiving the Court's claim construction order in January, if McDonald's felt it was needed, they should have immediately sought relief (*e.g.*, a motion for reconsideration or a motion for supplemental claim construction) immediately after McDonald's realized it needed this term to be construed. Instead, McDonald's allowed their contradictory positions to fester in Gray's report as months passed. Nevertheless, it is unlikely that any remedy would have been available to McDonald's on this issue, especially given the Court sees no merit to any of Gray's contradictory construction positions.

on tailoring a 'questionnaire' to a 'location' in the field where an individual, using a handheld device, could fill out the 'questionnaire' regarding the 'location[,]' or individual's experience at the 'location[,]' while at or shortly after leaving that 'location,'" Docket No. 248-1, ¶ 66—incorporates a limitation that "McDonald's never asked for." *Id.* at 9.

McDonald's responds that Fall Line "tries to confound [] Gray's construction of the term 'survey' with the term 'questionnaire,'" because only "questionnaire" was construed by the Court and Gray applied the plain and ordinary meaning of "survey" as a person of skill in the art would have understood it at the time of filing. Docket No. 261 at 6. As Gray explained in his report, the '748 patent "does not explicitly define" "survey," but a person of skill in the art would "understand that 'survey' is meant to be a series of questions for a user of a handheld device to answer about a 'location' they are at (or recently departed from) or an experience they may have had at such a 'location.'" Docket No. 248-1, ¶ 84. McDonald's explains that "Gray looked to the patent's intrinsic record to come to his determination of the term's meaning" and that "Fall Line's disagreements with the results are best dealt with [during] cross-examination and not through exclusion." Docket No. 261 at 6. McDonald's also asserts that "Gray explicitly states his understanding that 'the Court has not found the preamble to be limiting'" to support the propriety of the position expressed in his report. *Id.* at 7.

Here, as with step (c) above, McDonald's arguments are misses the mark—Gray's positions regarding a limiting preamble are not faithful to the Court's claim construction order. Docket No. 228. During claim construction, neither party moved for a limiting construction of the preamble (where "survey" appears), and McDonald's represented that they did not believe that construction was necessary for "questionnaire." Docket No. 205 at 4–5 (McDonald's also stated that it had "no objection to the Plaintiff's proposed construction" of "questionnaire").

Ultimately, the Court construed "questionnaire" to mean "a program or form that includes a question or statement, which calls for a response." Docket No. 228 at 8. Nothing in the Court's construction requires the claimed "questionnaire" or "survey" to be limited to questions about the "location" in the manner Gray now opines.[6] *See, e.g.*, Docket No. 248-1, ¶ 85.

Further, Gray's report explains that he understands "that, in this case, the Court has not found the preamble to be limiting." Docket No. 248-1, ¶ 82. Yet Gray continues to opine that, "if the preamble is limiting, the Russ Report has not shown Defendants to have met this limitation." *Id.*, ¶ 83. In the paragraphs that follow, Gray applies his limiting construction of the preamble to determine that Fall Line's expert, Russ, has offered an infringement opinion that has "not shown that Defendants [] have met this limitation." *Id.*, ¶¶ 83–86. This logic is flawed: Gray challenges Russ for not meeting a claim limitation that would result if the Court construed the preamble in the manner proposed by Gray, but McDonald's did not seek a limiting construction of the preamble during claim construction. *See Symantec Corp. v. Comput. Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288 (Fed. Cir. 2008) (explaining that preambles are generally not limiting).

Finally, to the extent that Gray believes the preamble is limiting, McDonald's has failed to take action to advance this position with the Court. Instead, counsel suggests that Gray should be permitted to testify to the jury on a limiting construction that is outside of the four corners of the Court's claim construction order (and contradicts the patent itself) and that Fall Line should point out the flaws in Gray's opinions during cross-examination. Docket No. 286 at 3–4. This suggestion ignores a fundamental principle of claim construction jurisprudence: Fall Line's

---

[6] Further, Gray's incorrect construction directly contradicts embodiments in the specification, including the "mystery shopper" embodiment. *See, e.g.*, '748 Patent at 10:37–11:42.

disagreement with Gray's claim construction positions **cannot** be dealt with on cross-examination because claim construction is a question of law that cannot be argued to the jury. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) (citations omitted) (explaining that "it is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction'"); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). Rather, claim construction should be argued to the judge and, after a determination has been reached by the court, a jury's role is to apply those constructions to reach a verdict on the factual disputes in the case. Whether the preamble is limiting should never reach a jury.

For at least these reasons, Gray shall not be permitted to testify with respect to his limiting construction of the preamble. Accordingly, Gray shall not import a requirement that the "questionnaire" or "survey" terms be limited solely to questions about "location." And Gray shall not argue his limiting preamble opinions at trial. Thus, Fall Line's motion on this issue is **GRANTED**.

*Third*, Gray's opinions regarding "central server" also conflicts with the Court's construction and further calls Gray's credibility into question.

Fall Line argues that Gray's position that McDonald's does not infringe based on a "central server" requirement is problematic because (1) "Claim 7 requires responses to be transferred to a 'central computer' not a 'central server'" and (2) Gray's "central server" construction is unsupported. Docket No. 248 at 11–12.

In its response, McDonald's admits that "the term is actually 'central computer,' but [] Gray explains his opinions from the perspective" of a person of skill in the art who "would have understood a 'computer' that is 'central' to be a 'server.'" Docket No. 261 at 7.

McDonald's arguments are not persuasive; rather, they represent a thinly veiled attempt by McDonald's counsel to resuscitate Gray's "central server" opinions, a term that is not present in Claim 7. Contrary to McDonald's representations, Gray's expert report does not advance a position that a person of skill in the art "would have understood a 'computer' that is 'central' to be a 'server.'" Docket No. 248-1, ¶¶ 115–19. Rather, Gray merely opines that the accused McDonald's application does not operate with a "central server" as a person of skill in the art would have understood that term. *Id.*, ¶ 119. The explanation that McDonald's now offers to save Gray's "central server" analysis is not present in Gray's report; in fact, McDonald's response cites no support—in Gray's opinion or otherwise—for its argument. Docket No. 261 at 7.[7]

Fall Line's motion on this issue is **GRANTED**. Gray shall not be permitted to offer his "central server" positions at trial, nor opine that a person of skill in the art would understand a "central computer" to be a "central server."

### c. *Gray shall not testify that Russ failed to respect the Court's claim construction order.*

Fall Line argues that Gray should not be allowed to testify that Fall Line's expert, Russ, "failed to respect the reasoning supplied by the Court in reaching its construction of the 'requests location identifying information'" term. Docket No. 248 at 12. Fall Line contends that Gray should not be permitted to "police" the Court's claim construction order and make claim construction arguments in front of the jury. *Id.* McDonald's responds that "Gray's discussion of the reasoning in the Court's order was meant to remain in compliance with it." Docket No. 261

---

[7] Further, to the extent that may have Gray accidentally referred to the "central computer" term as "central server" in his report, an argument McDonald's does not make in its briefing, there is no evidence that Gray filed an erratum or otherwise sought to correct the error upon discovering the mistake.

at 8 (citing Docket No. 248-1, ¶ 102). McDonald's argues that Gray may opine that "Dr. Russ's failure to adhere to the Court's reasoning violates the Court's claim construction order. . . to ensure the parties constrain any testimony and opinion to the Court's reasoning." *Id.*

If Russ did not adhere to the Court's reasoning, it should be handled through a *Daubert* motion, not expert testimony. As briefly explained above, claim construction is a question of law that cannot be argued to the jury. *See Cordis Corp.*, 561 F.3d at 1337. Further, the Court's claim construction order provides:

> [I]n the presence of the jury, the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

Docket No. 228 at 18.

Thus, Fall Line's motion is **GRANTED**. The parties and their experts shall not expressly or implicitly refer to any claim construction position taken by themselves or any other party. Any discussion or reference to claim construction offered by the parties and their experts in the presence of the jury shall be limited to the constructions adopted by the Court.

### d. Gray shall not testify on non-infringing alternatives or non-infringing uses at trial.

Fall Line argues that Gray failed to provide any technical feasibility analysis of non-infringing alternatives in his report, even though he "was apparently asked" to do so. Docket No. 248 at 13. As a result, Fall Line argues that he should not be permitted to testify on non-infringing alternatives at trial. *Id.* (explaining that "Gray never addressed any of the issues necessary to establish the availability of acceptable non-infringing alternatives—not even their technical feasibility," and arguing that Gray has failed "to disclose any opinions that he may wish to offer about non-infringing alternatives" at trial); *see also* Docket No. 279 at 6. Fall Line

also argues that Gray's opinions on non-infringing uses fail to "apply the correct test." Docket No. 248 at 14.

McDonald's responds that Fall Line's argument confuses "Gray's opinions regarding non-infringing *uses* for non-infringing *alternatives*," and that Gray should be permitted to opine on the non-infringing uses that are covered in his report. Docket No. 261 at 8 (emphasis in original) (citing 248-1 at ¶¶ 93, 96).

McDonald's response implies that Gray will not offer testimony regarding non-infringing alternatives at trial. *See* Docket No. 261 at 8. McDonald's, however, does not respond directly to Fall Line's non-infringing alternatives argument. *See* Docket No. 261 at 8–9; Docket No. 286. Upon review of Gray's report, he offers no opinion on non-infringing alternatives. *See* 248-1. Thus, this portion of Fall Line's motion is **GRANTED**. Gray shall not testify on non-infringing alternatives before the jury.

Next, regarding Fall Line's arguments about Gray's opinions on non-infringing uses, Gray's limited discussion of substantial non-infringing use appears to be in the context of his discussion of whether McDonald's "infringe[s] Claim 7 'jointly with their customers,'" as alleged in the Russ report. *Id.*, ¶¶ 78–81. Gray explains that McDonald's application "can be used simply to look up store locations, research menu items, monitor a customer's rewards account, and review and redeem deals or offers" and suggests that these features create substantial non-infringing uses that Russ failed to address in his report. *Id.*, ¶ 80.

For Fall Line to prove contributory infringement, it must establish liability under 35 U.S.C. § 271(c) by proving four elements by a preponderance of the evidence. 25 U.S.C. § 271(c); *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (emphasis added) ("To establish contributory infringement, the patent owner must show the following

elements . . . : 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has *no substantial non[-]infringing uses*, and 4) that the component is a material part of the invention.").

Here, Gray's opinion appears to challenge Russ's position that the application has no substantial non-infringing uses based solely on the presence of additional features in the McDonald's application. Docket No. 248-1 at ¶ 80. This argument, however, has been rejected by the Federal Circuit. *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) (explaining that allowing such arguments would render it "rather easy" for one to evade the protection intended by Congress when it enacted Section 271(c)).

Thus, this portion of Fall Line's motion is **GRANTED**. Gray shall not testify before the jury that the McDonald's application has substantial non-infringing uses based on the presence of additional features (*e.g.*, the ability to use the application to look up store locations, research menu items, monitor customer rewards, or review and redeem deals or offers). Such testimony lacks a legal foundation and would not assist the jury in reaching its decision on a question of fact in this case.

***

For the reasons explained above, the Court finds that Fall Line's motion (Docket No. 248) should be **GRANTED-IN-PART** and **DENIED-AS-MOOT-IN-PART**.

## 2. Gray's Invalidity Opinions (Docket No. 249)

In Fall Line's motion challenging Gray's invalidity opinion, Fall Line presents a number of arguments relating to Gray's Section 101 and patent prosecution history opinions. Docket No. 249; *see also* Docket No. 280.

Fall Line argues, *inter alia*, that Gray's Section 101 opinions should be excluded because Gray failed to apply the Court's claim constructions in his report. Docket No. 249 at 4–5. Fall

Line explains that, instead of applying the Court's claim constructions, Gray applied the "plain and ordinary meaning" of the claim terms for each and every limitation. *Id.* (citing Docket No. 249-1, ¶ 29).

In response, McDonald's argues that "Gray did not depart from the Court's claim constructions because "the Court had not yet issued its claim construction order" at the time that Gray served his expert report. Docket No. 262 at 6; *see also* Docket No. 249-1, ¶ 63. McDonald's further explains that "although [] Gray reserved the ability to supplement his report after the Court issued the claim construction order, he was not required to do so, especially not when, as here, the Court's constructions did not alter [] Gray's opinions." Docket No. 262 at 6.[8]

Gray failed to apply the Court's constructions. It does not matter that this failure occurred prior to the Court's claim construction order—when he served his report, he noted "[t]o the extent that the Court issues an order regarding claim construction, I understand that those constructions will apply as a matter of law." Docket No. 249-1, ¶ 29.[9] Gray also "reserve[d] the right to supplement and/or amend [his] analysis and opinions set forth in [my expert report]," in the event that the Court issued a claim construction order. *Id.*

---

[8] The Court notes that, while McDonald's argues that Gray's opinion remains unchanged, Gray himself failed to submit any supplemental report or statement indicating the impact of the Court's claim construction order on his Section 101 analysis. Because claim construction is an important part of a Section 101 analysis, it is unclear how his opinions can remain unchanged. McDonald's fails to provide a satisfactory explanation for the Court's consideration.

[9] To the extent that McDonald's now seeks to place blame upon the Court for McDonald's own failure, this is unpersuasive. The Court issued a claim construction order on January 23, 2023. Docket No. 228. This order was issued promptly after the parties informed the Court that, despite the *inter partes* review proceeding, claim construction was still required—the parties informed the Court of this issue in passing in their Joint Motion for Entry of a Mediation Deadline (Docket No. 184) on December 5, 2022. After the parties notified the Court of outstanding claim construction disputes, the Court acted quickly—ordering the parties to submit supplemental claim construction briefing by December 23, 2022. Docket Nos. 201, 205. One month later, amid the many contemporaneous discovery disputes in this action, the Court issued its claim construction order. Docket No. 228.

Based on his own understanding of the applicable law, as described in his report, Gray should have submitted a supplemental or amended expert report following the issuance of the Court's claim construction order (Docket No. 228) on January 23, 2023. Gray failed to do so. Instead, he maintained his application of what he "understand[s] to be the plain and ordinary meaning of the claim terms as understood by a person of ordinary skill in the art at the time of the alleged inventions." Docket No. 249-1, ¶ 29.[10]

Gray's Section 101 opinions must be excluded because they are not the product of a reliable application of the principles of law to the facts of this case. He has failed to reliably apply the legal principles that were explained to him for the purposes of arriving at his conclusion, *id.*, ¶¶ 28–29, and he has failed to apply the Court's claim constructions to the facts of this case, *see, e.g.*, *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (noting that claim construction is an important part of a Section 101 analysis); *see also Treehouse Avatar LLC*, 54 F.4th at 715 (noting that a court may strike expert testimony that is based on claim constructions that are materially different from the court's construction). The Court should not be required not comb through Gray's report to determine whether his application of his "plain and ordinary" claim constructions "did not alter" his opinion as McDonald's alleges in their response. Docket No. 262 at 6. This is McDonald's burden, which they failed to meet.

---

[10] Further calling Gray's methodology into question, his application of the plain and ordinary meaning of each claim term was not faithful to the proposed constructions of the disputed terms that Defendant submitted to the Court on December 22, 2022—more than two weeks before Gray served his expert report. His report does not even apply the Defendants' own proposed constructions (much less the constructions proposed by each party). *Cf. Treehouse Avatar LLC*, 54 F.4th at 715 (explaining that "any expert theory that does not rely upon that agreed-upon construction is suspect.")

Thus, Fall Line's motion to exclude Gray's Section 101 opinions is **GRANTED** and Gray shall not testify regarding invalidity under Section 101 before the jury.[11]

Next, Gray's opinions relating to the prosecution history of the patent-in-suit are not admissible. Fall Line argues that "Gray does not tie his opinions regarding what happened during the prosecution of these patent applications to his ultimate opinion that Claim 7 is invalid under [S]ection 101." Docket No. 249 at 11. Fall Line also argues that Gray does not "even attempt to explain the significance of these prosecution histories" but that he "appears to be suggesting— with no analysis whatsoever—that Claim 7 is similar to other claims that were considered and rejected by the Patent Office." *Id.* at 11–12. McDonald's responds: "Gray simply recites the facts of the prosecution history. Fall Line's inapposite authority precludes an expert from opining on the significance of prosecution histories, but where, as here, the expert offers no such opinion, there is no basis for any exclusion." Docket No. 262 at 9.

Noticeably absent from McDonald's response is support—factual or legal—for their position. Upon review of Gray's opinions relating to the patent's prosecution history (*see* Docket No. 249-1 at ¶¶ 85, 93–97), it is unclear that any of the opinions offered would assist the jury in reaching its determination of a fact at issue. Further, McDonald's provides no explanation that assists the Court in understanding how Gray's opinions are relevant to the fact issues that the jury will be asked to determine at trial.

Upon review of the analysis provided in Gray's report, the Court sees no purpose for which Gray's prosecution history analysis could be admissible. Rather, allowing Gray to opine on the prosecution history of the '748 patent in the context of the prosecution history of other

---

[11] The Court need not reach a decision on Fall Line's other arguments because Gray's failure to apply the Court's claim constructions renders his entire Section 101 analysis unreliable.

patent applications in the patent family, would confuse the issues that the jury will be asked to decide. Fed. R. Evid. 403, 702.

For at least this reason, Fall Line's motion regarding Gray's prosecution history opinions is **GRANTED**. Gray shall not testify regarding the prosecution history of the patent-in-suit, or any other patent or patent application, discussed in his report.

***

For the reasons explained above, the Court finds that Fall Line's motion (Docket No. 249) should be **GRANTED**.

### C.    Thomas McGahee (Docket No. 250)

In Fall Line's motion to exclude the opinions of Thomas McGahee, it argues that the Court should exclude McGahee's damages opinions based on certain settlement agreements and non-infringing alternatives, and that the Court should exclude McGahee's criticism of Blok's royalty base. Docket No. 250. This motion has been fully briefed and argued. Docket Nos. 250, 260, 281, 293, 301.

Fall Line objects to McGahee's reliance on Fall Line's settlement agreements with Pizza Hut, Starbucks and Papa John's. Docket No. 250 at 4. Fall Line argues that these are compromise agreements, made to avoid the costs and risks of litigation, that do not reflect a reasonable royalty that would have resulted from hypothetical negotiations. *Id.* at 4–6. Instead, Fall Line argues that the Dri-Eaz agreement bears a closer link to the technology at issue in this case and represents a running royalty. *Id.* at 10–11. Ultimately, Fall Line argues McGahee's opinions on these settlement agreements should not be admitted under Federal Rules of Evidence 408 and 403, and *Daubert*. *Id.* at 6–11.

McDonald's responds that it should be permitted to rely on the three disputed agreements because they are "economically and technologically comparable to a hypothetical license with McDonald's given that the licenses all compete in the fast-food market and provide app[lications] that offer mobile ordering, and each of these licenses was limited to the '748 Patent." Docket No. 260 at 5. McDonald's explains that the three disputed agreements "are admissible because they are the only comparable licenses" and that the Dri-Eaz agreement is not comparable. *Id.* at 9. McDonald's explains that the Dri-Eaz agreement relates to a different patent—the '816 Patent—and a company in the water restoration industry. *Id.* at 10.[12] McDonald's also explains that the Dri-Eaz agreement involved a "documentation tool" that did not use GPS or location services, and that this license relates to a "bundle of contingent agreements including a copyright license." *Id.*

Upon a showing of patent infringement, a patentee is entitled to compensatory damages for the infringement amounting to no less than "reasonable royalty" for the infringer's use of the invention. 35 U.S.C. § 284. Courts generally consider the *Georgia-Pacific* factors to determine the "reasonable royalty" that would result from a "hypothetical negotiation." *See, e.g., ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (citing *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970)).

Under the *Georgia-Pacific* factors, royalties received by the patentee for the licensing of the patent-in-suit that prove or tend to prove an established royalty, as well as the rates paid by a licensee for the use of other patents comparable to the patent in suit, may be considered as part of the larger analysis. *Georgia–Pacific Corp.*, 318 F.Supp. at 1120. "A reasonable royalty may be a

---

[12]In a footnote, McDonald's acknowledges that the Dri-Eaz agreement "included at least the '816 and '748 Patents in its scope" but argues that "the parties understood their negotiations to relate to the '816 Patent, not the as-yet unissued '748 Patent." Docket No. 260 at 9 n.3.

lump-sum payment not calculated on a per unit basis, but it may also be, and often is, a running payment that varies with the number of infringing units." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

Calculating a reasonable royalty is a difficult task and it is important not to allow licenses and rates to muddy the waters when they are completely unrelated and serve only to artificially increase or decrease the reasonable royalty. For example, lump sum payments that cannot be "analogize[d] to a running royalty rate" and licenses that show no "discernible link to the claimed technology" at issue cannot be considered. *ResQNet.com*, 594 F.3d at 870 (citations omitted). And courts should, at the very least, be dubious of reasonable royalty calculations that consider licenses that were entered into under the threat or presence of litigation. *See id.* at 872. The Federal Circuit, however, has found that settlement agreements entered into as a result of patent infringement actions are admissible where the expert explains the relevance of such agreement and accounts for the fact that the settlement was prompted by litigation. *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1300 (Fed. Cir. 2019).

Here, Fall Line seeks to exclude McGahee's opinions based on the Pizza Hut, Starbucks and Papa John's agreements. Docket No. 250 at 4. Each of these agreements is a "Settlement and License Agreement" involving the '748 patent—the same patent-at-issue in this case. Docket Nos. 250-2, 250-3, 250-4. Because these agreements are based on comparable technology and uses, the Court focuses its analysis on whether the economic circumstances of those licenses— that they were entered into to avoid the risks of litigation and involve lump sum payments— prevent them from being "sufficiently comparable" to the hypothetical license that would issue in this suit. *See Virnetx, Inc.*, 767 F.3d at 1330–31 (citation omitted). While "vague comparability between different technologies or licenses does not suffice," the reasonable royalty

analysis is not limited to considerations with identical circumstances—by its nature, the reasonable royalty analysis involves some "approximation and uncertainty." *See id.*

In his report, McGahee opines that some of Fall Line's settlement and license agreements, including the three disputed agreements, provide "relevant information regarding the licensing value of the '748 Patent." Docket No. 250-1, ¶ 35.[13] He compares the terms of the agreements with each other—considering, for example, the extent of alleged use based on the number of stores operated by the various licensees and the stage of the litigation at the time that the parties settled. *E.g.*, *id.*, ¶¶ 37–47. McGahee opines that the three disputed agreements "are more informative" than other agreements (*e.g.*, the Panda Express agreement) because larger licensees like Starbucks, Pizza Hut and Papa John's "are more informative as to the likely royalty payment that would have been negotiated" during a hypothetical negotiation with McDonald's. *E.g.*, *id.*, ¶¶ 41, 42, 47. After determining that the agreements at issue were significantly comparable, McGahee applied the *Georgia-Pacific* factors—stating certain factual considerations that he weighed and explaining the weight those considerations carried in reaching his conclusions. *Id.*, ¶¶ 32–90.

Upon review of the arguments raised by the parties and the opinions offered in McGahee's report, McGahee's damages opinions based on the agreements with Pizza Hut, Starbucks and Papa John's are not inadmissible based on his reliance on the disputed agreements. Further, if Fall Line does take issue with Gray's reliance on the three disputed agreements, it can properly address those concerns through cross-examination. *See Daubert*, 509

---

[13] McGahee's report also includes analyses of agreements between Fall Line and other restaurant chain stores across the United States. Docket No. 250, ¶ 34 (noting six agreements). The other licenses McGahee considered include licenses with Zoe's Kitchen/Cava, Panda Express and Boston Market. *Id.*

U.S. at 596 (explaining cross-examination is the traditional and appropriate means of attacking admissible evidence); *i4i Ltd. P'ship, Infrastructure for Info. Inc. v. Microsoft Corp.,* 598 F.3d 831, 856 (Fed. Cir. 2010) (explaining the jury was entitled to hear a damages expert's testimony, despite potential flaws, and decide for itself whether to accept or reject his opinions); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211–12 (Fed. Cir. 2010) (noting that differences with past licenses used under *Georgia-Pacific* factors 1 and 2 must be accounted for and finding that presenting these differences to the jury allowed "the jury to properly discount" the license relied upon to prove an established royalty).

Fall Line's Rule 408 and 403 arguments are likewise unpersuasive. The disputed agreements are Fall Line's consummated agreements with third-parties—such agreements are relevant and routinely considered as part of a court's reasonable royalty analysis. *See Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*, No. 16-CV-01904-RM-MJW, 2017 WL 4334075 (D. Colo. May 2, 2017) (applying case law from the Federal Circuit and this district to find that plaintiff's settlement agreements with third parties was not inadmissible under Rule 408); *Labyrinth Optical Techs. LLC v. Alcatel-Lucent USA, Inc.*, No. SACV120759AGMLGX, 2015 WL 12720323, at *2 (C.D. Cal. Mar. 10, 2015) (finding that Rule 403 did not preclude defendant from relying on settlement agreements).

For at least these reasons Fall Line's motion (Docket No. 250) on this issue is **DENIED**. McGahee may rely upon the disputed agreements (Docket Nos. 250-2, 250-3, 250-4) as part of his reasonable royalty analysis.

Fall Line also argues McGahee's opinions criticizing Blok's royalty base should be excluded because McDonald's did not timely disclose non-infringing alternatives. Docket No. 250 at 12–15. According to Fall Line, McGahee relies on Gray's inadmissible non-infringement

opinions for support, and McGahee and Gray both failed to opine that the alleged non-infringing alternatives were available or acceptable. *Id.*

Fall Line explains that, in January of 2019, it served an interrogatory on McDonald's asking McDonald's to identify any non-infringing alternatives. *Id.* at 12 (citing Docket No. 250-7). On the last day of fact discovery, in January of 2023, McDonald's provided a supplemental response to this interrogatory that disclosed McDonald's alleged non-infringing alternatives. *Id.* at 13 (citing Docket No. 250-8). This supplemental "response—served only four days before [] Blok's opening report on damages—obviously did not provide Fall Line with an opportunity to obtain discovery on non-infringing alternatives." *Id.* In view of these circumstances, Fall Line moves to exclude McGahee's opinions on the untimely disclosed non-infringing alternatives. *Id.*

First and foremost, McGahee may not present testimony that relies on Gray's now-excluded opinions. *See supra,* Section I.B. Moreover, McDonald's does not respond to Fall Line's arguments that they failed to timely disclose. *See* Docket No. 260 at 13–15. Instead, McDonald's focuses its argument on distinguishing McGahee's non-infringing uses opinions from non-infringing alternatives. Docket No. 260 at 13 ("Fall Line conflates non-infringing alternatives with non-infringing uses.").

McDonald's makes no attempt to address its choice to disclose its non-infringing alternatives positions on the last day of fact discovery. *See* Docket Nos. 260, 293. By choosing to disclose its positions regarding non-infringing alternatives on the last day of discovery, McDonald's stripped Fall Line's expert of any meaningful opportunity to address these previously undisclosed positions four days later in his opening report.

Such tactics are certainly unfairly prejudicial and serve as grounds to exclude McGahee's opinions relating to the availability of non-infringing alternatives. FED. R. EVID. 403. This case

has been pending for four years. At present, without the benefit of any explanation from McDonald's, it is impossible for the Court to see any logical reason that McGahee should be permitted to opine on matters to which Fall Line's own expert could not respond based on McDonald's delay.[14]

Beyond this, regarding Fall Line's arguments that McGahee should not be permitted to opine on non-infringing alternatives or that Blok overstated his royalty base, McDonald's arguments suggesting that McGahee offers non-infringing use and not non-infringing alternative opinions is misleading. *See* Docket No. 260 at 13–15. In his report, McGahee provides:

> I understand that McDonald's has identified at least the following available ***non-infringing alternatives*** to the claimed teachings of the '748 Patent:
>
> a. "Disabling the ability for users of the GMA [i.e., McDonald's App] to provide the location of their mobile device when operating an instance of the GMA automatically via use of a GPS receiver";
>
> b. "Requiring a user to manually input the location of their mobile device when operating an instance of the GMA"; and
>
> c. "Disabling the ability for users of the GMA to run an instance of the GMA when their mobile device is within certain proximity of a McDonald's store location."

Docket No. 250-1, ¶ 70 (citing Docket No. 250-8 at 20) (emphasis added). He goes on to opine that "Blok utilized an overstated claimed royalty base, which may have included mobile orders by users ***without location services enabled and mobile orders that McDonald's contends should be excluded from the royalty base***." *Id.*, ¶ 113; *see also id.*, ¶ 114 (listing four categories of "transactions [that] could be included in the claimed royalty base despite not utilizing the Accused Functionality" that correlate with the non-infringing alternatives identified by

---

[14] In addition to failing to address its decision to supplement its response on the last day of fact discovery, McDonald's has sought exclusion of Fall Line's rebuttal evidence because it was not disclosed during fact discovery. McDonald's attempt to penalize Fall Line for McDonald's untimely disclosure and mislead the Court cannot be rewarded.

McDonald's). McGahee's opinions that Blok relies on an overly broad royalty base by including non-infringing uses correlates with McDonald's non-infringing alternative positions that they disclosed on the last day of fact discovery.

Further still, even if they are not considered non-infringing alternatives, McGahee's non-infringing uses positions are inadmissible because McGahee's opinions are based on Gray's inadmissible non-infringement opinions. As explained in Section I.B.1. above, an infringing party cannot escape a finding of contributory infringement under 35 U.S.C. § 271(c) by arguing that substantial non-infringing uses exist based on additional features.

Finally, McGahee may not opine that Blok overstated the royalty base because Blok relied on McDonald's representations in its interrogatory response rather than some other metric. Fall Line explains that "Blok used the transaction and revenue data finally provided by McDonald's as the royalty base for his damages analysis." Docket No. 250 at 16. (citing Docket No. 250-6, ¶¶ 113–15). Fall Line explains that "Blok also adjusted those numbers for the small percentage of McDonald's users that do not turn on location services." *Id.* (citing Docket No. 250-6, ¶¶ 56–59).

For example, McGahee opines that Blok's adjustment taking into consideration that only 95.7 percent of McDonald's application users opt into allowing the use of location services, in part, causes "uncertainty regarding the precise number of transactions that utilize the Accused Functionality weighs against [] Blok's opinion that a running royalty payment structure is appropriate in this matter." Docket No 250-1, ¶¶ 113–16. But McDonald's represents they do not track "the precise number of transactions" and Blok's adjustments were based on McDonald's response to Fall Line's Interrogatory No. 5, where McDonald's provided three months of data and stated that "over that period, 95.7% of McDonald's mobile application users opted into the

use of location services." Docket No. 270-6 at 8. And McDonald's arguments that the discovery related to Fall Line's Interrogatory No. 5 does not get "to the crux of infringement" are not persuasive either. Docket No. 293 at 6–7 (arguing that Fall Line's request for discovery on how often users choose to "allow location access never, ask each time, only while using app[lication], or always" does not get to "the number of times a user places an order using location services").

For at least these reasons, Fall Line's motion on these issues is **GRANTED**. McGahee shall not opine on non-infringing alternatives (or non-infringing uses) and shall not opine that Blok applied an overstated royalty base through his inclusion of transactions completed with a non-infringing use, or Blok's use of McDonald's own transaction and revenue data and location services enablement data.

***

For the reasons explained above, the Court finds that Fall Line's motion (Docket No. 248) should be **GRANTED-IN-PART** and **DENIED-IN-PART**.

### D.     Justin Blok (Docket No. 242)

In McDonald's motion to exclude Justin R. Blok's testimony at trial, McDonald's argues that Blok (1) failed to properly apportion; and (2) offered speculative royalty opinions. Docket No. 242. This motion has been fully briefed and argued. Docket Nos. 242, 270, 273, 292, 301.

McDonald's argues that Blok failed to properly apportion and instead opted to rely "on built-in apportionment based on the Dri-Eaz License," which McDonald's contends is not comparable. Docket No. 242 at 8–9. In addition, McDonald's argues that "Blok did not compare the licensed product with the accused technology" and instead "assumed that the [Dri-Eaz application] used the asserted technology in a comparable manner to that alleged of the McDonald's app[lication], without any analysis of how this might be the case." *Id.* at 10. Fall Line responds that Blok did not fail to apportion; rather, he properly relied on "built in

apportionment" based on a technologically and economically comparable license. Docket No. 270 at 8–9 (citing Docket No. 270-1, ¶ 102).

As noted above, a patentee is entitled to compensatory damages for infringement amounting to no less than the "reasonable royalty" for the infringer's use of the invention upon a finding of infringement. 35 U.S.C. § 284. The "reasonable royalty" that would result from a hypothetical negotiation is frequently determined by considering the *Georgia-Pacific* factors to determine the "reasonable royalty" that would result from a "hypothetical negotiation." *E.g.*, *ResQNet.com, Inc.*, 594 F.3d at 869 (citation omitted). Under the *Georgia-Pacific* factors, the rates paid by a licensee for the use of other patents comparable to the patent-in-suit may be considered as part of the larger analysis. *Georgia–Pacific Corp.*, 318 F.Supp. at 1120.

When considering rates paid by a licensee for the use of other patents, a court must determine whether the "licenses relied on by the patentee in proving damages are sufficiently comparable to the hypothetical license at issue in suit." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (citation omitted). In reaching a determination that a license is "sufficiently comparable," courts must "exercise vigilance" in their comparison and "account for differences in the technologies and economic circumstances of the contracting parties." *Virnetx, Inc.*, 767 F.3d at 1330 (citations omitted). This is because, ultimately, "[n]o matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *Id.* at 1326. As the Federal Circuit explained, "[t]he law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product." *Id.* at 1329. However, when "a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required." *Vectura Ltd. v. Glaxosmithkline LLC*,

981 F.3d 1030, 1040 (Fed. Cir. 2020) (citations omitted). "That is because a damages theory that is dependent on a comparable license . . . may . . . have 'built-in apportionment.'" *Id.* (citing *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015)).

"Built-in apportionment effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent." *Id.* at 1041 (citing *Commonwealth Sci. & Indus. Rsch. Org.*, 809 F.3d at 1301–04). Thus, "a party relying on a sufficiently comparable license can adopt the comparable license's royalty rate and royalty base without further apportionment . . . ." *Id.* (citations omitted). The Federal Circuit has held that experts' reasonable royalty analyses were not inadmissible based on their use of built-in apportionment under various circumstances. *See, e.g., Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1376–77 (Fed. Cir. 2020) (explaining that the plaintiff's expert's opinions relying on built-in apportionment were admissible even though he "failed to provide any numerical value to support his analysis" and explaining that "there is no blanket rule of *quantitative* apportionment in every comparable license case") (emphasis in original); *Elbit Sys. Land & C4I Ltd*, 927 F.3d at 1300 (finding expert's 20-percent increased adjustment to prior agreements involving a per unit royalty for "one-way technology" to account for added benefits of "two-way technology" involved in suit were not inadmissible where the expert explained the relevance of the prior settlement).

Thus, the Court must first determine whether the Dri-Eaz agreement is sufficiently comparable before the Court determines whether Blok's use of built-in apportionment was methodologically sound under the law. This determination requires the Court to consider

whether the Dri-Eaz license and the asserted patent are technologically and economically similar. *See ResQNet.com, Inc.*, 594 F.3d at 873.

Based on the briefing, Fall Line persuasively argues the technology licensed in the Dri-Eaz agreement is similar to the technology of the asserted patent. McDonald's argument focuses on Blok's alleged failure "to compare the licensed product and the accused technology" and his assumption that the Dri-Eaz application "used the asserted technology in a comparable manner to that of the McDonald's" application based on his conversation with Russ. Docket No. 242 at 10. "But [] Russ did not consider the [Dri-Eaz application]." *Id.* at 11.

Fall Line responds that Blok did consider the technological comparability of the Dri-Eaz agreement. Docket No. 270 at 3. Fall Line alleges Blok explained that he relied on Russ's technical comparison of the '816 patent (licensed in the Dri-Eaz agreement) with the '748 patent (asserted in this suit). *Id.* (citing Docket No. 270-1, ¶ 101 (explaining that, during his interview with Russ, Russ said that "the '816 and '748 Patents are drawn to an identical field of art and their specifications present identical solutions to problems in the field").

Russ's report included a "Technical Comparability of Certain Licenses" section where he compared "the subject matter of the claim in suit to the subject matter covered by a license, specifically a license [involving the '816 patent]." Docket No. 270-2, ¶ 108. In the paragraphs that follow, Russ explained that the patents share the same specification and are part of the same patent family, and that Claim 7 of the '748 patent "covers generally the same subject matter as claims of the '816 patent." *Id.*, ¶¶ 109–10. He noted that Claim 7 of the '748 patent

> . . . adds the limitation that one question involves location-identifying information gathered using, at least in part, GPS information. This feature is especially beneficial because it is the use of location identifying information that provides much of the value of [C]laim 7. It leverages the fact that the mobile device is, in fact, mobile in order to provide a location-customized user experience. It enables

a graceful user experience, where a user can easily find and order from a local McDonald's restaurant.

*Id.*, ¶ 111. Russ also noted that "McDonald's has itself acknowledged the similarity of the two patents and their responsive claims" and provided several of McDonald's own statements for support. *Id.*, ¶¶ 113–115 (citations omitted).[15]

Blok's methodology is not unreliable merely because he relied on Russ's technical opinions for support. *E.g.*, *Bio-Rad Lab'ys, Inc.*, 967 F.3d at 1376 (noting that defendant's damages expert, whose opinions were admissible at trial, "relied on the reports, testimony, and conclusions of other witnesses to understand that the licenses were technologically comparable, and that the proportion of licensed/unlicensed features was comparable to the present case").

McDonald's arguments that Russ conceded that Claim 7 of the '748 patent "adds the requirements of using location-identifying information and GPS" are not persuasive to support McDonald's position that the license is not technically similar either. *See Elbit Sys. Land & C4I Ltd*, 927 F.3d at 1300 (noting that plaintiff's expert, whose opinions were admissible at trial, relied on a prior settlement agreement involving a "one-way" system where the patent-in-suit involved a "two-way" system). Thus, a reasonable jury could find that this added feature, when considered with the Blok's other opinions, is an added value that shows the Dri-Eaz license is conservative and supports the royalty Fall Line seeks. Any assertion that Blok did not sufficiently consider Russ's statement about the specific value of using location-identifying information and GPS, or that Russ did not sufficiently address the Dri-Eaz application (*see, e.g.*, Docket No. 242 at 6–7) goes to the weight and credibility of Blok's expected testimony, not its admissibility.

---

[15] McDonald's has challenged Russ's expert opinions. *See* Docket No. 244. Their motion did not raise issues with his technical comparison of the '816 and '748 patents.

Further, McDonald's argument that Blok's opinions are inadmissible because neither he (nor Russ) compared the Dri-Eaz application to the McDonald's application is not persuasive. McDonald's cites no authority to support its position that the licensee's products **must** be compared to the accused products as part of the technical comparison analysis. From McDonald's argument, it is unclear how the end products impact the technical comparability of the patents (though the end products may, under certain circumstances, impact the economic comparability of the Dri-Eaz agreement to terms of license that would have resulted following a hypothetical negotiation).[16] Such issues may be handled on cross-examination. For at least these reasons, Blok's opinions are not inadmissible due to the technology involved in the Dri-Eaz agreement.

Turning to the economic comparability of the Dri-Eaz agreement to the license that would have resulted from the hypothetical negotiation, Blok's opinions are not inadmissible due to a lack of methodology. McDonald's asserts that that Dri-Eaz license lacks economic comparability—arguing that "Blok makes no effort to consider whether the Dri-Eaz License arose under circumstances comparable to the hypothetical negotiation" in this action, and that his "methodology here is deficient because he has no methodology . . . ." Docket No. 242 at 12–15. This is not true. Blok applied a methodology by comparing the circumstances surrounding the negotiation of the Dri-Eaz agreement to the circumstances of the hypothetical negotiation that

---

[16] Upon review of McDonald's arguments relating to Blok's failure to compare the Dri-Eaz application with the McDonald's application, it is not clear precisely what shortcoming is alleged. Blok opined that a per-transaction royalty would reflect the reasonable royalty that would result from negotiations in this case. He did not opine that a percentage-based royalty based on sales through the applications or a profit splitting royalty is appropriate. He applied a royalty base to the claimed inventions' transactions—not the applications—as a whole. McDonald's has not persuasively argued that Blok's methodology is unreliable based on the considerations explained in his report.

would take place between the parties to this suit. *See* Docket No. 270-1, ¶¶ 80–87. McDonald's arguments pointing to differences in the facts surrounding the Dri-Eaz agreement and the weight each party placed on those facts are more appropriately heard by the jury. *See Finjan, Inc.*, 626 F.3d at 1212 (citations omitted). Because the arguments presented by McDonald's to support their position that the Dri-Eaz agreement is not a sufficiently comparable license are not persuasive, Blok may rely upon built-in apportionment. *Vectura Ltd.*, 981 F.3d at 1040 (citations omitted) (explaining that "a party relying on a sufficiently comparable license can adopt the comparable license's royalty rate and royalty base without further apportionment").

McDonald's also argues that Blok's opinions should be excluded as speculative. Docket No. 242 at 15. McDonald's alleges that "Blok did not review a single production document from McDonald's or Dri-Eaz and instead relied on websites and interviews without confirming any information he read or heard." *Id.* McDonald's challenges Blok's methodology and his "cherry-picking" of the Dri-Eaz agreement over other agreements. *Id.* at 16.

First, McDonald's challenges Blok's opinions as speculative based on his reliance of the Dri-Eaz agreement over the settlement agreements involving the '748 patent, as well as the Blue Shoe Mobile Solutions LLC license. *Id.* McDonald's does not cite any case supporting its position that Blok was required to consider these agreements. Blok, however, provided an explanation to support his exclusion of these agreements in his report. And McDonald's fails to explain how Blok's methodology for excluding these agreements was "arbitrary." To the extent McDonald's thinks other agreements are relevant, such issues may be handled on cross-examination and through McDonald's own expert's testimony. For these reasons, McDonald's argument is not persuasive.

Second, McDonald's challenges Blok's opinions that *Georgia-Pacific* factors 4 and 5 have a downward impact on the royalty rate, while factors 9 and 10 (considered together) have an upward impact on the royalty rate because he "does not tie these conclusions to the royalty rate he generates in [f]actor 12." Docket No. 242 at 16 (citing *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1349–51 (Fed. Cir. 2018)). McDonald's reliance on *Exmark*, however, is misplaced. *Exmark Mfg. Co. Inc.*, 879 F.3d at 1349–51 (explaining that experts must tie the patented advantages to the royalty rate). Because Blok did not merely provide a "superficial recitation of the *Georgia-Pacific* factors," McDonald's argument is not persuasive. *Id.* (citation omitted).

Finally, McDonald's challenges Blok's conclusions as "rely[ing] exclusively on his single interview with Mr. McGill regarding the negotiation resulting in the Dri-Eaz license." Docket No. 242 at 17. McDonald's explains that Blok relied on McGill's statements to calculate "an effective per transaction royalty rate of $0.60 per transaction" under the Dri-Eaz license (quoting Docket No. 270-1, ¶ 86) and that Blok's calculations "do not align with Mr. Burton's testimony." *Id.* at 17–18; *see also* Docket No. 242-7, 143:13–23. Experts are permitted to opine based on facts or data that they have been made aware of. FED. R. EVID. 703. To the extent McDonald's complains that facts provided by McGill and Burton conflict, this is a question for the jury. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) (citations omitted) (explaining that when "the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony" and citing the Advisory Committee note to Rule 702 to explain that Rule 702's "sufficient facts or data" requirement "is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other"). To the extent that

McDonald's complains that it did not have a fair chance to test the factual underpinnings of Blok's opinions based on his interview of McGill, McDonald's could have deposed or sought other discovery from McGill, who Fall Line disclosed as its only fact witness that it would bring to trial. McDonald's had a fair chance to test McGill during discovery—they chose not to.

McDonald's also argues that Blok's royalty base is overly inclusive because he "makes no attempt to confine his purported royalty base to infringing uses of the patent." Docket No. 242 at 19. Instead, "Blok relies on the percentage of McDonald's app[lication] users that opted into allowing the use of location services during a three-month period of 2022." *Id.* (citing Docket No. 242-2, ¶¶ 57, 113–14. McDonald's argues that Blok's approach fails to "account for a number of non-infringing scenarios." *Id.*

McDonald's argument is not persuasive. Blok relied upon the three-months of data that McDonald's provided to make an adjustment. *Cf. Elbit Sys. Land & C4I Ltd*, 927 F.3d at 1301 (noting that plaintiff's expert relied on defendant's own statements that the new system provided a 20-percent increase in value to justify plaintiff's expert's proposed increased royalty). Blok made an adjustment based on the data McDonald's was able to provide. If more precise data was available, McDonald's should have produced it during discovery.

*** 

For all the reasons provided above, McDonald's motion (Docket No. 242) is **DENIED**.

### E.     Dr. Samuel Russ (Docket No. 244)

In McDonald's motion to strike portions of Dr. Russ's expert reports, it argues that portions of Dr. Russ's (1) infringement report should be struck because his opinions are based on theories not disclosed in Fall Line's infringement contentions, and (2) validity report should be

struck because his opinions are based on theories not disclosed during fact discovery. Docket No. 244. This motion has been fully briefed and argued. Docket Nos. 244, 269, 274, 291, 301.

McDonald's first argues that Russ's report impermissibly discloses new joint, induced and contributory infringement theories that were not disclosed in Fall Line's infringement contentions. Docket No. 244 at 10–13; *see also* Docket No. 244 at 5 (noting that Fall Line disclosed its joint, induced and contributory infringement theories in its complaint). McDonald's alleges "Fall Line's infringement contentions do not contain the words 'joint,' 'induce,' or 'contribute,' yet its expert witness's report on infringement accuses McDonald's of infringement via joint infringement, induced infringement, and contributory infringement." *Id.* at 5. More specifically, McDonald's argues that the "Court's Local Rules require full disclosure of infringement theories in a party's infringement contentions." *Id.* at 10 (citing *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F.Supp.3d 690 (E.D. Tex. 2014)).

Fall Line responds that Russ's opinions should not be struck. Docket No. 269 at 3–4. Fall Line argues that it disclosed the infringement theories in its complaint and in response to McDonald's interrogatories and "that the Court's local patent rules did not require Fall Line to repeat its joint and indirect infringement allegations in its contentions." *Id.*

Local Patent Rule 3-1 provides that infringement contentions "shall contain" certain information. Under this rule, infringement contentions must include:

(a) Each claim of each patent in suit that is allegedly infringed by each opposing party;

(b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

(c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112 (¶ 6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;

(d) Whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality;

(e) For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled; and

(f) If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party must identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim.

Local Patent Rule 3-1.

To support their position that Russ's report discloses new infringement theories not included in Fall Line's infringement contentions, McDonald's cites the *ROY-G-BIV* case. More specifically, McDonald's quotes the following: "Patent Rule 3–1 requires a party asserting infringement to serve infringement contentions on each defending party. A plaintiff must 'set forth specific theories of infringement at the outset of the case.'" Docket No. 244 at 10 (quoting *ROY-G-BIV Corp.*, 63 F. Supp. 3d at 698 (citation omitted)). This case is not exactly on point for the position for which McDonald's is citing it. In *ROY-G-BIV*, Judge Davis explained that the infringement contentions must set forth the "specific theories of infringement" when the claim language is mapped to the accused instrumentalities. *ROY-G-BIV Corp.*, 63 F. Supp. 3d at 698–99. For example, in the analysis provided by the court following its statement that "[e]xpert infringement reports may not introduce theories not previously set forth in infringement contentions," the court discusses the expert's mapping of certain features of the accused products to the claims and the expansion of the universe of accused products. *Id.* Ultimately, Judge Davis

found that the expert's report did "not improperly extend the bounds of [the] infringement contentions" at issue because the products discussed in his report were integrated into the system disclosed in the infringement contentions. *Id.* at 700. This Court has applied Judge Davis's holding in *ROY-G-BIV* in other cases discussing whether specific infringement theories set forth by a party's experts exceeded the scope of the party's infringement contentions. *See, e.g.*, *Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2020 WL 8269548, at *19 (E.D. Tex. Nov. 11, 2020).

Further, McDonald's cites Eastern District case law negating its position. For example, McDonald's cites a case that states "explicit disclosure" of a party's indirect infringement positions under 35 U.S.C. § 271(f) was not required where the plaintiff's infringement contentions provided adequate notice through their identification of the "components at issue." *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. CIV. A. 6:08-CV-273, 2010 WL 786606, *2–3 (E.D. Tex. Feb. 26, 2010). Here, even though Fall Line's infringement contentions do not explicitly use the words "joint," "induced" or "contributory," the contentions do explain which steps are performed by McDonald's application and which steps are performed by a user or other third party. *See e.g.*, Docket No. 244-2. These contentions provided McDonald's with adequate notice of Fall Line's infringement theories, which were explicitly disclosed in Fall Line's complaint and discovery responses. For at least these reasons, McDonald's motion to strike certain portions of Russ's infringement report based on Fall Line's infringement contentions is **DENIED**.

McDonald's second argument, that certain portions of Russ's validity report should be excluded because they were not disclosed during fact discovery, alleges that Russ presents three inventive concept arguments that were not timely disclosed. Docket No. 244 at 12–13.

McDonald's argues that "[t]he lack of notice [of these inventive concept theories puts McDonald's] at a disadvantage because they had to serve their opening expert report on invalidity without the benefit of knowing precisely what Fall Line was going to contend constituted an inventive concept." *Id.* at 12.

In response, Fall Line explains that Russ's validity positions were in response to "a supplemental interrogatory response served [by McDonald's] on the last day of fact discovery" that "vastly expanded [McDonald's S]ection 101 contentions," which McDonald's had previously been limited to positions expressed in their motion to dismiss. Docket No. 269 at 11–17.

McDonald's cannot seek to exclude Russ's opinions as untimely disclosed when those opinions are offered in direct response to McDonald's vastly expanded Section 101 positions—positions that were first provided to Fall Line on the last day of fact discovery. Excluding Russ's opinions would be particularly inequitable given that McDonald's had maintained, for over four years, that its Section 101 positions were contained in McDonald's motion to dismiss briefing. *Compare* Docket No. 269-6 at 3 *with* Docket No. 269-8 at 3–5. Rather, McDonald's should have meaningfully participated in discovery earlier—McDonald's cannot lie behind the log until the last day of fact discovery and then seek to exclude Russ's rebuttal evidence as having been untimely disclosed.

However, as discussed above, the Court has precluded McDonald's from presenting these untimely Section 101 arguments for a multitude of reasons. Since McDonald's is precluded from presenting Gray's Section 101 theories, it is unnecessary for Russ to proffer this testimony at trial. For at least these reasons, the Court finds that McDonald's motion to strike certain portions of Russ's validity report should be **DENIED-AS-MOOT**.

***

For the reasons explained above, the Court finds that McDonald's motion (Docket No. 244) should be **DENIED-IN-PART** and **DENIED-AS-MOOT-IN-PART**.

## II.      SUMMARY JUDGMENT

### A.      Legal Standard

Summary judgment exists, in part, "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). A court may grant summary judgment when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also*, *Celotex Corp.*, 477 U.S. at 327. A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment "always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The moving party, however, is not required to support its motion with materials negating its opponent's claim where the party in opposition carries the burden of proof at trial. *Id.* at 322–23. Instead, where a nonmoving party carries the burden of proof at trial fails to make a showing sufficient to establish an essential element of their case in response to a motion for summary judgment, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323 (internal quotations and citations omitted).

### 1.    The Parties' Motions for Summary Judgment Relating to McDonald's Section 101 Defense (Docket Nos. 245, 243)

Fall Line and McDonald's have each submitted motions for summary judgment relating to McDonald's Section 101 defense. Docket Nos. 245, 243. Both motions have been fully briefed and argued. Docket Nos. 245, 266, 277, 287, 243, 267, 276, 289, 301.

Patents are presumed valid and the burden of establishing invalidity is with the party asserting such invalidity. 35 U.S.C. § 282. Thus, McDonald's bears the burden of proving the asserted claim is invalid for claiming patent-ineligible subject matter by clear and convincing evidence at trial. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).[17] In its own motion for summary judgment, as the moving party, McDonald's carries the burden of proving "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." FED. R. CIV. R. 56(a). McDonald's motion fails to meet its burden of proof because, even assuming *arguendo* that there is no genuine dispute of material fact, McDonald's motion fails to show that it is entitled to judgment as a matter of law. For McDonald's to prove its invalidity defense under Section 101, it must prove that the asserted claim is directed toward a patent-ineligible concept (*e.g.*, an abstract idea) and, if so, that the claim limitations are well-understood, routine and conventional (*i.e.*, that there is no inventive concept). *See generally Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014); *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018).

---

[17] Clear and convincing evidence has been described as evidence which produces in the mind of the trier of fact an "abiding conviction" that the truth of a factual contention is "highly probable." *Miller v. Dep't of Just.*, 842 F.3d 1252, 1257–58 (Fed. Cir. 2016) (citations omitted). This high burden of proof has a "corresponding effect" on this Court's decision of whether to grant summary judgment or send the issue to the jury. *Anderson*, 477 U.S. at 254 ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.").

Here, there is no dispute that the asserted claim is directed towards an abstract idea under *Alice* Step 1. *See generally, e.g.*, Docket No. 267. Rather, the dispute between the parties focuses on whether the asserted claim is well known, routine and conventional under *Alice* Step 2. *See, e.g.*, Docket Nos. 267, 245. Upon review of McDonald's briefing, it would be impossible to reach a summary judgment determination in McDonald's favor—principally because McDonald's motion lacks evidentiary support. For example, to support its position that the asserted claim fails under *Alice* Step 2, McDonald's writes:

> Claim 7 contains no inventive concept sufficient to "transform" the claim into a patent-eligible application of the abstract idea of "sending a questionnaire, collecting responses that include location information and making those responses available over the Internet." Once that abstract idea is removed at step one, only conventional or otherwise insignificant activity remains. McDonald's technical expert, Mr. Gray, provided many examples of how a POSITA would have understood Claim 7's limitations, individually and collectively, to reflect well-understood, routine, and conventional technology as of 2002, all supported by myriad citations to printed publications predating Claim 7's priority date and referring to these technological concepts not as breakthroughs in technology, but as part-and-parcel of general industry knowledge about these conventional components. (*See* Ex. C at ¶¶ 104-41.)

Docket No. 243 at 16. In the example above, the sole citation provided is to Gray's invalidity report (referred to as Exhibit C). But, for the reasons explained in Section I.B.2., Gray's Section 101 invalidity opinions are inadmissible at trial.

Thus, McDonald's has failed to make a showing of an essential element of its invalidity defense sufficient to support summary judgment in its favor. *Zenith Elec. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) (reversing summary judgment of invalidity where the accused infringer did not meet its burden of establishing that it was entitled to judgment as a matter of law that an asserted claim was invalid).

For these reasons, McDonald's motion (Docket No. 243) is **DENIED** and the Court need not address the other arguments present in McDonald's motion.[18]

Next, turning to Fall Line's motion for summary judgment, Fall Line argues that the Court should grant summary judgment against McDonald's because McDonald's has failed to put forward any evidence showing that the inventive concepts Fall Line alleged in its motion to dismiss were well-known, routine and conventional. Docket No. 245. McDonald's responds that summary judgment is not proper because Fall Line failed to proffer evidence to support its allegations regarding Section 101. Docket No. 266 at 6–8.

At the motion for summary judgment phase, as the movant, Fall Line bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Because patents are presumed valid and the burden of establishing invalidity is with the party asserting such invalidity, 35 U.S.C. § 282, Fall Line may prove that it is entitled to summary judgment by pointing to a lack of evidence supporting McDonald's Section 101 defense, *Celotex,* 477 U.S. at 325; *see also Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993) (explaining that summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it so overwhelming that it mandates judgment in favor of the movant").

As the party with the burden of proof at trial, McDonald's failure to respond to Fall Line's motion with evidence sufficient to establish an essential element of its Section 101

---

[18] Even if McDonald's had proven the elements of its Section 101 defense, summary judgment would still be inappropriate in view of the two unrebutted inventive concepts arguments presented by Fall Line in its briefing. *See, e.g.*, Docket No. 245 at 1–4; Docket No. 245-3, ¶¶ 43–64; Docket No. 276 at 7–10; *Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1368–69 (Fed. Cir. 2006) (discussing the impact of a failure to rebut at summary judgment phase).

defense means that "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323 (internal quotations and citations omitted).

Here, even viewing McDonald's arguments in the light most favorable to them and drawing all reasonable inferences in their favor, they have failed to show that there is an issue of material fact because they failed to set forth evidence to prove their Section 101 defense under *Alice* Step 2. *See* Docket Nos. 266, 287, 243, 276. Based on McDonald's failure, there can be no genuine issue of material fact: Fall Line is entitled to summary judgment in its favor. *Celotex Corp.*, 477 U.S. at 322–23 (explaining that the moving party is not required to support its motion with materials negating their opponent's claim where the party in opposition carries the burden of proof at trial and failed to make a showing sufficient to establish an essential element of the claim in response to a motion for summary judgment); *Saab Cars USA, Inc*, 434 F.3d at 1368 ("If, for example, the movant bears the burden and its motion fails to satisfy that burden, the non-movant is not required to come forward with opposing evidence.").

Thus, Fall Line's motion (Docket No. 245) is **GRANTED**.

### 2. Fall Line's Motion Regarding "Certain Undeveloped Defenses" (Docket No. 246)

In Fall Line's motion, it seeks summary judgment on McDonald's Section 112, failure-to-mark and statute of limitations defenses. Docket No. 246. This motion has been fully briefed and argued. Docket Nos. 246, 271, 278, 288, 301.

***First***, Fall Line argues that "McDonald's does not have sufficient evidence to support a defense under [S]ection 112." Docket No. 246 at 1–2 (citing Docket Nos. 246-2, 246-3, 246-4, 246-5). McDonald's responds that the "'748 Patent's provides little to no explanation for how

this GPS device carries out the '748 Patent's claims" and that "[t]his lack of enablement and written description is noted by . . . Gray [] in his invalidity report." Docket No. 271 at 6–7 (citing Docket No. 246-3). According to McDonald's, Gray explains that "the specification does not explain how to equip a handheld device with a GPS receiver, or how to use a device so equipped to enter information automatically," *id.* at 7 (citing Docket No. 246-3, ¶ 87), and that he provides further explanation in several other paragraphs in his report. *Id.* (citing Docket No. 246-3, ¶¶ 109, 118, 122, 127, 131, 136). McDonald's then notes that Gray's report does not have "an explicit subheading entitled 'Lack of Enablement' or 'Lack of Written Description'" but that this is not required. Docket No. 271 at 7–8.

Patents are presumed valid. 35 U.S.C. § 282. As the party challenging the validity of Claim 7 of the asserted patent, McDonald's bears the burden of proving its invalidity defense by clear and convincing evidence. *Microsoft Corp*, 564 U.S. at 95. McDonald's has failed to show that it could prove a Section 112 invalidity defense at trial because McDonald's response fails to explain why the asserted claim is invalid under Section 112. Instead, McDonald's points to a handful of statements in Gray's invalidity report that do not facially address Section 112 without providing any explanation how these statements implicitly address Section 112. See Docket No. 271 at 6–8. While McDonald's failure to explain its defense in a cognizable manner is problematic in itself, McDonald's reliance on Gray's report to support each of the positions offered creates further issues because Gray does not offer a Section 112 opinion in his report. *See*

Docket No. 246-3.[19] Rather, the paragraphs cited by McDonald's support Gray's Section 101

positions. *See* Docket No. 246-3, ¶¶ 109, 114, 118, 122, 127, 131, 136.[20]

Thus, because McDonald's has failed to show that it has any evidence to support their

Section 112 defense at trial, Fall Line's motion on this issue must be **GRANTED**.

**Second**, regarding McDonald's failure-to-mark defense, McDonald's concedes there is

no genuine dispute between the parties regarding its patent marking defense. Docket No. 271 at

9–10. Accordingly, McDonald's has withdrawn this defense. *Id.* Fall Line's motion on this issue

is therefore **DENIED-AS-MOOT**.

**Third**, regarding McDonald's statutes of limitations defense, Fall Line argues that

summary judgment should be granted on this defense because "McDonald's does not have

sufficient evidence that any accused activity occurred before the six-year statute of limitations."

Docket No. 246 at 2. Fall Line explains that its claims are based on activity occurring after the

---

[19] Further, certain paragraphs of Gray's report appear to contradict McDonald's Section
112 defense. *Compare, e.g.*, Docket No. 246-3, ¶ 114 (emphasis added) ("The specification does
not explain how to equip a handheld device with a GPS receiver, or how to use a device so-
equipped to enter information automatically. In my opinion, a POSITA would have understood
this to be routine and conventional technology that would be easy to implement. ***There was no
need to explain to a POSITA how to implement such technology precisely because it was so
ubiquitous and well-known in the art***.") *with* Docket No. 271 at 7 ("Mr. Gray explains 'the
specification does not explain how to equip a handheld device with a GPS receiver, or how to
use a device so equipped to enter information automatically.'").

[20] Further, Gray's invalidity report includes a "Legal Understandings" section. Docket
No. 246-3, ¶¶ 28–58. This section explains that Gray has received instructions on certain
"principles of patent law, which [he] used in arriving at [his] conclusions." *Id.*, ¶ 28. His report
indicates that he received some instruction on the law of claim construction, the burden of
proving invalidity defenses, patent priority dates, person of skill in the art considerations, and
patent subject matter eligibility under Section 101—but no instruction on enablement under
Section 112. *See id.*, ¶¶ 28–58. The only section of Gray's report that mentions Section 112
explicitly is the portion of his report discussing the prosecution history of the '816 patent. *Id.*, ¶¶
94–95. But the Court's ruling in Section I.B.2 of this order held Gray's prosecution history
opinions inadmissible at trial.

applicable statute of limitations and that it "filed this action only two years after the patent-in-suit issued." *Id.* (citing Docket Nos. 246-2, 246-3, 246-4, 246-5).

McDonald's responds that they are "not contending that Fall Line's claims are barred by the statute of limitations as alleged by Fall Line." Docket No. 271 at 9. Instead, McDonald's "contends that Fall Line should only be entitled to its alleged damages" within the statutory period and, as such, that they are "not required to present evidence on this issue." *Id.* McDonald's explains that its statute of limitations defense "is merely stating that Fall Line should only be entitled to its alleged damages for the time period following this date." *Id.* McDonald's concludes that "[b]ecause there is no genuine dispute of any material facts relating to McDonald's Sixth Affirmative Defense, Fall Line's motion for summary judgment as it relates to this defense should be denied." *Id.*

McDonald's response fails to present any evidence that could support a statute of limitations defense at trial. While McDonald's arguments in its response could be construed as a withdrawal of the defense, this is not clear and their sur-reply suggests otherwise. Docket No. 271 at 9; Docket No. 288 at 9.[21] What is clear is that McDonald's concedes that there is "no genuine issue of any material facts relating to McDonald's Sixth Affirmative Defense." Docket No. 271 at 9. Where there is no genuine issue of material fact, summary judgment is appropriate. FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 327. Thus, Fall Line's motion on this issue is **GRANTED**.

\*\*\*

---

[21] In their sur-reply, McDonald's asserts: "McDonald's does not need to produce any evidence to support [their] affirmative defense . . . ." Docket No. 288. It is unclear why McDonald's believes that they do not carry the burden of proving their own defense.

For the reasons explained above, Fall Line's motion (Docket No. 246) is **GRANTED-IN-PART** and **DENIED-AS-MOOT-IN-PART**.

### 3. McDonald's Motion Regarding Non-Infringement (Docket No. 251)

McDonald's seeks summary judgment that they do not infringe based on their positions that the McDonald's application is not "customized for a particular location" and does not "automatically" transfer data, and because Fall Line has failed to provide support for its joint and indirect infringement theories. Docket No. 251. This motion has been fully briefed and argued. Docket Nos. 251, 268, 275, 290, 301.

Regarding McDonald's position that they do not infringe based on the McDonald's application not being "customized for a particular location," in many instances McDonald's failed to apply the Court's claim constructions. The issues surrounding McDonald's claim construction positions here largely mirror the issues discussed in Section I.B.1.b above and, for efficiency, the Court will not revisit its discussion of McDonald's misapplication of the Court's constructions here.

Regarding McDonald's arguments based on their representations of Fall Line's infringement positions, McDonald's argues that the McDonald's application does not infringe because the McDonald's application is not a "questionnaire customized for a particular location" as Fall Line contends. Docket No. 251 at 14 ("Fall Line contends the GMA is a questionnaire . . . . Even if that were true, the GMA is not 'customized for a particular location,' as required by the claim."). McDonald's only citation for its position on Fall Line's infringement position is to a portion of Russ's report. *Id.* (citing Docket No. 251-5, ¶¶ 35–37). These paragraphs of Russ's report provide that "[t]he series of questions . . . that are sent to the user's app from McDonald's servers . . . that enable a user to purchase McDonald's food and other products comprises the

claimed 'questionnaire.'" Docket No. 251-5, ¶ 35. Russ then goes on to explain how the "questionnaires" (*i.e.*, the "series of questions") are "customized for a particular location." *E.g.*, *id.*, ¶¶ 38–39.

McDonald's motion fails to meet its initial burden of demonstrating that there are no factual issues warranting trial—the Court cannot find McDonald's does not infringe because Fall Line presents evidence that a reasonable jury could find supported infringement in this case. *See Ashe v. Corley*, 992 F.2d 540 (5th Cir. 1993) (explaining that the nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial). Further, even if Gray's customization arguments that were not rendered inadmissible despite his failure to apply the Court's claim construction, Fall Line's response demonstrates that it has sufficient evidence to raise a question of fact that must go to the jury. *See generally* Docket Nos. 275, 275-1. For at least these reasons, McDonald's motion on this issue is **DENIED**.

Next, regarding McDonald's argument that they do not infringe because the McDonald's application does not transfer data "automatically," this argument is based on McDonald's position that, because the user must select "which store to order from" and "which items to order," the "questions/'questionnaire' are transferred to the user's device ***at the user's direction***" and are therefore not "automatic" as required by claim element 7(b). Docket No. 251 at 16 (emphasis in brief). McDonald's argues that the same applies to the "automatically transferring" requirement present in claim element 7(e). *Id.* at 16–17.

McDonald's explains that "even launching the GMA occurs at the direction of the user, and the user's device's location is only retrieved at launch if the user has enabled the use of location services." *Id.* at 17. "Rather, launching the GMA displays a home screen, from which

the user can select various options . . . ." *Id.* "To reach the display of a map, the user would need to traverse the GMA via different options, thus initiating and directing the transfer of data as the instance of the GMA runs." *Id.*

McDonald's arguments fail to apply the Court's claim construction and rehashes positions that have been expressly rejected by the Court. Docket No. 228 at 16–18. McDonald's proposed "automatically transferring" to be construed as meaning "transferring that is not initiated by the user and does not happen at the direction of the user." *Id.* at 16 (citing Docket No. 205 at 18–21). After expressly rejecting McDonald's proposed construction, the Court construed "automatically transferring" to mean "transferring that is not initiated upon direction of the user." *Id.* at 18. McDonald's present motion advances arguments that cannot stand in view of the Court's construction.[22]

McDonald's motion on this issue likewise fails to meet its initial burden of demonstrating that there are no factual issues warranting trial—the Court cannot find McDonald's does not infringe based on positions that are not true to the Court's constructions. *See Ashe*, 992 F.2d 540. And, even if McDonald's arguments had raised a question that the Court could address, Fall Line has responded showing that it has sufficient evidence to raise a question of fact that must go to the jury. *See generally* Docket Nos. 268, 268-1. For at least these reasons, McDonald's motion on this issue must be **DENIED**.

McDonald's argues that "Fall Line did not disclose any theory of joint or indirect infringement in its contentions" and that Fall Line's "only 'evidence' of infringement under

---

[22] Consistent with the Court's reasoning in Section I.B.1.b, Gray's opinions that rely on this improper claim construction must also be precluded, even though Fall Line did not explicitly seek such relief in its response to McDonald's motion for summary judgment (Docket No. 268) or its *Daubert* motion on Gray (Docket No. 248).

these theories are a handful of paragraphs in response to McDonald's second individual interrogatory." Docket No. 251 at 17–18. To the extent that McDonald's arguments in its motion are premised upon alleged shortcomings in Fall Line's infringement contentions, these arguments are not persuasive for the reasons discussed in Section I.E., above.

With respect to McDonald's joint infringement arguments, McDonald's seeks summary judgment based on Fall Line's failure to show that McDonald's "directs or controls its customers to perform the allegedly infringing act." *Id.* at 18. Under the law, however, joint infringement is not so narrow—it may be found, for example, when "an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (citation omitted) (noting that "other factual scenarios may arise which warrant attributing others' performance of method steps to a single actor"). In fact, the Federal Circuit's *Muniauction* case, which McDonald's relies upon for support, was abrogated by the Federal Circuit specifically because it was too restrictive. *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1380–81 (Fed. Cir. 2017) ("While we did reaffirm the concept of a single-actor theory of direct infringement [in *Akamai*], we made clear that the restrictive view of when the acts of a third party can be attributable to another evidenced in those cases is no longer the governing law."). Under the current legal standard, Fall Line has shown that it has sufficient evidence to survive summary judgment. *See* Docket No. 268 at 20–23, 268-1, 268-6, 268-7.

McDonald's argues that Fall Line's induced infringement argument must fail because it failed to provide "any evidence showing McDonald's specifically intended to cause direct infringement other than to suggest that McDonald's 'encourages customers to download and use

the McDonald's mobile application.'" Docket No. 251 at 19. And that "[e]ven if Fall Line could establish McDonald's knew use of the GMA constituted infringement . . . that would still not suffice to establish induced infringement." *Id.* at 19 (citing *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)). But McDonald's fails to accurately represent the law—*Manville Sales* held that intent could be established if the alleged infringer "knew or should have known his actions would induce actual infringement." *Id.* Under the proper legal standard, Fall Line has shown that it has sufficient evidence to survive summary judgment. *See* Docket Nos. 268 at 23–25, 268-1, 268-9, 268-10, 268-11, 268-12.

Finally, McDonald's argues that Fall Line cannot prove contributory infringement because it has only offered "conclusory discovery responses" and Russ's "similarly-conclusory opinion" to support its position that McDonald's application has no substantial non-infringing use. Docket No. 251 at 19–20. [23] For the same reasons discussed in Section I.E., Fall Line's response shows that it has sufficient evidence to raise a question of fact that must go to the jury. See Docket Nos. 268, 268-1. Thus, McDonald's motion for summary judgment is **DENIED**.

***

For the reasons explained above, McDonald's motion (Docket No. 251) is **DENIED**.

### III.    CONCLUSION

In view of the reasoning provided above, it is **ORDERED** that:

- Fall Line's Motion to Exclude Certain Opinions of Stephen Gray on Non-Infringement (Docket No. 248) is **GRANTED-IN-PART** and **DENIED-AS-**

---

[23] McDonald's also argues that its application can be used in a "myriad" of ways that do not infringe "(*e.g.*, to look up stores or deals nearby)." As discussed in Section I.B.1, the Federal Circuit has rejected arguments that substantial non-infringing uses exist based on the presence of additional features. *Ricoh Co.*, 550 F.3d at 1337 (explaining that allowing such arguments would render it "rather easy" for one to evade the protection intended by Congress when it enacted Section 271(c)).

**MOOT-IN-PART**. Before the jury, Gray **SHALL NOT** seek to offer impermissible legal opinions; testify that step (c) of Claim 7 requires a specific time of arrival; testify that the "questionnaire" or "survey" terms are limited solely to questions about "location;" testify regarding the terms "central server," which is not a claim term, or "central computer;" testify that Fall Line or its experts failed to apply the Court's claim constructions; or testify regarding non-infringing alternatives or non-infringing uses.

- Fall Line's Motion to Exclude Certain Opinions of Stephen Gray on Validity (Docket No. 249) is **GRANTED**. Gray shall not offer any Section 101 opinions before the jury.

- Fall Line's Motion to Exclude Certain Opinions of Thomas McGahee (Docket No. 250) is **GRANTED-IN-PART** and **DENIED-IN-PART**. McGahee may rely on Fall Line's consummated agreements with third-parties. McGahee **SHALL NOT** testify on non-infringing uses. Likewise, McGahee **SHALL NOT** testify that Blok relied on an overstated royalty base through his inclusion of transactions completed with a non-infringing use or through his reliance on McDonald's own transaction and revenue data and location services enablement data.

- McDonald's *Daubert* Motion to Exclude the Testimony of Justin R. Blok (Docket No. 242) is **DENIED**.

- McDonald's Motion to Strike Portions of the Expert Reports of Dr. Samuel H. Russ (Docket No. 244) is **DENIED-IN-PART** and **DENIED-AS-MOOT-IN-PART**.

- Defendants' Motion for Summary Judgment of Invalidity Regarding Subject Matter Ineligible (Docket No. 243) is **DENIED**.

- Fall Line's Motion for Summary Judgment on McDonald's Section 101 Defense (Docket No. 245) is **GRANTED**.

- Fall Line's Motion for Summary Judgment on Certain Undeveloped Affirmative Defenses (Docket No. 246) is **GRANTED-IN-PART** and **DENIED-AS-MOOT-IN-PART**. McDonald's **SHALL NOT** present Section 112, failure-to-mark or statute of limitations defenses at trial.

- Defendants' Motion for Summary Judge of Non-Infringement (Docket No. 251) is **DENIED**.

Finally, to maintain the general public policies favoring disclosure of court records, the Court plans to file an unsealed version of this order no later than **July 17, 2023**. It is therefore

.

ORDERED that the parties may file a joint sealed motion to redact limited portions of the order **no later than July 7, 2023**. The parties shall request as few redactions as possible and provide sufficiently compelling reasons that override the public policies favoring disclosure. *See S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013). The parties shall also attach their proposed redacted version of this order to the joint motion.

So ORDERED and SIGNED this 29th day of June, 2023.

*Robert W. Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE