# EXHIBIT C

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                FOR THE EASTERN DISTRICT OF TEXAS

 3                       TEXARKANA DIVISION

 4   FALL LINE PATENTS, LLC,        )(

 5        PLAINTIFF,                )(    CIVIL ACTION NO.

 6                                  )(    5:24-CV-167-RWS

 7   VS.                            )(    TEXARKANA, TEXAS

 8                                  )(

 9   7-ELEVEN, INC.,               )(    MAY 7, 2025

10        DEFENDANT.               )(    1:59 P.M.

11                       MOTIONS HEARING

12         BEFORE THE HONORABLE ROBERT W. SCHROEDER III

13               UNITED STATES DISTRICT JUDGE

14   FOR THE PLAINTIFF:      Mr. Matthew J. Antonelli
                             Ms. Hannah D. Price
15                           Antonelli, Harrington & Thompson
                             4306 Yoakum Boulevard
16                           Suite 450
                             Houston, TX 77006
17
     FOR 7-ELEVEN, INC.:     Ms. Emily F. Deer
18                           Baker Botts LLP
                             2001 Ross Avenue
19                           Suite 900
                             Dallas, TX 75201
20
     FOR BEST BUY:           Mr. Jason E. Mueller
21                           Vorys Sater Seymour & Pease LLP
                             909 Fannin Street
22                           Suite 27th Floor
                             Houston, TX 77010
23
     FOR ALDI and SPROUTS:   Mr. John R. Hutchins
24                           Banner & Witcoff, LTD
                             1100 13th Street, NW
25                           Suite 1200
                             Washington, DC 20005
```

```
 1   FOR ALDI and SPROUTS:    Mr. Michael C. Smith
                              Scheef & Stone, LLP
 2                            P.O. Box 1556
                              Marshall, TX 75671
 3
     FOR AUTOZONE:            Ms. Jennifer H. Doan
 4                            Ms. Haleigh A. Hashem
                              Haltom & Doan
 5                            2900 St. Michael Drive
                              Suite 500
 6                            Texarkana, TX 75503

 7   FOR ADVANCE AUTO PARTS: Mr. Eric H. Findlay
                              Findlay Craft, P.C.
 8                            7270 Crosswater Avenue
                              Suite B
 9                            Tyler, TX 75703

10   COURT REPORTER:          Ms. Shelly Holmes, CSR, TCRR
                              Official Court Reporter
11                            Honorable Robert W. Schroeder III
                              United States District Judge
12                            Eastern District of Texas
                              Texarkana Division
13                            500 North State Line Avenue
                              Texarkana, TX 75501
14                            shelly_holmes@txed.uscourts.gov

15   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)
16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 01:53:54 | 1 | COURT SECURITY OFFICER:  All rise. |
| 01:53:55 | 2 | THE COURT:  Please be seated. |
| 01:59:52 | 3 | Ms. Combs, if you would call the case for us. |
| 01:59:56 | 4 | COURTROOM DEPUTY:  Cause No. 5:24-CV-167, Fall |
| 02:00:02 | 5 | Line Patents, LLC versus 7-Eleven, Inc., et al. |
| 02:00:05 | 6 | THE COURT:  Announcements for the record? |
| 02:00:06 | 7 | MR. ANTONELLI:  Good afternoon, Your Honor.  Matt |
| 02:00:10 | 8 | Antonelli for Fall Line Patents.  Also with me today is my |
| 02:00:13 | 9 | colleague, Hannah Price.  Ms. Price is going to be making |
| 02:00:16 | 10 | her first argument in court today. |
| 02:00:19 | 11 | THE COURT:  Very good. |
| 02:00:19 | 12 | MR. ANTONELLI:  She's going to handle the Iqbal |
| 02:00:23 | 13 | Twombly motions for us. |
| 02:00:24 | 14 | THE COURT:  Very good. |
| 02:00:24 | 15 | MR. ANTONELLI:  Thank you, Your Honor. |
| 02:00:25 | 16 | THE COURT:  Welcome, Ms. Price. |
| 02:00:27 | 17 | Hello. |
| 02:00:28 | 18 | MS. DEER:  Good afternoon, Your Honor.  Emily Deer |
| 02:00:29 | 19 | on behalf of Defendant 7-Eleven. |
| 02:00:30 | 20 | THE COURT:  Hi. |
| 02:00:32 | 21 | MR. MUELLER:  Your Honor, Jason Mueller on behalf |
| 02:00:34 | 22 | of Best Buy. |
| 02:00:35 | 23 | THE COURT:  Hello, Mr. Mueller. |
| 02:00:37 | 24 | MR. SMITH:  And, Your Honor, Michael Smith and |
| 02:00:40 | 25 | John Hutchins for Defendants Aldi and Sprouts. |

4

| | | |
|---|---|---|
| 02:00:44 | 1 | THE COURT:  All right.  Good afternoon. |
| 02:00:44 | 2 | MS. HASHEM:  Good afternoon, Your Honor.  Haleigh |
| 02:00:47 | 3 | Hashem and Jennifer Doan on behalf of AutoZone. |
| 02:00:51 | 4 | THE COURT:  All right.  Good afternoon. |
| 02:00:51 | 5 | MR. FINDLAY:  Good afternoon, Your Honor. |
| 02:00:51 | 6 | THE COURT:  Mr. Findlay. |
| 02:00:53 | 7 | MR. FINDLAY:  Eric Findlay on behalf of Advance |
| 02:00:55 | 8 | Auto Parts and Advance Stores Company. |
| 02:00:56 | 9 | THE COURT:  Good. |
| 02:00:56 | 10 | Thanks to all of you for being here.  We've got, I |
| 02:01:01 | 11 | believe, five motions to dismiss that we have set for |
| 02:01:05 | 12 | argument this afternoon.  And I think we've discussed with |
| 02:01:10 | 13 | the parties about an hour per side is an adequate amount of |
| 02:01:14 | 14 | time to cover everything that we need to cover this |
| 02:01:17 | 15 | afternoon. |
| 02:01:19 | 16 | Have you all discussed a way of proceeding -- |
| 02:01:22 | 17 | MR. ANTONELLI:  We have, Your Honor.  We thought |
| 02:01:24 | 18 | it made sense to do the 101 motions first, which are |
| 02:01:27 | 19 | identical motions so they can be dealt with together. |
| 02:01:29 | 20 | THE COURT:  Okay. |
| 02:01:30 | 21 | MR. ANTONELLI:  And then have a session on the |
| 02:01:32 | 22 | Iqbal Twombly motions which have substantial overlap. |
| 02:01:34 | 23 | THE COURT:  Okay.  Sound good to everybody on that |
| 02:01:37 | 24 | side of the table? |
| 02:01:38 | 25 | Okay.  Whoever wishes to go forward on the first |

| | | |
|---|---|---|
| 02:01:41 | 1 | motion may do so. |
| 02:01:46 | 2 | Ms. Deer? |
| 02:01:52 | 3 | MS. DEER:  Good afternoon, Your Honor. |
| 02:01:53 | 4 | THE COURT:  Good afternoon. |
| 02:01:55 | 5 | MS. DEER:  I have printed copies, as well, for the |
| 02:02:06 | 6 | Court -- |
| 02:02:06 | 7 | THE COURT:  Please, yes. |
| 02:02:06 | 8 | MS. DEER:  -- if the Court would like. |
| 02:02:08 | 9 | THE COURT:  Uh-huh. |
| 02:02:09 | 10 | MS. DEER:  All right.  Good afternoon, Your Honor. |
| 02:02:25 | 11 | Emily Deer on behalf of Defendant 7-Eleven and the other |
| 02:02:27 | 12 | Defendants in this case that have joined in 7-Elleven's |
| 02:02:30 | 13 | motion. |
| 02:02:30 | 14 | Your Honor, we recognize that there is some |
| 02:02:34 | 15 | history with respect to Section 101 and Claim 7 of the '748 |
| 02:02:38 | 16 | patent.  In a prior case -- |
| 02:02:39 | 17 | THE COURT:  Ms. Deer, I know right away I'm going |
| 02:02:41 | 18 | to have to slow you down. |
| 02:02:44 | 19 | MS. DEER:  Yes, sir. |
| 02:02:44 | 20 | THE COURT:  Okay? |
| 02:02:45 | 21 | MS. DEER:  Thank you. |
| 02:02:45 | 22 | THE COURT:  Thank you. |
| 02:02:45 | 23 | MS. DEER:  There's some prior history with respect |
| 02:02:47 | 24 | to 101 and this claim and prior cases involving Fall Line. |
| 02:02:51 | 25 | And that specifically is the Zoe's Kitchen case in which a |

02:02:56    1    group of Defendants filed a 12(b)(6) motion to dismiss.

02:03:00    2    And as Your Honor is aware, the Court denied that motion to

02:03:03    3    dismiss and further denied McDonald's motion for summary

02:03:08    4    judgment on the issue.

02:03:09    5            However, I'm here today to explain for the Court

02:03:11    6    why a recent Federal Circuit case, which is the Beteiro

02:03:14    7    versus Draftkings case that came out in June of 2024,

02:03:22    8    changes the balance of the analysis here and how it does so

02:03:22    9    with respect to analogous technology and analogous posture.

02:03:26    10   So let me turn to the Beteiro case and what that

02:03:30    11   covered.

02:03:31    12           Now, in Beteiro at the District Court, the

02:03:34    13   representative claim involved exchanging information about

02:03:37    14   a bet, including the location of a user, and then allowing

02:03:41    15   or disallowing that bet based on where the user was

02:03:44    16   located.

02:03:44    17           And the Defendants in that case filed a Rule

02:03:48    18   12(b)(6) motion to dismiss which was granted by the

02:03:51    19   District Court.  The Federal Circuit then affirmed that

02:03:55    20   motion.

02:03:56    21           So one important thing to note here at the start

02:03:59    22   is that we have a similar posture here today with respect

02:04:03    23   to the 12(b)(6) motion.

02:04:04    24           And another reason that the Beteiro case is

02:04:08    25   particularly important here is because of how the Court

02:04:12   1   analyzed remarkably similar technology and similar use of

02:04:16   2   that technology.  And, specifically, not only were they

02:04:20   3   talking about the usage of GPS devices, but they were also

02:04:24   4   talking about the use of location information that comes

02:04:27   5   from GPS devices.

02:04:28   6        So when the Federal Circuit affirmed what -- how

02:04:33   7   did it reason that out?  Well, at Alice Step 1, the Court

02:04:37   8   agreed with the District Court that the claim was directed

02:04:39   9   to an abstract idea.

02:04:41  10        And turning to Step 2, which is really the

02:04:44  11   relevant portion of that case today, the Federal Circuit

02:04:47  12   agreed that there was no inventive concept.

02:04:50  13        And another important thing to note about the

02:04:52  14   Beteiro case is that in that case, the patent owner was

02:04:55  15   arguing that there were factual disputes that were created

02:04:59  16   by the pleadings in that case.

02:05:00  17        So the Federal Circuit had to address whether the

02:05:04  18   pleading raised a sufficient factual issue.  And they

02:05:08  19   studied this closely, and they came up with an important

02:05:11  20   analysis that I believe is relevant here.

02:05:13  21        So what did the Federal Circuit do?  Well, they

02:05:18  22   looked at the pleadings in connection with the claims and

02:05:22  23   the specification of the patent.  And first, they turned to

02:05:25  24   the specification of the patent.  And what they noticed

02:05:28  25   there is that they found that only 15 lines out of 98

02:05:33  1   columns of specification was discussing GPS in the mobile

02:05:37  2   device.  And that was the very point that the Plaintiff was

02:05:40  3   attempting to use as a hook to survive Step 2 on the

02:05:45  4   pleadings.

02:05:46  5         And when -- specifically when the Federal Circuit

02:05:48  6   studied those 15 lines, they found that how location

02:05:51  7   information was being used by the GPS device was entirely

02:05:55  8   conventional.

02:05:55  9         So I will explain in a moment why that is exactly

02:06:00  10  the case here with respect to Claim 7.

02:06:02  11        Now, the Federal Circuit upon looking at the spec,

02:06:06  12  they also looked at the pleadings, and what did they see in

02:06:09  13  the pleadings?  Well, they determined that the pleadings

02:06:12  14  were entirely divorced from what was in the specification.

02:06:17  15        So the specification was entirely generic.

02:06:19  16        And what the Federal Circuit then said was that no

02:06:23  17  amount of creative pleading could save the claim where they

02:06:27  18  were divorced from the specification.  And that's important

02:06:30  19  here because we would urge the Court to do a similar

02:06:34  20  analysis of the pleadings that we have in this case.  And

02:06:36  21  we are confident today that these pleadings are untethered

02:06:40  22  from the claim, they're untethered from the specification,

02:06:43  23  and ultimately, they do nothing more than teach a

02:06:45  24  conventional and well-understood use of information.

02:06:48  25        So what did the Federal Circuit hold?  Well, they

02:06:52   1   found that there were no plausible allegations that the

02:06:55   2   claimed GPS was anything other than conventional, and they

02:06:58   3   found that the complaint did not raise a factual dispute.

02:07:01   4        So two important takeaways from Beteiro.  The

02:07:06   5   first takeaway is that when the Federal Circuit looked at

02:07:09   6   the pleadings, the claims, and the GPS technology, they

02:07:12   7   concluded that the use of location information that comes

02:07:16   8   from a GPS device is well-understood, routine, and

02:07:19   9   conventional under Step 2.

02:07:21   10       So this is certainly a market shift in how courts

02:07:28   11   analyze 101 and specifically applied to claims that

02:07:32   12   involved --

02:07:33   13       THE COURT:  So it -- did that case hold that if

02:07:37   14   you use an internal GPS, that can never qualify as an

02:07:40   15   inventive concept?

02:07:41   16       MS. DEER:  Not necessarily that it can never

02:07:43   17   qualify as an inventive concept, Your Honor, but it --

02:07:48   18   rather, I'm saying that the Court held that where the

02:07:50   19   specification discloses nothing other than a mere

02:07:54   20   conventional use of conventional technology, in that case,

02:07:57   21   the claim would not be eligible under Step 2.

02:08:00   22       THE COURT:  Okay.  So why is it important for us

02:08:03   23   here specific to this case?

02:08:07   24       MS. DEER:  Specific to this case, there are two

02:08:09   25   reasons.  First of all, because we have analogous

02:08:11    1    technology.  This claim is involving a GPS device that's

02:08:14    2    doing nothing more than its conventional use.

02:08:16    3         But the other important reason in the Beteiro case

02:08:18    4    is that the Court set forth an analysis of what should be

02:08:22    5    done when you have a Plaintiff who's alleging that there's

02:08:26    6    a factual dispute from the pleadings.

02:08:28    7         So in that case, Beteiro specifically said that

02:08:31    8    when the assertions in the complaint are not taught by the

02:08:35    9    asserted patent, a District Court is not prevented from

02:08:38   10    granting a motion to dismiss.  And that is why this case is

02:08:42   11    particularly important today.

02:08:44   12         THE COURT:  So how did it change the law then?

02:08:46   13         MS. DEER:  Well, Your Honor, it changed -- it

02:08:49   14    changed the law with respect to first explaining that you

02:08:53   15    can't simply tack on a GPS device to a claim and have that

02:08:57   16    be the hook for an inventive concept for Step 2.

02:09:01   17         And it further changed the law because it set

02:09:03   18    forth this idea that you must compare the allegations that

02:09:06   19    are in a complaint to what is disclosed in the patent, and

02:09:11   20    if there's a divorce between those two concepts, then

02:09:14   21    creative pleading should not be taken as true and bar the

02:09:19   22    granting of a motion to dismiss.

02:09:20   23         So there are a lot of parallels that can be drawn

02:09:24   24    from the Federal Circuit opinion in Beteiro and what we

02:09:27   25    have before us today with respect to this motion to

02:09:30    1    dismiss.

02:09:30    2         And, again, first, we have the use of GPS in both

02:09:33    3    cases, and there's a parallel with respect to Rule

02:09:39    4    12(b)(6).

02:09:40    5         And then furthermore, in Beteiro, the use of GPS

02:09:43    6    described in the specification in Beteiro was involving a

02:09:46    7    claim from 2002.  And here, as a factual similarity, the

02:09:52    8    patent at issue in this case also has a 2002 priority date.

02:09:56    9         So as Beteiro counsels, I'll go into exactly what

02:10:02   10    the asserted patent teaches here, and then we can discuss

02:10:08   11    the intrinsic record before turning to Fall Line's

02:10:10   12    allegations.

02:10:10   13         So if I can get the slides.

02:10:13   14         I'll just move forward.

02:10:22   15         So what -- what claim -- if you turn to Claim 7,

02:10:25   16    Your Honor, Element [d] in Claim 7 is the only element of

02:10:30   17    this claim that uses the GPS device in any way.  And this

02:10:33   18    is now up on the screen here.

02:10:34   19         So I've highlighted Element [d].  And, in other

02:10:37   20    words, all that is happening in Element [d] is that you're

02:10:40   21    using location information that comes from a GPS device,

02:10:45   22    which is exactly a conventional usage, and then responding

02:10:48   23    to the questionnaire that has been created in prior steps

02:10:51   24    of the claim with that GPS information.

02:10:55   25         And I will submit to the Court that this use of

02:10:58    1    GPS in the context of the claim is nothing more than

02:11:01    2    automating human activity.  So whereas previously, a human

02:11:05    3    would sit there and type in a location or write in a

02:11:09    4    location in response to a questionnaire, in Claim 7, we can

02:11:12    5    see, with the use of the GPS device, the GPS device is

02:11:18    6    going to respond on behalf of the human.

02:11:20    7            And you don't need to take my word for it, Your

02:11:23    8    Honor, you can take the applicant's word for it.

02:11:25    9            So on the next slide, please.

02:11:27    10           I'm showing on the right side of the screen the

02:11:29    11   two portions of the specification of the '748 patent that

02:11:32    12   discuss the use of GPS.  And in both of these places in the

02:11:35    13   specification, you can see that what is being done with

02:11:38    14   this GPS information is that the information is collected,

02:11:43    15   and then entered automatically into the questionnaire

02:11:48    16   rather than having it be entered manually.

02:11:51    17           So, again, this is just a conventional use of GPS,

02:11:55    18   and it's very similar to the Beteiro case where location

02:11:58    19   information was being used for a conventional purpose,

02:12:02    20   which in that case, it was information about a location

02:12:05    21   associated with a bet that was being sent with a betting

02:12:09    22   message to determine if the bet was allowed or not based on

02:12:12    23   location.

02:12:13    24           So now that we've seen the specification of the

02:12:17    25   '748 patent, I'll just want to quickly draw another

13

02:12:20  1  parallel to the Beteiro case and show you part of the

02:12:22  2  specification of that case on the next slide, please.

02:12:24  3      And here, this is what the Federal Circuit was

02:12:29  4  reviewing in Beteiro, and the spec here says -- which is

02:12:34  5  remarkably similar to what we just saw in the prior screen,

02:12:38  6  that the GPS device 20J is automatically transmitting

02:12:42  7  position data as part of a message.

02:12:43  8      So, again, when we go back to Beteiro, what stands

02:12:47  9  out here is that the Federal Circuit was noting not only

02:12:50  10  what was taught in the specification but perhaps more

02:12:52  11  importantly, what is not taught.  And what's not taught

02:12:56  12  here is anything that is more than something conventional,

02:13:02  13  routine, and well-understood with respect to GPS usage of a

02:13:07  14  GPS device and location information.

02:13:09  15      So now that we've seen the claim and the

02:13:13  16  specification here, Your Honor, I think we can turn to Fall

02:13:16  17  Line's pleading to understand what is happening there.

02:13:19  18      So on the next screen, I have shown -- sorry,

02:13:23  19  Jennifer, the two screens.  Thank you.

02:13:29  20      On this screen, I've shown the operative paragraph

02:13:31  21  of Plaintiff's complaint, and here are -- annotated are the

02:13:35  22  two alleged unconventional uses of the integrated GPS

02:13:40  23  technology.

02:13:41  24      So we can see that they allege first that the

02:13:43  25  questionnaire is customized based on the usage of the GPS

02:13:48    1    device; and, second, that new responses are created in

02:13:51    2    response to the GPS device.

02:13:54    3        So here's an important point, Your Honor, and I'll

02:13:57    4    explain that neither of these allegedly unconventional uses

02:14:00    5    that are currently on the screen are -- find any footing

02:14:05    6    within the claim or the specification of the patent.

02:14:07    7        So ultimately, these two statements are nothing

02:14:10    8    more than creative pleading, which the Federal Circuit in

02:14:13    9    Beteiro said was insufficient.

02:14:15    10        So turning to the first allegation, again, this

02:14:20    11    says -- alleges that it is unconventional to use the GPS

02:14:24    12    device to customize the questionnaire.  So let's compare

02:14:27    13    this to the claim in the next slide, please.

02:14:29    14        Now, allow me to draw a few observations for you,

02:14:36    15    Your Honor.  And the first observation here is that --

02:14:38    16        THE COURT:  Ms. Deer, could I ask you -- I'm

02:14:40    17    sorry, just please slow down just a little for me.

02:14:43    18        MS. DEER:  Thank you, Your Honor, I will do that.

02:14:46    19        THE COURT:  Thank you.

02:14:46    20        MS. DEER:  The first observation here is that when

02:14:48    21    we look at Element [d], we can see that, again, this is the

02:14:51    22    only element that is using GPS for any operation.

02:14:58    23        So Element [d] involves executing the

02:15:00    24    questionnaire by using the GPS device to collect location

02:15:04    25    information and then send it back.

02:15:06    1          So what's missing in Element [d]?  Well, what's

02:15:09    2    missing in Element [d] is that there's nothing here that

02:15:12    3    refers to customizing a questionnaire.  So whereas Fall

02:15:16    4    Line's pleading says that it's unconventional for a GPS

02:15:20    5    unit to customize a questionnaire, when we look at the

02:15:23    6    claim, the only element that has anything to do with a GPS

02:15:26    7    device is not to customize but rather to respond.

02:15:30    8          Now, is there any part of the claim that refers to

02:15:33    9    customization of a questionnaire?  And, yes, there is, Your

02:15:38   10    Honor.  And the only place in this claim that talks about

02:15:41   11    customizing is 7[a].  And Fall Line might potentially point

02:15:45   12    to this as footing for its allegation, but I'm going to

02:15:48   13    look at that more closely and explain why that does not

02:15:52   14    provide footing for their pleading.

02:15:54   15          So in Element 7[a], you can see that this is

02:15:58   16    designing a questionnaire, and it does say that the

02:16:01   17    questionnaire is customized for a particular location.

02:16:06   18    But, again, here what does Element 7[a] not say?  And it

02:16:09   19    does not say that it uses GPS in any form or fashion to

02:16:14   20    customize the questionnaire.

02:16:17   21          So I'm going to point to a part of the

02:16:19   22    specification that explains what this means on the next

02:16:23   23    slide, please.

02:16:24   24          So here is an example, Your Honor, which tells us

02:16:26   25    what they're talking about here.  And you can see in the

02:16:30   1   top portion of the specification on the right side of the

02:16:33   2   screen, they're talking about prior to a trip to the

02:16:35   3   restaurant, an employee of the client restaurant develops a

02:16:39   4   questionnaire and then enters it on the web.  So you have a

02:16:43   5   client restaurant, you have an employee, and they're

02:16:46   6   developing a questionnaire.

02:16:47   7        Well, who would they be developing the

02:16:49   8   questionnaire for?  They're developing it for their

02:16:52   9   restaurant.  So that is what is being specified here when

02:16:56   10  it says for a particular location.

02:16:58   11       So if the employee, for example, works for, you

02:17:02   12  know, Joe's Barbecue Shack, they're developing a

02:17:06   13  questionnaire for Joe's Barbecue Shack, and that's how you

02:17:09   14  can reconcile this language of customized for a particular

02:17:13   15  location.

02:17:13   16       Now, where does the GPS device fit in?  As

02:17:17   17  discussed previously and as shown in this second part of

02:17:21   18  the specification and the paragraph following, starting at

02:17:23   19  Line 55, we can see that this gives us the answer.

02:17:26   20       So whereas the first part that I've indicated in

02:17:28   21  orange is merely talking about designing a questionnaire,

02:17:32   22  this second part of the specification example in blue shows

02:17:36   23  that the GPS unit again is used to respond to the

02:17:40   24  questionnaire.

02:17:40   25       So these are two different steps, and the GPS

02:17:44    1    receiver comes into play at this response step.

02:17:47    2          In short, Your Honor, Element 7[a], to the extent

02:17:51    3    that Fall Line points to this as a ground for their

02:17:55    4    pleading, is a red herring that is unrelated to the use of

02:17:59    5    a GPS device.

02:17:59    6          So now that we've looked at the claims and we've

02:18:01    7    looked at the specification, turning back once more to the

02:18:04    8    pleading, Your Honor, the pleading says that it was

02:18:08    9    unconventional to use GPS for the purpose of customizing a

02:18:12    10   questionnaire, but we've seen the patent, and we know that

02:18:14    11   the GPS device is never used to customize or generate or

02:18:19    12   develop or design the questionnaire.

02:18:21    13         So this is the similar type of thing that the

02:18:24    14   Plaintiff in Beteiro tried to argue to save the claim.  But

02:18:27    15   here, the pleading is implausible because it's simply not

02:18:31    16   grounded in the patent.  And that is what the Federal

02:18:34    17   Circuit was referring to when they said that no amount of

02:18:37    18   creative pleading can save the patent.  And that is why

02:18:41    19   Beteiro, in particular, is important to taking a fresh look

02:18:45    20   at this issue.

02:18:47    21         Now, let me turn to the second alleged

02:18:49    22   unconventional use quickly.  And in this -- next -- thank

02:18:54    23   you very much.

02:18:54    24         In this, they -- Fall Line says that you can

02:18:59    25   formulate new questions based on responses with GPS

18

02:19:02    1    information that you get.

02:19:04    2            So if that's the case, now, turning to the patent,

02:19:07    3    what does the patent say?  Well, we should be able to look

02:19:10    4    to Claim 7 here and see an element that's after Element [d]

02:19:14    5    where the claim says you're going to send back new

02:19:17    6    questions that were formulated based on what you get from

02:19:20    7    the GPS device.

02:19:21    8            Well, what happens when you -- we actually look at

02:19:25    9    the claim is that the claim doesn't say that.  Element [e],

02:19:28    10    which follows the GPS step at [d], says you transfer back

02:19:31    11    the responses.

02:19:32    12            And then if we look at Element [f], it says that

02:19:35    13    you make those available via the Internet.

02:19:38    14            So put simply, there's no element in this claim

02:19:40    15    that has anything to do with sending back refined questions

02:19:46    16    or revised questions based on any input that you received

02:19:49    17    before from the GPS device.

02:19:50    18            It's simply not in the claim.  And, again, we can

02:19:54    19    see here that Fall Line's second allegation that I've

02:19:58    20    highlighted in green is making an allegation that is not

02:20:01    21    tethered to the claim.  And, indeed, it's not tethered to

02:20:05    22    the specification either.

02:20:06    23            So if we turn to the specification, as we've seen

02:20:09    24    from the two high-level references to the GPS, there's

02:20:12    25    nothing in there that speaks to refining or revising

02:20:16    1    questions based on GPS.

02:20:17    2          So in sum, Your Honor, Beteiro counsels a fresh

02:20:21    3    look at this, given that the Federal Circuit said in a

02:20:26    4    similar posture that the use of location information from a

02:20:29    5    GPS device is well-understood and conventional.

02:20:32    6          So here we can see Element [d] is the only part of

02:20:36    7    the claim that uses the GPS device, and the only way it

02:20:40    8    does -- does so is what the Federal Circuit said is

02:20:43    9    well-understood and conventional.

02:20:45    10          So, obviously, Beteiro didn't address the two

02:20:49    11    specific allegations in our complaint that we have here.

02:20:51    12    But as to those, as we've explained, they are untethered to

02:20:55    13    the claims, they're untethered to the specification, and,

02:20:59    14    therefore, they're tantamount to what the Federal Circuit

02:21:00    15    was describing as creative pleading.

02:21:02    16          Furthermore, there is nothing that Fall Line can

02:21:07    17    do to amend in this case because any amendment would be

02:21:11    18    futile.  And why I say that is because they can't change

02:21:14    19    their claims.  Fall Line cannot change their specification.

02:21:18    20    And when they're confined to the claims in the four corners

02:21:20    21    of the patent, there's nothing that they can put in their

02:21:23    22    complaint that would not be creative pleading.

02:21:25    23          So, therefore, Claim 7 should be found ineligible.

02:21:32    24    And 7-Eleven respectfully requests that the motion to

02:21:38    25    dismiss be granted without leave to amend.

02:21:40   1            Thank you.

02:21:41   2            THE COURT:  Thank you, Ms. Deer.

02:21:52   3            MR. MUELLER:  Your Honor, on behalf of Best Buy,

02:21:54   4  we adopt and agree with everything that Ms. Deer said.  But

02:21:58   5  I wanted to just provide a little bit more of an expansive

02:22:01   6  answer on your question.

02:22:03   7            In the Beteiro case, beginning on Page 14, it says

02:22:07   8  that the question of Step 2 of an inventive concept is a

02:22:13   9  question of law that may be informed by underlying factual

02:22:17  10  determinations.  And I believe your question was whether a

02:22:19  11  GPS could ever be an inventive concept.

02:22:22  12            And what Beteiro says also on Page 14 --

02:22:26  13            THE COURT:  Well, my question is whether that's

02:22:28  14  what that case said.  I don't think that's what it said,

02:22:31  15  but --

02:22:31  16            MR. MUELLER:  Okay.  You're correct.  So what that

02:22:34  17  case -- it did not say that, that it could never be.  What

02:22:38  18  it said on Page 14 is in that case, there's no plausible

02:22:42  19  non-conclusory allegation that the claimed GPS is anything

02:22:46  20  other than part of, as the District Court put it, a set of

02:22:50  21  generic computer components.

02:22:51  22            And the factual underpinnings of that finding

02:22:54  23  continue on Page 15 of Beteiro where it says:  Nowhere does

02:22:57  24  the specification describe any difference between how GPS

02:23:02  25  would be equipped on a mobile phone and how it would be

| 02:23:06 | 1 | equipped on any other -- any of the other described |
| 02:23:08 | 2 | conventional computers. |
| 02:23:09 | 3 | So there, as here, there's nothing in the |
| 02:23:13 | 4 | specification that puts GPS in a different position than |
| 02:23:18 | 5 | its use as an ordinary conventional tool. |
| 02:23:22 | 6 | Thank you, Your Honor. |
| 02:23:22 | 7 | THE COURT:  Thank you, Mr. Mueller. |
| 02:23:25 | 8 | MS. HASHEM:  Good afternoon, Your Honor. |
| 02:23:34 | 9 | THE COURT:  Good afternoon. |
| 02:23:35 | 10 | MS. HASHEM:  AutoZone joins in and adopts the |
| 02:23:40 | 11 | arguments presented by 7-Eleven and Best Buy, and similarly |
| 02:23:41 | 12 | requests that this Court find the '748 patent invalid under |
| 02:23:45 | 13 | Section 101, and, therefore, dismiss all claims against |
| 02:23:47 | 14 | AutoZone with prejudice. |
| 02:23:49 | 15 | THE COURT:  All right.  Thank you, Ms. Hashem. |
| 02:23:53 | 16 | All right.  Mr. Antonelli, I think you're up now. |
| 02:23:56 | 17 | MR. ANTONELLI:  Your Honor, we have a few |
| 02:24:08 | 18 | presentations -- |
| 02:24:10 | 19 | THE COURT:  Okay.  Yes, of course. |
| 02:24:11 | 20 | MR. ANTONELLI:  Can I hand them up? |
| 02:24:13 | 21 | THE COURT:  Yes.  Thank you. |
| 02:24:47 | 22 | MR. ANTONELLI:  Your Honor, I may be having a |
| 02:25:15 | 23 | technical problem with the display.  Would it be okay if I |
| 02:25:18 | 24 | just referred to the slides -- |
| 02:25:18 | 25 | THE COURT:  Oh, of course. |

02:25:20    1           MR. ANTONELLI:  -- by page number?

02:25:21    2           THE COURT:  Yes.  I have it in front of me.

02:25:24    3           MR. ANTONELLI:  Okay.  I will do it that way.

02:25:26    4       So just starting out at Page 3, Slide No. 3, just

02:25:36    5   conveniently, we chose the same color coding for the two

02:25:41    6   inventive concepts.  There are two, indeed, and other ones

02:25:44    7   that we've alleged in our complaint, but these are the two

02:25:48    8   we focused in on on our opposition to the motion to

02:25:53    9   dismiss, and we did so for good reason.

02:25:55   10       The reason we focused on these two inventive

02:25:58   11   concepts are these are the identical inventive concepts

02:26:02   12   that this Court had already ruled were plausibly pleaded in

02:26:07   13   the prior Fall Line case.  And that's on the next slide,

02:26:10   14   Slide 4.  And we've attached that order as an exhibit to

02:26:15   15   our opposition.

02:26:15   16       So at the pleading stage, this Court already found

02:26:21   17   these -- that we had said enough about the use of a GPS

02:26:28   18   that was alleged to be inventive and that that was enough

02:26:31   19   to survive on the pleadings.

02:26:34   20       I remember this even came up in front of you, Your

02:26:39   21   Honor, however many years ago this was that we argued this

02:26:43   22   before, the issue of it's not enough -- I think in the

02:26:46   23   Court's opinion we were asked a lot of questions about

02:26:49   24   this, like, just an integrated GPS on its own, is that

02:26:52   25   enough?  And there were -- there were already some cases

02:26:54  1  that suggested that wasn't enough.  And I think the Court

02:26:56  2  had concerns that that might not be enough.

02:27:00  3      But in its ruling, the Court said that Fall Line

02:27:03  4  had gone beyond alleging merely integrating a GPS unit was

02:27:09  5  an inventive concept.  We've gone beyond that to allege two

02:27:13  6  specific uses of that integrated GPS, and it was those uses

02:27:19  7  of the integrated GPS that were inventive.

02:27:23  8      The other important history on this is we even

02:27:32  9  went further on this issue in front of Your Honor in the

02:27:35  10  prior case, and we went all the way to the summary judgment

02:27:39  11  stage and got very close to trial.

02:27:40  12      And on summary judgment, there were cross-motions

02:27:42  13  for summary judgment on this.  There were expert reports,

02:27:44  14  motions to strike expert reports, and so forth.  We've

02:27:47  15  included as evidence in our opposition our expert report,

02:27:51  16  some, you know, 80 pages analyzing everything that the

02:27:54  17  other side could throw at us, and putting in evidence from

02:27:57  18  our expert explaining why that wasn't enough to make out a

02:28:01  19  defense.

02:28:01  20      The Court on those summary judgment motions found

02:28:05  21  two things.  One, we could survive the summary judgment

02:28:10  22  challenge that was brought by the other side, not only

02:28:14  23  because they had some serious problems with the extent to

02:28:19  24  which they met their burden, but also independently because

02:28:23  25  we had sufficient evidence, which we largely pointed to our

02:28:27    1    expert report.  That evidence was sufficient to get past

02:28:31    2    summary judgment.  And then, in fact, the Court actually

02:28:33    3    granted summary judgment in our favor, I think largely

02:28:36    4    because of the other side's defaults.

02:28:39    5            But the point I want to make is that the survival

02:28:41    6    of the summary judgment motion, the Court was clear, we had

02:28:45    7    sufficient evidence -- that was an independent ground to

02:28:49    8    survive summary judgment.

02:28:50    9            So we're in a situation where we've got two

02:28:52   10    inventive concepts that are in our complaint.  Now, of

02:28:55   11    course, I put these inventive concepts into our complaint

02:28:58   12    given this history.  And these inventive concepts survived

02:29:02   13    the motion to dismiss.  The Court found they were plausibly

02:29:06   14    pleaded, and they had sufficient evidence to go to a jury.

02:29:10   15            So that brings us to this point, which is how do I

02:29:16   16    lose on a motion to dismiss now on a case where I've

02:29:20   17    survived summary judgment?

02:29:21   18            THE COURT:  Because the law has changed.

02:29:23   19            MR. ANTONELLI:  That's the only way I can lose is

02:29:26   20    if the law has changed.  It hasn't.

02:29:29   21            Beteiro did not change the law.  I mean, I read

02:29:36   22    the opening brief as essentially saying that this was kind

02:29:39   23    of a new categorical rule that any use of a GPS can't

02:29:44   24    amount to an inventive concept.  But the Defendants have

02:29:50   25    backed off of that, or clarified what their position was,

02:29:54   1   at least in their reply brief, and they made clear that

02:29:57   2   they were not taking the position that no use of an

02:30:03   3   integrated GPS could ever be inventive.  That is not their

02:30:09   4   position.

02:30:10   5          So that's not a category that's foreclosed by law.

02:30:12   6   And we are alleging uses of an integrated GPS that we are

02:30:16   7   alleging are inventive and that the Court previously

02:30:19   8   credited as being inventive.

02:30:20   9          So given that, I don't -- if that's the correct

02:30:26   10  understanding of Beteiro that it doesn't have this

02:30:28   11  categorical change in law, then I don't know how their

02:30:31   12  motion to dismiss could get off the ground, because we

02:30:36   13  think we are in that category.  And there are at least,

02:30:41   14  Defendants will concede, some possible inventive uses in

02:30:44   15  that category.  And we're alleging that our uses are

02:30:47   16  inventive, and we have evidence that we've put in that is

02:30:50   17  essentially ignored by the Defendants.  They ignore our

02:30:55   18  expert report.  They don't have a word to say about it in

02:30:58   19  their briefing.

02:30:59   20         And so we have a very, very strong case in support

02:31:02   21  of those inventive concepts, enough to get to a jury,

02:31:06   22  enough to certainly survive on the pleadings.

02:31:11   23         So Slide -- I've moved to Slide 9, sorry.  I

02:31:18   24  haven't been announcing these.

02:31:20   25         Slide 8 talks a little about what the Defendants'

02:31:22   1   position is and their concession that they're not saying at

02:31:25   2   least that there's this radical change in law --

02:31:28   3   categorical change in law.  And I think that's fatal to

02:31:31   4   their -- to their motion because this case is nothing like

02:31:34   5   Beteiro.  If all we're doing is just comparing facts --

02:31:38   6   facts and cases and which ones are we more like, Slide 9

02:31:42   7   summarizes what Beteiro was all about and what the

02:31:44   8   allegations were in there.

02:31:46   9        So there was a lot of discussion, I think, in the

02:31:48   10  presentation that the Court just saw about what was going

02:31:50   11  on in Beteiro.  But the heart of Beteiro, the argument that

02:31:55   12  was made by the Plaintiff there was I've got an integrated

02:31:59   13  GPS.  Integrated GPS, that's enough.  And that's the same

02:32:04   14  thing this Court dealt with four or five years ago,

02:32:07   15  whenever it was, when the Court on the existing law, you

02:32:11   16  know, expressed some skepticism that an integrated GPS was

02:32:15   17  enough, given the state of law, but ruled that we were

02:32:19   18  alleging more than just an integrated GPS.  We were

02:32:21   19  alleging certain uses of an integrated GPS as being

02:32:27   20  inventive.

02:32:27   21       So the bulk of Beteiro is simply about is an

02:32:31   22  integrated GPS enough to be inventive?  And that's where in

02:32:35   23  Beteiro the Court's looking at the spec and saying, well,

02:32:39   24  if integrating a GPS was a technical problem that needed to

02:32:42   25  be solved, you would expect more disclosure in the spec,

02:32:44  1   and that's why this -- the fact that this spec doesn't

02:32:47  2   have that disclosure tells you something about the

02:32:50  3   plausibility of whether just an -- just integrating a GPS

02:32:55  4   can be enough.

02:32:55  5       But Beteiro did not announce a new rule of law.

02:33:01  6   So the Court asked counsel for Defendants, you know, what

02:33:05  7   was this new question of law?  And I think what I heard in

02:33:10  8   the presentation was that Beteiro changed the law by saying

02:33:13  9   that whatever you're alleging is -- to be the inventive

02:33:20  10  concept, that that must be disclosed in the spec of the --

02:33:24  11  of the patent.  That was a -- I think a part of how the

02:33:29  12  Defendants characterized Beteiro.

02:33:30  13      And I do not believe Beteiro changed the law in

02:33:34  14  that manner.

02:33:35  15      So the sort of background on this, when we were

02:33:37  16  together before in the prior case, was the Cellspin case.

02:33:43  17  And Cellspin was an important case that made very clear,

02:33:46  18  addressed that issue squarely, and said that it was not

02:33:50  19  required, that you do not have to have the inventive

02:33:57  20  concepts described in the spec.

02:33:58  21      So in particular, in the Cellspin case, which is

02:34:03  22  927 F.3d 1306, and in particular at Pages 1317 to 1318, the

02:34:10  23  Federal Circuit said this:  While we do not read Aatrix to

02:34:19  24  say that any allegations about inventiveness, wholly

02:34:19  25  divorced from the claims or the specification, defeats a

02:34:24    1  motion to dismiss, plausible and specific factual

02:34:26    2  allegation that aspects of the claims are inventive are

02:34:31    3  sufficient.  As long as what makes the claims inventive is

02:34:35    4  recite -- sorry.  As long as what makes the claims

02:34:39    5  inventive is recited by the claims, the specification

02:34:43    6  not -- need not expressly list all the reasons why this

02:34:46    7  claim structure is unconventional.

02:34:47    8        And if Beteiro was changing that law and saying

02:34:53    9  that you had to find teachings in the specification about

02:34:55   10  that, you would have expected to see that.

02:34:58   11        I read Beteiro's focus on the spec as essentially

02:35:03   12  evidentiary for why it's not -- it's inconsistent to

02:35:07   13  believe that this technical issue of how you would

02:35:10   14  integrate a GPS could be an inventive thing when there's no

02:35:14   15  disclosure about that in the spec, not a rule that any

02:35:19   16  inventive concept that you're going to allege must -- must

02:35:21   17  be disclosed in the spec.

02:35:25   18        The idea that there was a change in law being made

02:35:29   19  like that was not there at all.  In fact, in Beteiro, the

02:35:32   20  Federal Circuit expressly distinguishes Cellspin, talks

02:35:35   21  about Cellspin, and says, yeah, yeah, we're not saying

02:35:38   22  we're changing Cellspin.  This case is not like Cellspin

02:35:43   23  and distinguishes it.  And I'll touch on that in a moment.

02:35:46   24        So there -- there isn't this big change in law in

02:35:49   25  Beteiro.  It's certainly not a change in law that says it

02:35:53    1    has to be in the spec.  I don't even think that was really

02:35:56    2    the focus of the argument in the briefing that was

02:35:59    3    submitted by the -- by the Defendants on this issue.

02:36:02    4         But in any event, the key in Beteiro was the only

02:36:07    5    thing that was at issue was an allegation by the Plaintiffs

02:36:10    6    that what was inventive was an integrated GPS, and then one

02:36:14    7    other thing, which was use it in the context of gaming.

02:36:19    8    And that's on Page 9.

02:36:20    9         This is how the Federal Circuit presented the

02:36:23    10   issues.  And just saying to use it in this overall context

02:36:27    11   somewhere doesn't really say much at all.  That's not an

02:36:30    12   inventive concept.

02:36:30    13        So in Beteiro, those are at Pages 1357 to '58 is

02:36:38    14   where that discussion is.

02:36:39    15        So I'm going to make the same argument I made

02:36:46    16   before, four or five years ago, is this case is like

02:36:48    17   Cellspin.  Factual disputes about whether something is

02:36:53    18   inventive -- this is on Page 10 of my -- Slide 10 -- are

02:36:58    19   enough to survive a motion to dismiss.

02:37:00    20        Page 11 shows a little bit about what was at issue

02:37:03    21   in Cellspin, right?  There was, again, just a very basic

02:37:07    22   abstract idea of taking -- collecting information,

02:37:10    23   publishing information, kind of a similar abstract idea to

02:37:12    24   our abstract idea or what has been alleged to be the

02:37:15    25   abstract idea here.

02:37:16    1          And what they said in Cellspin is, like, no, look,

02:37:19    2    we have this idea that we're going to distribute the steps

02:37:22    3    between different devices and have certain protocols that

02:37:25    4    we use to talk to them, so that when you take the picture,

02:37:28    5    instead of having to have your own built-in WiFi chip,

02:37:32    6    instead, you'll piggyback on the WiFi in your phone and

02:37:35    7    that's what you'll use to get it up to the Internet.  It's

02:37:39    8    like that simple.

02:37:39    9          And that arrangement of -- that use of

02:37:41   10    conventional components, the camera and the cell phone with

02:37:45   11    the WiFi chip, putting them into that arrangement and using

02:37:49   12    them in that way was plausibly alleged to be inventive.

02:37:53   13    And that's exactly what we're doing, right?

02:37:55   14          So our allegation is you take the GPS and you use

02:37:58   15    it in certain combinations, in certain ways, and that's an

02:38:02   16    inventive thing.  And we've backed that up by -- like, an

02:38:08   17    in-depth evidentiary expert report that was sufficient to

02:38:12   18    win the day at the summary judgment stage.

02:38:14   19          So lastly on Page 12, it's just the citation and

02:38:24   20    quote from Beteiro where they're distinguishing Cellspin.

02:38:28   21    And it's like, yeah, we're not like Cellspin because there,

02:38:31   22    they had enough.  They actually alleged a use of these

02:38:34   23    conventional components, the same kind of use that we, Fall

02:38:38   24    Line, alleged here.

02:38:39   25          So I think Defendants in their presentation today

02:38:41  1  have recognized some of the problems with I think their --

02:38:45  2  what they presented in their original briefs, because we

02:38:49  3  heard a brand new thread to the argument which is that this

02:38:52  4  stuff that I'm alleging as inventive concepts is not found

02:38:55  5  in Claim 7.  It's not tethered to Claim 7.  And I don't see

02:39:00  6  any of that discussion in their briefing.

02:39:03  7        I think there was a one-off reference to something

02:39:06  8  not captured by the claims somewhere towards the end of the

02:39:09  9  opening brief, but this discussion that this stuff was not

02:39:13  10  in the claims is all new, Your Honor.

02:39:14  11        And it's not true.  It appears to be based on some

02:39:21  12  kind of claim construction that's inconsistent with the

02:39:23  13  claim constructions that the Court has previously adopted.

02:39:27  14        Just looking at the second inventive concept as an

02:39:33  15  example, this is the one that says what's inventive -- the

02:39:39  16  inventive use of the GPS in this particular environment

02:39:42  17  back in the day when this was invented, networks not being

02:39:46  18  reliable, handheld devices being, you know, very

02:39:49  19  low-powered, poor quality things, Palm Pilot days, it's

02:39:54  20  what our, you know, priority date goes back to.

02:39:56  21        What our inventive concept was -- the second one

02:40:01  22  is, you know, the idea that you're going to use the GPS to

02:40:06  23  collect location information, send that off to the server

02:40:09  24  side, right?  Then the server is going to be the one that

02:40:12  25  generates questions, customizes the questionnaire, creates

02:40:17   1   additional questions that will be based on those GPS

02:40:19   2   coordinates, and then those can be transmitted back to the

02:40:22   3   handheld device for answers.

02:40:23   4       That was kind of the inventive -- big picture, the

02:40:28   5   Inventive Concept No. 2, right?

02:40:30   6       That's right out of Claim 7.  I mean, the

02:40:33   7   structure of Claim 7 is a server handheld structure.  And

02:40:39   8   there are certain steps that have to happen on the server

02:40:42   9   and certain steps that have to happen on the handheld

02:40:45   10  mobile device.

02:40:46   11      So my presentation doesn't have a copy of Claim 7,

02:40:52   12  but there's a -- there's a copy of Claim 7, for example, at

02:40:55   13  Page 5 of Defendants' presentation, if the Court has it.

02:41:00   14      And Steps [a] and [b] are server-side steps where

02:41:06   15  you are doing the step of designing the questionnaire that

02:41:09   16  has to be -- that has to be a customized questionnaire, and

02:41:14   17  transmitting it to the phone side or the loosely networked

02:41:18   18  computer side.

02:41:18   19      Steps [c] and [d] and [e] are steps where that

02:41:24   20  questionnaire is executed on the phone side.  Responses are

02:41:28   21  collected.  The initial questions about GPS information,

02:41:32   22  location information, those responses are collected using

02:41:35   23  the GPS aspects of it.

02:41:39   24      And then Steps [e] and [f] are the steps where the

02:41:43   25  responses get transmitted back and then made available over

02:41:45  1  the Internet.  Those are the back to the server side.  And

02:41:48  2  it's this spreading of the process and distributing it

02:41:51  3  appropriately between the server and the client, which is

02:41:54  4  this -- all what's involved in this inventive concept that

02:41:57  5  was the second inventive concept that the Court found to be

02:42:00  6  previously plausibly pled.

02:42:03  7        So I'm not sure why the Defendants think that, for

02:42:09  8  example, Step [a] doesn't matter to this.  It could be an

02:42:12  9  argument that, like, maybe Step [a] has to happen first

02:42:17  10  before you use the GPS coordinates, use the GPS device, but

02:42:21  11  that's like -- that's been, like, well hashed over in claim

02:42:28  12  construction in the past, right?  So we've got -- we've got

02:42:29  13  claim constructions that, remember, don't require these

02:42:31  14  steps to happen in absolute order.  They can overlap.

02:42:35  15        So you can have a question generated from the

02:42:37  16  server side that says:  Tell me your location.  Right?  And

02:42:39  17  then the phone side can then execute that question and send

02:42:45  18  back the -- using the GPS coordinates, send back the

02:42:49  19  location.

02:42:50  20        Then on the server side, you can send another

02:42:53  21  question saying, okay, well, here's some restaurants you

02:42:55  22  can choose from or some locations you can choose from that

02:42:58  23  are near your GPS location.  That's a second question.

02:43:01  24  That can then be responded to, processed, transferred back,

02:43:04  25  and so forth.

02:43:04   1        And so the overall process of this is that's how

02:43:07   2   the questionnaire becomes customized.  I mean, we have

02:43:10   3   claim constructions already in prior cases agreed to in --

02:43:14   4   in other cases.  We haven't had claim construction in this

02:43:16   5   case yet, but I should at least get the benefit at this

02:43:19   6   stage of whatever claim constructions we had in the past

02:43:22   7   that make clear that -- that what the location -- the

02:43:28   8   information you're going to get is the information from the

02:43:30   9   GPS device.  It's got to be the location of where that GPS

02:43:33  10   device, which is, you know, going to be pretty much the

02:43:36  11   person carrying the GPS device around.  Like, that was a

02:43:38  12   claim construction dispute that we had and that we

02:43:41  13   prevailed upon -- on.

02:43:43  14        So that -- this claim does -- is tied throughout.

02:43:47  15   It's the overall architecture of this claim that is tied to

02:43:50  16   the inventive concept that we pleaded.

02:43:52  17        So it's -- I think these are new arguments that

02:43:59  18   are being made on all these issues, but it -- and so it's

02:44:03  19   not really fair, but it's in there.  It's in these claims,

02:44:06  20   these inventive concepts, and they're tied -- the inventive

02:44:09  21   concepts we've alleged are tied to the claims.  That was a

02:44:12  22   necessary finding that was made last time.  We argued that

02:44:14  23   last time.  We argued that it was in the claims.

02:44:16  24        I think the only thing I remember arguing last

02:44:19  25   time was I thought maybe I didn't have enough detail in the

02:44:21    1   complaint, and I told the Court if I didn't have enough

02:44:24    2   detail in the complaint -- you know, I think I've got

02:44:26    3   enough, but you should grant leave to amend if I need to

02:44:29    4   add a little bit more to put this in.

02:44:31    5        I'll say the same thing on that front again.  For

02:44:35    6   any reason -- and this is my last slide -- the Court

02:44:38    7   believes that we don't have enough, I think the law is

02:44:41    8   clear that the kind of factual allegations that go to

02:44:45    9   Step 2 of Alice are the kind of things that leave should

02:44:48   10   be -- should be granted freely on.  So if there's any

02:44:51   11   concern about that, I would ask that we be granted leave to

02:44:55   12   amend.

02:44:55   13        Thank you, Your Honor.

02:44:56   14        THE COURT:  Thank you.

02:45:08   15        MS. DEER:  Hi.

02:45:09   16        THE COURT:  Ms. Deer?

02:45:10   17        MS. DEER:  A few points in rebuttal, Your Honor.

02:45:12   18        First, my colleague, Mr. Antonelli, referenced the

02:45:18   19   motion to dismiss and the motion for summary judgment.  And

02:45:20   20   a couple of things to note there.

02:45:22   21        First, the Court had taken as true the allegations

02:45:26   22   in Plaintiff's complaint.  Here, we're saying that Beteiro

02:45:30   23   and the analysis set forth in Beteiro that the Federal

02:45:33   24   Circuit underwent advises taking a new look at this.

02:45:37   25        Now, second, with respect to the motion for

02:45:41  1  summary judgment stage, Footnote 18 of the Court's order

02:45:45  2  indicates that the two inventive concepts that Fall Line is

02:45:50  3  raising today were not actually addressed by the Defendants

02:45:54  4  at summary judgment.

02:45:55  5       So, again, I think that this counsels a new look

02:45:58  6  at these allegations in the pleadings.

02:46:01  7       Now, second, counsel for Fall Line made a few

02:46:05  8  statements about Beteiro and why it is not a change in the

02:46:08  9  law.  So I would like to further clarify why Beteiro is a

02:46:12  10  change in the law.

02:46:13  11       First, it, again, discusses how we should look at

02:46:22  12  GPS.  And, specifically, Beteiro is a change in GPS law

02:46:26  13  because it's making clear that you can't simply tack a GPS

02:46:30  14  limitation onto a claim and make it eligible.

02:46:32  15       So it's a change in the law as it relates to these

02:46:36  16  facts here and indicates that these allegations about an

02:46:39  17  integrated GPS performing a customary function that is

02:46:44  18  well-known and well-understood should not be credited.

02:46:47  19       And, second, Beteiro tells us what inferences we

02:46:51  20  can draw from the way a specification is written.  And

02:46:55  21  here, we see that Fall Line's allegations are not the type

02:46:58  22  of allegations that can defeat a motion to dismiss.  And

02:47:03  23  specifically, they are the type of creative pleading that

02:47:07  24  the Federal Circuit said in Beteiro was not something that

02:47:10  25  should be taken as plausible.

02:47:11    1          Now, I'd like to address the Cellspin case that

02:47:18    2    Mr. Antonelli referenced.  And, in fact, Cellspin is

02:47:22    3    addressed by the Court in Beteiro.  So at Page 1359 of the

02:47:28    4    Beteiro opinion, Beteiro specifically takes on Cellspin,

02:47:33    5    and they note that -- like counsel for Fall Line noted,

02:47:39    6    they said that Cellspin was sufficient to preclude

02:47:42    7    dismissal because it had specific factual allegations of

02:47:49    8    why the inventions were not conventional.  And, of course,

02:47:52    9    that's the part that was quoted.

02:47:53    10         However, what Fall Line did not mention was -- and

02:47:57    11   what the Court in Beteiro did discuss was that these

02:48:00    12   allegations were -- and I'll quote from the Federal

02:48:04    13   Circuit, Beteiro opinion at 1359:  These were rooting these

02:48:08    14   allegations in the patent-in-suit.

02:48:10    15         And they say:  Beteiro's allegations, by

02:48:13    16   comparison, are neither specifically tied to the claimed

02:48:17    17   invention, nor, as we have explained, plausible in light of

02:48:21    18   the specification's description of generic technology.

02:48:23    19         And I think that's really important here, Your

02:48:25    20   Honor, is -- and why that Cellspin shouldn't be credited on

02:48:29    21   behalf of Fall Line because, again -- and like I just

02:48:32    22   mentioned it's this representing an analysis that the Court

02:48:35    23   is suggesting we should undergo, we should look to the

02:48:38    24   specification and see if the specification describes

02:48:41    25   something that's conventional.

38

02:48:43   1              And, again, as I explained when I was up at the

02:48:46   2     podium the first time, the specification here in the '748

02:48:50   3     patent does nothing more than explain a conventional use of

02:48:54   4     GPS.

02:48:55   5              And also, Fall Line's allegations are entirely

02:48:58   6     divorced and untethered from both the claim of the '748

02:49:03   7     patent and the specification of the '748 patent.

02:49:05   8              Now, I'll also note that the Berkheimer versus HP

02:49:13   9     case, which is a 2018 Federal Circuit case that was recited

02:49:16  10     in 7-Eleven's opening brief, also states that any purported

02:49:20  11     improvement must be in the claims.

02:49:24  12              So this is established that there has to be some

02:49:26  13     kind of tie between the allegations and the -- the claims

02:49:32  14     themselves.

02:49:32  15              Now, I'd also like to address -- Mr. Antonelli

02:49:37  16     referenced that Beteiro is not applicable here because it

02:49:39  17     was related to gaming.

02:49:41  18              Now, we're not trying to say that the factual

02:49:43  19     similarities between these two cases are the reason that

02:49:45  20     Your Honor should be focused on Beteiro, but rather because

02:49:50  21     there are factual similarities between Beteiro and the case

02:49:54  22     here, the legal conclusion that is drawn from Beteiro is

02:49:56  23     the relevant part.  And, again, that legal conclusion was

02:49:59  24     that when you do nothing more than explain conventional

02:50:05  25     well-understood usage of location information in the

02:50:08    1    specification, just because it comes from a GPS device

02:50:12    2    doesn't somehow make it more than that.

02:50:16    3         And that's exactly why we're putting this forward

02:50:18    4    as a change in the law with respect to GPS.

02:50:20    5         Further, I will address -- I believe Mr. Antonelli

02:50:25    6    said that this was inconsistent with the Court's claim

02:50:30    7    construction in a prior case.  And I'll address that, as

02:50:32    8    well, and note that when I had gone through the complaint

02:50:36    9    in my opening presentation, I had discussed that Step [a]

02:50:42   10    is a designing of the questionnaire step.  And then later

02:50:45   11    in the claim, we can see that the only place in the claim

02:50:47   12    where GPS is referenced is Step [d], and that's an --

02:50:51   13    that's an execution step of the questionnaire.

02:50:53   14         And, in fact, the Court, on Page 14 of its claim

02:50:58   15    construction order in the Zoe's Kitchens case, says that

02:51:04   16    the plain language of the claim recites that GPS does not

02:51:06   17    provide the location until the questionnaire is executed.

02:51:12   18         So, again, I'll note that this -- the language of

02:51:17   19    the claim is that the GPS is involved in not the designing

02:51:22   20    but in the execution step of the claim, and, therefore,

02:51:25   21    Fall Line's allegations and this kind of idea that they

02:51:29   22    have that the questions are refined based on a back and

02:51:34   23    forth is not necessarily grounded and in our opinion is not

02:51:40   24    grounded at all in the claim language or in the

02:51:42   25    specification.

02:51:42    1          Now, additionally, I'll discuss this kind of

02:51:48    2    process between the server and the client.  Fall Line is

02:51:51    3    pointing to functions that are kind of conventional

02:51:55    4    functional language.  It's result-focused functional

02:51:59    5    language.

02:52:00    6          So what he's talking about is, again, not

02:52:03    7    something that can help us here with Step 2.  And

02:52:06    8    furthermore, I'll note that counsel for Fall Line did not

02:52:10    9    point to anything in the specification that supported

02:52:15   10    his -- his idea of -- of this allegation.

02:52:17   11          Now, I'll also go to his reference that Defendants

02:52:24   12    are ignoring his expert testimony from the motion for

02:52:30   13    summary judgment stage.  And to that, again, I think we

02:52:33   14    just have to take this back to the claim and the intrinsic

02:52:36   15    record here.

02:52:38   16          So it's -- this matter is not about an expert

02:52:41   17    supporting things that aren't tethered to the patents

02:52:43   18    themselves.  And all of the discussion about what the

02:52:46   19    expert says or does not say ultimately cannot change what

02:52:51   20    is in the claims.

02:52:53   21          And, again, Beteiro tells us that as of 2002,

02:52:57   22    these types of conventional uses of information from a GPS

02:53:01   23    device where you're simply automatically responding,

02:53:04   24    whether it be a message related to bedding or whether it be

02:53:07   25    a response to a questionnaire, these uses are well known

02:53:10    1    and conventional.

02:53:12    2        Now, regardless of what Fall Line's expert was

02:53:15    3    trying to say, again, we've now heard from the Federal

02:53:18    4    Circuit on this, and that has settled that issue.

02:53:22    5        Finally, I believe that counsel for Fall Line -- I

02:53:32    6    think we can just point to what counsel for Fall Line

02:53:35    7    didn't say.  And, again, he didn't say where in the

02:53:39    8    specification this teaches customizing a questionnaire

02:53:42    9    based on a GPS device.  He didn't say where in the

02:53:45    10   specification this idea of refining questionnaires based on

02:53:49    11   GPS information is found.  And in addition, he didn't get

02:53:55    12   up here and explain that -- why that first element doesn't

02:54:01    13   say using a GPS device.  It simply is not in the language

02:54:06    14   of Element 7[a] that a GPS device is present.

02:54:10    15       And, again, I'll reference the Court back to that

02:54:13    16   Column 10 example in the specification about the mystery

02:54:17    17   shopper and the restaurant where the mystery shopper shows

02:54:21    18   up in the parking lot of the restaurant and then the

02:54:25    19   questionnaire is initiated.  And then at that point, GPS

02:54:28    20   information is automatically sent in response to the

02:54:30    21   questionnaire.

02:54:30    22       So with that, I believe I'm finished, unless the

02:54:34    23   Court has any questions.

02:54:35    24       THE COURT:  All right.  I don't.  Thank you,

02:54:36    25   Ms. Deer.

02:54:37    1            MS. DEER:  Thank you.

02:54:37    2            THE COURT:  Anything else?

02:54:38    3            MR. ANTONELLI:  May I say two more things, Your

02:54:40    4    Honor?

02:54:40    5            THE COURT:  Yes.

02:54:41    6            MR. ANTONELLI:  I want to just point out a little

02:54:44    7    more of the linkage in Claim 7 between the various steps to

02:54:48    8    show that it's all involved.

02:54:49    9            Again, if Your Honor has the claim language maybe

02:54:54   10    in Slide 12, for example, of the Defendants' presentation,

02:54:58   11    you'll note that Step [a] says designing a questionnaire.

02:55:01   12    And that questionnaire has to include at least one question

02:55:05   13    customized for a particular location.  So that means that

02:55:08   14    it's going to be somehow designed to be customized for a

02:55:11   15    location.

02:55:11   16            And the questionnaire -- Step [a] also says that

02:55:16   17    the questionnaire has to have at least one question that

02:55:21   18    requests location identifying information.  So we got a

02:55:24   19    questionnaire that has to have at least one question that

02:55:28   20    requests location identifying information.

02:55:30   21            And then in Step [d], we have using -- while the

02:55:38   22    transferred questionnaire is executing, you use the GPS to

02:55:42   23    automatically provide said location identifying

02:55:47   24    information.

02:55:47   25            So one of the questions in the questionnaire that

02:55:49    1    comes from Step [a] says:  Tell me your location.

02:55:54    2            It has to be in there.

02:55:55    3            Then in Step [d], it says:  Use the GPS to answer

02:55:59    4    that question.

02:56:00    5            You then provide that response, and then the

02:56:03    6    questionnaire has to become customized based on your

02:56:08    7    location.

02:56:08    8            So the only way this argument works that

02:56:10    9    Defendants are making that Step [a] has nothing to do with

02:56:13   10    this is if you're going to somehow interpret these claims

02:56:17   11    in a way that just ignores all of that and says, no, no,

02:56:20   12    Step [a] has to be done first.  You have to design the

02:56:22   13    questionnaire -- has to be designed, customized for a

02:56:26   14    particular location before you receive any GPS coordinates.

02:56:29   15    And that -- that way of interpreting the claim doesn't make

02:56:32   16    any sense, just given the plain language.  And the Court

02:56:34   17    has already rejected that interpretation.  I mean, that has

02:56:38   18    already been rejected in past claim construction orders,

02:56:41   19    Your Honor.

02:56:41   20            The only other thing I wanted to say is with

02:56:44   21    respect to this Footnote 18 issue in the summary judgment

02:56:49   22    opinion, I agree it's -- I think it's worded a little

02:56:52   23    funny, I'm sorry to say, Your Honor.  But the footnote says

02:56:56   24    that we also -- even if Defendants had -- had -- even if

02:57:02   25    McDonald's had not met its -- had met its burden,

44

02:57:05    1   Defendants would still win because they haven't -- they

02:57:08    2   haven't rebutted -- the inventive concepts went unrebutted

02:57:12    3   or something along those lines.

02:57:13    4        But given the context, I don't think that was a

02:57:15    5   ruling that just merely McDonald's defaulted.  It was an

02:57:21    6   additional ruling that said even if McDonald's had met its

02:57:24    7   burden, I still win on summary judgment because then we

02:57:27    8   would go to sort of the Step 2 of the summary judgment

02:57:30    9   process.  Do I have enough evidence on my side to raise a

02:57:33   10   genuine issue?  And then the Court pointed to -- cited

02:57:36   11   various things after that, including my expert report to

02:57:38   12   show that I have enough evidence.

02:57:40   13        So I think the clear import of that is it's a

02:57:43   14   second reason that I win.  And the importance of that is it

02:57:48   15   shows that not -- not only that I win on summary judgment,

02:57:51   16   but it shows that I -- based on a default by the other

02:57:54   17   side, but I won on summary judgment because I have

02:57:58   18   sufficient evidence.  If I can win on -- if I can survive

02:57:59   19   summary judgment because I have sufficient evidence, then

02:58:01   20   how could I possibly lose at the pleading stage?

02:58:05   21        Thank you, Your Honor.

02:58:06   22        THE COURT:  Thank you Mr. Antonelli.

02:58:08   23        Ms. Deer, it's your motion.  If you want to have

02:58:10   24   the last word, you can have the last word.

02:58:10   25        MS. DEER:  Yes, Your Honor.  Thank you.  I

| | | |
|---|---|---|
| 02:58:10 | 1 | appreciate that. |
| 02:58:11 | 2 | Just two very quick points.  First, with respect |
| 02:58:14 | 3 | to the last point that Mr. Antonelli made about the summary |
| 02:58:17 | 4 | judgment, I'd like to note that Defendants in that case |
| 02:58:19 | 5 | could not rebut Mr. Antonelli's experts because in that |
| 02:58:23 | 6 | case, the Defendant expert reports were stricken. |
| 02:58:26 | 7 | And then the second just closing point that I |
| 02:58:28 | 8 | would like to make is with respect to Mr. Antonelli's |
| 02:58:31 | 9 | statements about Claim Element 7[a].  Again, I think he's |
| 02:58:37 | 10 | conflating these two elements.  I think the plain language |
| 02:58:39 | 11 | of the claim supports Defendants' position, and I also |
| 02:58:42 | 12 | think that Column 10 of the specification with the mystery |
| 02:58:45 | 13 | shopper example clearly supports Defendants' position. |
| 02:58:47 | 14 | So there is no support within the patent itself |
| 02:58:51 | 15 | for Mr. Antonelli's allegation with respect to that |
| 02:58:56 | 16 | language in the claim. |
| 02:58:56 | 17 | Thank you, Your Honor. |
| 02:58:57 | 18 | THE COURT:  Thank you, Ms. Deer. |
| 02:58:58 | 19 | Okay.  Next motion? |
| 02:59:03 | 20 | Mr. Hutchins? |
| 02:59:06 | 21 | MR. HUTCHINS:  Yes, Your Honor.  And I represent |
| 02:59:11 | 22 | the Aldi and Sprouts Defendants, and our motion was based |
| 02:59:16 | 23 | on Iqbal and Twombly.  And so the dispute between the |
| 02:59:18 | 24 | parties is simply whether the complaint sets forth facts to |
| 02:59:22 | 25 | plausibly support the claim of infringement. |

02:59:24    1          Now, with respect to direct infringement, the

02:59:31    2   Plaintiff points to Paragraph 11 of its complaint, and

02:59:34    3   I'm -- when I say complaint, I'm referring to the Aldi and

02:59:37    4   Sprouts complaints which are virtually identical.  Aside

02:59:42    5   from changing the names, I believe that of the other maybe

02:59:46    6   dozens of Defendants also have Defendant-agnostic

02:59:51    7   complaints.

02:59:51    8          But for our purposes here today, when I refer to

02:59:55    9   the complaint, I'll be referring to the paragraphs in the

02:59:58   10   Aldi and Sprouts complaints, which, again, are identical

03:00:03   11   other than the names, for our purposes here today.

03:00:05   12          Now, the issue, Your Honor, is simple, and we

03:00:09   13   submit with respect to direct infringement, this is not

03:00:12   14   even a close call, is that Paragraph 11 does not set forth

03:00:19   15   facts that could even possibly address the plausibility of

03:00:23   16   whether the claim is met because the statement in Paragraph

03:00:26   17   11 is divorced from what Claim 7 says.  This is reminiscent

03:00:32   18   of what you heard earlier today about there being a

03:00:35   19   disconnect or an untethering between the pleadings and the

03:00:39   20   claim.

03:00:39   21          You've seen Claim 7 earlier here today.  I won't

03:00:43   22   repeat it.  Suffice it to say there's these six elements

03:00:47   23   that require various specific things.  You've got a

03:00:50   24   questionnaire that's designed that has branching logic that

03:00:54   25   requests a location.  You have the questionnaire being

03:00:58    1  automatically transferred to a loosely networked computer

03:01:03    2  that has an integral GPS.  Then you've got the transferred

03:01:10    3  questionnaire being executed on the loosely networked

03:01:13    4  computer.  You've got then the GPS being used to

03:01:16    5  automatically provide location information as a response to

03:01:18    6  the questionnaire.  The responses have to be collected in

03:01:25    7  realtime, and then the responses are automatically

03:01:27    8  transferred to a central computer.  And finally, the

03:01:30    9  transferred responses are made available via the Internet.

03:01:33   10        Now, in contrast to those -- I paraphrase, but in

03:01:36   11  contrast to those general requirements of Claim 7,

03:01:39   12  Paragraph 11 simply states that the Defendants' mobile app,

03:01:44   13  in conjunction with servers, quote, create and execute a

03:01:50   14  location-specific questionnaire to collect responses from

03:01:53   15  users, close quote.

03:01:55   16        That is the language that the Plaintiffs cite in

03:01:58   17  their response to our motion, I believe, on Page 3 as

03:02:02   18  providing plausible support for the claim of infringement,

03:02:05   19  but that couldn't possibly be the case, Your Honor, simply

03:02:09   20  because what I read to you from Paragraph 11 does not

03:02:12   21  mention GPS, loose networks.  And here I'm talking about

03:02:16   22  how it does not mention the accused products having these

03:02:20   23  features, allegedly.  It doesn't mention loose networks,

03:02:24   24  automatic transfer of the questionnaire, automatic transfer

03:02:26   25  of the responses, or responses being made available over

03:02:29    1    the Internet.

03:02:30    2       So there are no facts that make it plausible that

03:02:35    3    the accused products could possibly meet these required

03:02:38    4    elements, and that simply is why the complaint fails under

03:02:42    5    Iqbal and Twombly.

03:02:42    6       Now, in the response, Plaintiff has suggested that

03:02:49    7    we were arguing that their infringement contentions must be

03:02:53    8    included in the complaint.  Well, we did not argue that.

03:02:57    9    We don't dispute there are various ways a Plaintiff could

03:03:01    10    meet the standards of Iqbal and Twombly.  You wouldn't

03:03:05    11    necessarily need a claim chart such as you would include in

03:03:08    12    an infringement contention, although many Plaintiffs do use

03:03:11    13    such a chart to meet the pleading standard.

03:03:13    14       But the complaint doesn't fail because it didn't

03:03:16    15    include the infringement contentions.  The complaint fails

03:03:19    16    because Paragraph 11 fundamentally fails to allege the

03:03:23    17    facts that would be needed for there to be a plausible

03:03:26    18    claim of infringement with respect to Claim 7.

03:03:29    19       Now, that's important because without direct

03:03:35    20    infringement, by definition, there can be no indirect

03:03:39    21    infringement, namely, inducement of infringement or

03:03:41    22    contributory infringement, by definition, nor could there

03:03:45    23    be willful infringement.  So this is a very fundamental

03:03:49    24    issue with respect to Paragraph 11 and the disconnect that

03:03:52    25    I submit is present with respect to Claim 7.

03:03:57   1       But I have a couple of additional points, and I'll

03:03:59   2   be brief, that I want to make with respect to the indirect

03:04:02   3   claims and the willfulness claims.

03:04:07   4       Now, we're all familiar with the general principle

03:04:11   5   that when you're viewing the sufficiency of a complaint,

03:04:13   6   you strip out the statements that are bare conclusions or

03:04:16   7   simply recite the elements of a claim.  And I raise this

03:04:20   8   with respect to indirect infringement because I think

03:04:22   9   that's what happened here.

03:04:23  10       I believe it's particularly apparent with respect

03:04:26  11   to contributory infringement.  The contributory

03:04:31  12   infringement allegation in the complaint is in Paragraph

03:04:34  13   17.  That paragraph simply gives a bare recital of the

03:04:40  14   elements of what contributory infringement would be without

03:04:43  15   any factual underpinnings or support.

03:04:47  16       So, for instance, Paragraph 17 states, quote, the

03:04:52  17   accused products have special features that are specially

03:04:56  18   designed to be used in an infringing way and that have no

03:05:00  19   substantial uses other than ones that infringe Claim 7 of

03:05:05  20   the '748 patent, close quote.

03:05:07  21       Now, first, I'll note that these problems with the

03:05:11  22   complaint compound upon each other because as I just got

03:05:15  23   done explaining, there's no discussion in the complaint of

03:05:18  24   any factual statements regarding what uses of the accused

03:05:23  25   products could or couldn't infringe because there's no

03:05:25    1    discussion of the fundamental features of the claim.

03:05:28    2         But here, there's a reference to there being

03:05:31    3    special features specially designed in the accused

03:05:35    4    products.  What's missing is any factual statement of what

03:05:38    5    those special features are.  By definition, we submit this

03:05:44    6    is the prototypical example of simply stating the elements

03:05:47    7    without requiring any factual underpinnings.

03:05:50    8         And in this regard, I'll note that this

03:05:54    9    distinguishes this case, for instance, from some of the

03:05:57   10    complaints that are cited by Plaintiffs in their motion,

03:06:00   11    such as the Motiva case.

03:06:01   12         In the Motiva opinion, the Judge went out of his

03:06:04   13    way to point out that the specific features that were --

03:06:09   14    the same language appeared in Motiva, but the special

03:06:12   15    features were defined -- were explained.  Any such

03:06:15   16    explanation is absent here, and that's why I suggest

03:06:18   17    that -- that these are bare recitals of the elements

03:06:21   18    without proper factual underpinning is particularly

03:06:25   19    apparent with respect to contributory infringement.

03:06:28   20         Now, with respect to inducement of infringement,

03:06:32   21    which is the other type of indirect infringement, there's

03:06:36   22    an allegation that the -- that the Defendants, excuse me,

03:06:41   23    have advertising or otherwise make statements to customers

03:06:46   24    to use the product in an infringing matter -- manner.

03:06:49   25         There's no reference of any particular

03:06:54   1   advertisements or statements or instructions.  It simply

03:06:57   2   says you instruct your users to infringe.  And in this

03:07:03   3   regard, I believe the Stragent case, which Your Honor

03:07:10   4   decided several years ago, with respect to the -- whether

03:07:14   5   an indirect infringement claim, and particularly an

03:07:17   6   inducement claim, is sufficient is pertinent.

03:07:22   7        And in that case, the Court held that the

03:07:23   8   complaint was not sufficient.  And one of the reasons it

03:07:28   9   was not sufficient was because with respect to inducement

03:07:30   10  of infringement, based on this concept of there being

03:07:34   11  instructions, some unstated or unknown instructions to

03:07:39   12  infringe, the Court held that the complaint has to allege,

03:07:45   13  quote, how the instructions direct customers to use these

03:07:49   14  products in an infringing manner.

03:07:53   15       And that concept of how the instructions direct

03:07:57   16  customers to use those products in an infringing manner,

03:07:59   17  and that's on Page -- *9 of the Stragent opinion -- is

03:08:07   18  entirely absent, we submit, from the inducement paragraph

03:08:10   19  of the complaint, which is Paragraph 16.

03:08:13   20       Now, I'll turn very briefly to willful

03:08:22   21  infringement, and this also has some pertinence to indirect

03:08:26   22  infringement.  In this case, there is not an allegation

03:08:28   23  that the Defendants were aware of the complaint before the

03:08:30   24  complaint was filed.

03:08:33   25       So there's no allegation that there were

03:08:35    1    discussions about the patent in advance and we -- the

03:08:38    2    Defendants knew about the patent and acted despite their

03:08:41    3    knowledge of the patent.

03:08:42    4        Rather, what is being pointed to by the Plaintiffs

03:08:47    5    is a willful blindness theory, namely, there's an

03:08:52    6    allegation that the Defendants were willfully blind to the

03:08:56    7    patent and that in part undergirds the indirect

03:09:03    8    infringement claims and it certainly undergirds the willful

03:09:06    9    infringement claim.

03:09:06   10        The key languages in Paragraph 19 of the

03:09:13   11    complaint, and the entirety of Paragraph 19 is, quote, on

03:09:18   12    information and belief, Defendant has a policy or practice

03:09:23   13    of not reviewing the patents of others, including

03:09:27   14    instructing its employees to not review the patents of

03:09:29   15    others, and thus has been willfully blind of Fall Line's

03:09:34   16    patents.

03:09:34   17        And this language appears, I believe, in literally

03:09:40   18    dozens -- verbatim -- in dozens of the complaints that

03:09:46   19    Plaintiff has brought, namely, every Defendant purportedly

03:09:52   20    instructs its employees to not review the patents of others

03:09:55   21    on information and belief.

03:09:57   22        And let me pause a moment on information and

03:09:59   23    belief because there's an important -- half of information

03:10:01   24    and belief is information.  When you make a statement on

03:10:07   25    information and belief, we submit that you have to have

03:10:12    1    some information to inform the belief.  Otherwise, it would

03:10:17    2    simply be upon belief.

03:10:20    3         But it's upon information and belief.  And what we

03:10:24    4    submit is happening here is that there is no information

03:10:27    5    provided that could possibly inform a belief that the

03:10:32    6    Defendants, never mind coincidently all of the dozens of

03:10:39    7    Defendants that have been sued by Fall Line, has a policy

03:10:42    8    of not reviewing the patents of others, including

03:10:46    9    instructing its employees to not review the patents of

03:10:49    10   others.

03:10:49    11        Now, many of the cases cited by both sides in

03:10:50    12   these motions point out that plausibility is contextual.

03:10:53    13   It depends on the context of the whole case.  And that

03:10:57    14   courts are encouraged to use their common sense.

03:11:01    15        Now, I am aware that language like this has been

03:11:04    16   held to be sufficient -- for instance, against a large

03:11:08    17   consumer electronics company, Sony, in the Motiva case.

03:11:13    18        Now, Aldi and Sprouts are grocery stores.  And I

03:11:17    19   submit that it pushes the limit too far to simply cut and

03:11:23    20   paste this sentence in for which the -- the information

03:11:27    21   that forms the belief is not stated and simply say that the

03:11:31    22   Defendant has a policy or practice of instructing its

03:11:34    23   employees to not review patents for grocery stores and have

03:11:40    24   that be considered plausible.

03:11:41    25        If the Court applies its common sense and if the

54

03:11:44  1  Court considers this in context, I think it should be a

03:11:48  2  signal that these complaints and allegations like this

03:11:52  3  should not be Defendant-agnostic.  It should matter who

03:11:59  4  your Defendant is when you're alleging things that

03:12:02  5  Defendant specifically was supposed to have done.

03:12:05  6      And here, it doesn't.  And so for that reason,

03:12:08  7  Your Honor, we respectfully submit that the statement in

03:12:11  8  Paragraph 19, rather than being a sufficient factual

03:12:15  9  statement of willful blindness, is instead an unsupported

03:12:20  10  recitation of an element without factual support, similar

03:12:25  11  to the way the allegation with respect to contributory

03:12:28  12  infringement simply recites the elements of contributory

03:12:32  13  infringement but puts no factual meat on the bone.

03:12:35  14      With that, Your Honor, I'll yield to my brother or

03:12:38  15  sister counsel, or if you have any questions.

03:12:39  16      THE COURT:  The only question I've got is on the

03:12:41  17  willful blindness issue.  What would you say the very best

03:12:44  18  case for Aldi and Sprouts would be?

03:12:50  19      MR. HUTCHINS:  Well, so I don't have a case that

03:12:54  20  says that that language is insufficient because that

03:12:58  21  language was copied from the Motiva complaint.

03:13:01  22      Now, I will note that with respect to statements

03:13:06  23  on information and belief, there are examples of courts

03:13:09  24  that have looked behind what -- looked behind that

03:13:13  25  statement to see if it has any factual support.

03:13:17    1          So in a slightly different context, for instance,

03:13:22    2    in the Nu-Look -- I think it was the Nu-Look case that we

03:13:28    3    cite -- Nu-You -- excuse me, Nu-You Technologies case we

03:13:29    4    cite.  That was out of the Northern District of Texas.  In

03:13:31    5    that case, when the Court was considering the sufficiency

03:13:34    6    of the indirect infringement and the direct infringement

03:13:39    7    allegations, it considered various statements that were

03:13:42    8    made upon -- factual-type statements made upon information

03:13:48    9    and belief.

03:13:48   10          But there, the Court looked to see whether the

03:13:51   11    information was provided and whether it actually could

03:13:55   12    plausibly support the belief.  And there, in certain

03:13:59   13    instances, it said no, which was -- which if that type of

03:14:03   14    analysis is applied to this language here, particularly in

03:14:09   15    the context of this case now that we're talking about these

03:14:12   16    various complaints being made and my client's particular

03:14:18   17    instant about grocery stores and you're considering the

03:14:22   18    plausibility in that context, I would cite to that as a

03:14:26   19    counterpoint to a different approach where the Court simply

03:14:29   20    looks at the statement and says upon information and

03:14:31   21    belief, it seems like a factual statement, my analysis

03:14:34   22    stops there because that's a properly pled fact.

03:14:36   23          If Your Honor were to take that approach, then,

03:14:39   24    yes, by definition, this would be a properly pled fact.  We

03:14:42   25    simply suggest that that's not the approach you should take

03:14:45    1  when you're looking at the broader context of this case and

03:14:48    2  how plausible or not this allegation is.

03:14:52    3            THE COURT:  Thank you, Mr. Hutchins.

03:14:55    4            MR. HUTCHINS:  Thank you.

03:15:00    5            MR. FINDLAY:  Your Honor, very briefly for Advance

03:15:04    6  Auto and Advance Stores.

03:15:05    7            To answer your question, I would point the Court

03:15:08    8  to the Dialect versus Bank of America case.  It's

03:15:13    9  2:24-CV-207 decided just back in December of '24 by, I

03:15:17   10  believe, Judge Gilstrap, who was the same author as the

03:15:20   11  Motiva case.  But I would argue in that case, he granted

03:15:23   12  the dismissal of the blind willfulness allegations.  And I

03:15:27   13  would submit that if you read that case, Judge, they had a

03:15:30   14  lot more factual bases for their claims than what appears

03:15:33   15  in Paragraph 19.

03:15:35   16            And as Mr. Hutchins said so eloquently and

03:15:38   17  correctly, the paragraphs they were talking about,

03:15:42   18  specifically Paragraphs 11, 17, 19, are identical amongst

03:15:47   19  the complaints.  They're Defendant-agnostic, as I think

03:15:51   20  Mr. Hutchins said.

03:15:52   21            So unless the Court has anything else, I'll rely

03:15:56   22  on his argument, and I'll turn it over to --

03:16:00   23            THE COURT:  Thank you, Mr. Findlay.

03:16:02   24            Okay.  All right.  Ms. Price?

03:16:16   25            MS. PRICE:  Good afternoon.  I am going to address

03:16:19  1  these issues in a little bit of a different order --

03:16:22  2        THE COURT:  That's fine.

03:16:22  3        MS. PRICE:  -- than counsel.  I'm going based on

03:16:27  4  the briefing.  So --

03:16:27  5        THE COURT:  That's fine.

03:16:28  6        MS. PRICE:  -- forgive me for that.

03:16:29  7        First, I'm going to discuss the direct

03:16:32  8  infringement arguments.

03:16:34  9        Defendants argue, which was reiterated here today,

03:16:37  10 that Fall Line -- Fall Line's complaint is not sufficient

03:16:44  11 because it does not include factual information for every

03:16:47  12 single element of Claim 7, similar to a claim chart.

03:16:53  13       However, in Opticurrent versus Power Integrations,

03:17:02  14 which Aldi and Sprouts cite, Judge Gilstrap reminds us that

03:17:06  15 Rule 8 simply requires a short and plain statement of the

03:17:10  16 claim showing that the pleader is entitled to relief.

03:17:13  17 Indeed, the local patent rules requiring infringement

03:17:15  18 contentions would be superfluous if the federal rules

03:17:18  19 required such an exhaustive pleading.

03:17:19  20       And in that case, Judge Gilstrap found that

03:17:24  21 Opticurrent's complaint was sufficient because, one, it

03:17:28  22 identified the asserted patent claim; two, described the

03:17:33  23 technology covered by the patent; three, identified the

03:17:36  24 infringing activity; four, identified the accused product;

03:17:40  25 and, five, identified how the accused product infringes.

03:17:43  1          In that complaint, we have Paragraph 13, which

03:17:50  2   shows the description of the technology covered by the

03:17:53  3   patent in the Opticurrent complaint, namely, transistor

03:17:57  4   switches used in semiconductor devices.

03:18:00  5          And below that in Paragraph 15, we have how the

03:18:04  6   accused product infringes.  The highlighting there is

03:18:07  7   basically parroting of the claim language, but what the

03:18:11  8   complaint adds is this key advantage of a lower amount of

03:18:20  9   currently goods (sic) between the second and third

03:18:21  10  terminal.

03:18:22  11         Comparing the Fall Line and Opticurrent

03:18:25  12  complaints, as you can see, Fall Line included a much more

03:18:27  13  fulsome description of the technology.  For example, that

03:18:32  14  it teaches a method -- a method, excuse me, for managing

03:18:36  15  and collecting data from a remote computing device, the

03:18:39  16  need to collect location-specific information, et cetera.

03:18:42  17         And, again, the Opticurrent complaint describes

03:18:46  18  this technology as the transistor switches used in

03:18:51  19  semiconductor devices and, again, discusses this minimal

03:18:56  20  leakage advantage.

03:18:56  21         Another example of this is Fall Line's complaint

03:19:02  22  is at least as detailed, if not more than Opticurrent's, on

03:19:08  23  how the accused product infringes.  Again, with

03:19:11  24  Opticurrent's complaint, I have the claim language -- the

03:19:14  25  parroted claim language highlighted and the addition of the

03:19:18    1    key advantage.

03:19:20    2            In contrast, I have as an example the Advance Auto

03:19:26    3    Parts complaint where Fall Line accuses that the Advance

03:19:31    4    Auto Parts's mobile app, working with its servers, not only

03:19:35    5    creates but also executes a location-specific questionnaire

03:19:39    6    and collects those responses from those -- the

03:19:41    7    questionnaire from its users.

03:19:44    8            In spite of this, all the Defendants argue that

03:19:53    9    they are unaware really of what the accused product is.

03:19:56   10    Aldi and Sprouts's motions, they'll say something being

03:19:59   11    referred to as the Aldi mobile app or the Sprouts mobile

03:20:03   12    app.  And similarly, Advance Auto talks about it doesn't

03:20:09   13    know what Fall Line means by its servers, its

03:20:12   14    questionnaires, or user responses as if it's unaware of how

03:20:18   15    its app works.

03:20:18   16            So looking at a simple Google search, it is not

03:20:23   17    like these parties have tons of mobile apps out there.  If

03:20:27   18    you google, for example, Aldi -- the Aldi mobile app, three

03:20:33   19    things come up.  You have the Aldi website, which links to

03:20:36   20    this page that promotes the Aldi app, and then you have the

03:20:43   21    Google Play and Apple App stores.

03:20:46   22            So moving to the indirect and willful infringement

03:20:56   23    arguments, the Defendants argue that Fall Line has not

03:21:00   24    adequately pleaded factual allegations for specific intent

03:21:03   25    and knowledge of the indirect and willful infringement

03:21:08    1    arguments.

03:21:08    2         But as Defendants note, Fall Line did argue this

03:21:16    3    policy or practice of not reviewing the patents of others

03:21:19    4    and instructing its employees to not review the patents of

03:21:22    5    others in its willful blindness allegations.

03:21:25    6         And I'd like to touch here on Defendants' counsel

03:21:31    7    saying that this is just mere belief, but we're not talking

03:21:35    8    about these, quote, grocery stores as a whole.  We're

03:21:39    9    talking about them specifically in the context of the

03:21:43   10    technology being accused.  They have IT people, they have

03:21:48   11    specific technology employees within this company, and as

03:21:54   12    the Lemley article that, excuse me, Fall Line cited

03:21:59   13    suggests that everyone does this, the willful blindness of

03:22:10   14    the patents of others in order to escape this knowledge

03:22:14   15    requirement.

03:22:14   16         Moving on to the Motiva and Sony -- excuse me,

03:22:22   17    Motiva versus Sony supports Fall Line that it has

03:22:27   18    sufficiently pleaded knowledge.  There, Judge Gilstrap

03:22:32   19    stated either factual allegation, the existence of the

03:22:35   20    policy or its implementation in the form of specific acts

03:22:40   21    of willful blind conduct, is sufficient to state a claim at

03:22:45   22    the pleading stage.

03:22:46   23         And as Defendant concedes, Fall Line's allegations

03:22:50   24    are identical to those allegations in Motiva.

03:22:56   25         I'd also like to touch on this Dialect case that

03:23:00    1    was brought up.  The pre-suit knowledge that was alleged in

03:23:04    2    Dialect is completely different from the knowledge of

03:23:07    3    willful blindness here.

03:23:09    4         In Dialect, the pre-suit knowledge was based on

03:23:11    5    this presentation from a third party of a

03:23:16    6    predecessor-in-interest to the patents and just is -- has

03:23:20    7    nothing to do with this willfully blind policy that Fall

03:23:23    8    Line has alleged here.

03:23:23    9         And moving on to the contributory infringement

03:23:29   10    argument that is just specific to the Aldi and Sprouts

03:23:34   11    motions, there, they argue that Fall Line did not identify

03:23:39   12    this special feature in their complaint.  However, as Fall

03:23:45   13    Line noted in its opposition, it has sufficiently pleaded

03:23:51   14    contributory infringement.

03:23:52   15         As Defendants' counsel conceded, we have our

03:23:55   16    Paragraph 17 discussing the accused products having special

03:23:58   17    features that are specifically designed to be used in an

03:24:01   18    infringing way and have no substantial uses other than

03:24:05   19    those that infringe.

03:24:08   20         In addition, it's clear that Fall Line is

03:24:09   21    referring to this special feature of creating and executing

03:24:13   22    a location-specific questionnaire to collect responses from

03:24:16   23    users.  That was referred to in Paragraph 17.

03:24:28   24         Your Honor, if the Court finds that Fall Line's

03:24:31   25    claims are not adequately pleaded, Fall Line requests leave

03:24:35    1    to amend its complaint to address any deficiencies the

03:24:37    2    Court finds, or, at minimum, incorporate its infringement

03:24:39    3    contentions by reference.

03:24:40    4              Do you have any questions?

03:24:42    5              THE COURT:  I don't.  Thank you.

03:24:44    6              MS. PRICE:  Thank you, Your Honor.

03:24:45    7              THE COURT:  Thank you very much.

03:24:46    8              MR. HUTCHINS:  Very briefly, Your Honor.

03:24:51    9              With respect to the Opticurrent case, both parties

03:24:57   10    agree that it requires a factual statement of how the

03:25:03   11    accused product infringes, and that is exactly what we

03:25:06   12    submit is missing from Paragraph 11.

03:25:11   13              Counsel mentioned that you could possibly pull up

03:25:16   14    some links on the Internet that would show examples of what

03:25:21   15    the accused product might be.  When I hear that, that's

03:25:25   16    simply, to my ear, a statement of what could have been in

03:25:29   17    the complaint but wasn't.

03:25:30   18              And on the very last point that was made about

03:25:34   19    contributory infringement and how the special feature is a

03:25:41   20    callback to the description of Paragraph 11, that feature

03:25:47   21    cannot possibly be a special feature that can only infringe

03:25:53   22    because, as we discussed and as Your Honor has seen here

03:25:57   23    today, the statement in Paragraph 11 is not at all

03:26:04   24    consonant with Claim 7 and the features that it requires.

03:26:08   25              I don't have anything else, Your Honor, and I

03:26:11    1    don't know if my other counsel has anything they want to

03:26:14    2    add.

03:26:14    3            THE COURT:  Mr. Findlay?

03:26:16    4            MR. FINDLAY:  Nothing further, Your Honor.

03:26:19    5            THE COURT:  Okay.  All right.

03:26:21    6            MR. HUTCHINS:  Thank you, Your Honor.

03:26:22    7            THE COURT:  Ms. Price, anything else?

03:26:24    8            MS. PRICE:  Thank you, Your Honor.

03:26:25    9            Just real quick on this Internet point that

03:26:28   10    counsel brought up.  The reason that Fall Line brought up

03:26:31   11    the Internet in general was because this feigned ignorance

03:26:37   12    of Defendants that it has no idea what could possibly be

03:26:41   13    referred to as the Aldi app or the Sprouts apps just does

03:26:44   14    not make sense to Fall Line.

03:26:46   15            It's clear that there are not hundreds of apps

03:26:50   16    that these companies have.  Again, a clear google search

03:26:53   17    makes it clear to the public what Fall Line is referring to

03:26:58   18    as the Aldi app, the Sprouts app, or the Advance Auto app.

03:27:06   19            THE COURT:  Okay.  Thank you.

03:27:07   20            Anything else?

03:27:08   21            MR. HUTCHINS:  No, Your Honor.

03:27:09   22            THE COURT:  All right.  Good.  So I think that

03:27:10   23    covers everything, and you all have time remaining on the

03:27:13   24    clock.  So it's all to the good.

03:27:15   25            We've got -- I said this morning at a similar

03:27:23    1    hearing -- some of you were here for that -- that we've got

03:27:27    2    a busy several weeks ahead of us, a couple of trials that

03:27:32    3    are set.  And so that will be somewhat distracting to us.

03:27:39    4    But I'll look forward to getting an order out on these

03:27:41    5    motions just as quickly as possible.

03:27:43    6            Is there anything else we need to discuss today

03:27:45    7    before we adjourn?

03:27:47    8            MR. ANTONELLI:  We have nothing further, Your

03:27:48    9    Honor.

03:27:48   10            THE COURT:  Anything?

03:27:49   11            MR. MUELLER:  Nothing.

03:27:50   12            THE COURT:  Okay.  All right.  Excellent

03:27:51   13    presentations by everyone today.  Thank you very much.

03:27:54   14            And we'll hope to get an order out as quickly as

03:27:59   15    possible.  Safe travels to everybody.

03:28:02   16            COURT SECURITY OFFICER:  All rise.

03:28:02   17            (Hearing concluded 3:28 p.m.)

           18

           19

           20

           21

           22

           23

           24

           25

1                           CERTIFICATION

2

3           I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9     /S/ Shelly Holmes                    5/12/2025
     SHELLY HOLMES, CSR, TCRR              Date
10   CERTIFIED SHORTHAND REPORTER
     State of Texas No.: 7804
11   Expiration Date: 10/31/2025

12

13

14

15

16

17

18

19

20

21

22

23

24

25