# EXHIBIT 1

Case 4:25-cv-00137-SEH-MTS   Document 51-1 Filed in USDC ND/OK on 08/01/25   Page 1 of 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| FALL LINE PATENTS, LLC, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> BEST BUY CO., INC. ET AL., § <br> § <br> Defendants. § | CIVIL ACTION NO. 5:24-CV-00174-RWS <br> *MEMBER CASE* |

## ORDER

Before the Court is Defendants BestBuy.com LLC and Best Buy Texas.com LLC's (collectively, "BestBuy") Motion to Dismiss. Docket No. 21. The motion is fully briefed. Docket Nos. 26, 27, 28. On May 7, 2025, the Court heard argument on this matter alongside others in this consolidated action. Docket No. 30; *see* No. 5:24-cv-167, Docket Nos. 121, 132. For the reasons set forth below, the motion (Docket No. 21) is **DENIED**.

## BACKGROUND

In November of 2024, Plaintiff Fall Line Patents, LLC filed nearly identical patent infringement actions against 14 sets of defendants regarding their mobile applications. *See* Case Nos. 5:24-cv-167, 169–70, 172–82. Best Buy filed its motion to dismiss on the grounds that the asserted patent is subject-matter ineligible under 35 U.S.C. § 101 on February 6, 2025. Docket No. 21. The Court consolidated the fourteen separate actions into No. 5:24-cv-167 case on February 12, 2025. Docket No. 25. The consolidation order did not impact already pending motions such as Best Buy's motion to dismiss. *Id.* at 4.

This action is, in fact, part of the sixth set of cases about Plaintiff's asserted U.S. Patent No. 9,454,748 ("the '748 Patent"). *See* Nos. (1) 6:17-cv-202–04; (2) 6:17-cv-407; (3) 6:18-cv-406,

415; 5:23-cv-110; and (5) 5:24-cv-89. In one prior case, the Court ruled in favor of Plaintiff on the issue of subject-matter eligibility at both the pleading stage and at summary judgment. Order at 8, *Fall Line Patents, LLC v. Zoe's Kitchen, Inc., et al.*, No. 6:18-CV-407-RWS (E.D. Tex. May 25, 2021), ECF No. 151; Order at 42–44, *Fall Line Patents, LLC v. Zoe's Kitchen, Inc., et al.*, No. 6:18-CV-407-RWS (E.D. Tex. July 7, 2023), ECF No. 336-1.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, Plaintiff must plead facts sufficient to allow the Court to draw a "reasonable inference" that Defendants are liable for the alleged patent infringement. *See id.* (citing *Twombly*, 550 U.S. at 556). All well-pleaded facts are accepted as true and viewed in the light most favorable to the Plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

The Supreme Court has established a two-part test for patent eligibility. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). First, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. Claims directed to software inventions do not automatically satisfy this first step of the inquiry. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Rather, "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on [a] specific asserted improvement in computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36.

Second, if the claims are directed to an abstract idea, the Court then determines whether the claimed invention includes an inventive concept sufficient to transform the abstract idea into a

patent-eligible application." *Alice*, 573 U.S. at 221. An inventive concept is one that is "sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). The Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78–79 (2012)). Put another way, "the second step of the *Alice/Mayo* test is satisfied when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (internal quotations omitted). Even if each individual claim element was known in the art, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

## DISCUSSION

The parties agree that the asserted claim is directed at an abstract idea, but dispute whether the claim survives *Alice* Step Two. Docket No. 26 (challenging Best Buy's motion on *Alice* Step Two only). At the pleading stage in *Fall Line v. Zoe's Kitchen*, the Court found that the same claim asserted here was "directed to the abstract idea of sending a questionnaire, collecting responses that include location information and making those responses available over the Internet." Order at 5, *Fall Line Patents, LLC v. Zoe's Kitchen, Inc., et al.*, No. 6:18-CV-407-RWS (E.D. Tex. May 25, 2021), ECF No. 151. The Court then found that the only asserted claim—claim 7—survived *Alice* Step Two as Plaintiff had adequately pled that it "recites more than a well-understood, routine, conventional activity." *Id.* at 7. In that prior case, Plaintiff alleged that it was

unconventional to: "(1) use an integrated GPS unit to automate the collection and use of location identifying information for purposes of customizing a questionnaire; and (2) to automatically collect location information for transmission to a server so that questions customized for that location could be generated and sent back to the handheld device." *Id.* at 6–7. The Court relied in part on Plaintiff's allegation that "the then-existing remote handheld computer technologies (primarily PDAs) were ill-equipped to collect information in the field because they mimicked the resources of desktop computers and suffered technical problems when dealing with 'intermittent' or 'loose' networks." *Id.* at 7–8.

## I. The *Beteiro* Decision

Best Buy argues that the Federal Circuit's recent decision in *Beteiro, LLC v. Draftkings Inc.*, 104 F.4th 1350 (Fed. Cir. 2024) suggests that the Court erred in its prior ruling on the asserted claim's validity. *See, e.g.*, Docket No. 21 at 13. Specifically, Best Buy contends that, in *Beteiro*, the Federal Circuit found that the integration of a GPS to perform an otherwise abstract idea was already "well-understood, routine, and conventional as a matter of law" in 2002. *Id.* at 13–14. Best Buy interprets the asserted claim's use of a GPS to be analogous to the GPS referenced in the *Beteiro* patent as both patents involve location-based customization. *Id.* at 13–16. However, Best Buy's reliance on *Beteiro* is misplaced.

At issue in *Beteiro* were patents about gaming and gambling activity via "a user communication device" that allowed a user to gamble at locations other than a gaming venue. 104 F.4th at 1353. The Federal Circuit agreed with the district court that the asserted claims were directed at the abstract idea of "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located." *Id.* at 1355.

Page 4 of 9

As for *Alice* Step Two, the Federal Circuit held that the specification taught that it was conventional to use GPS devices in a computer, and using such devices in a mobile phone would have been equally conventional in 2002—the priority date of the patent—because the specification failed to explain any "difference between how GPS would be equipped on a mobile phone and how it would be equipped on any of the other described conventional computers." *Id.* at 1357–59. Additionally, the Federal Circuit held that Beteiro's complaint failed to "raise a factual dispute as to whether use of GPS in connection with gaming was anything other than conventional, routine, and well-understood at the priority date of the patent." *Id.* at 1358. In particular, Beteiro alleged that " 'the use of geolocation and global positioning as an integral data point in the processing of mobile wagers was still many years away;' the 'sufficient[ly] sensitiv[e]' GL20000 GPS Chip— as well as the iPhone and app-store—had not yet been introduced; and 'the current industry leader in the space—GeoComply—did not even exist until 2011.' " *Id.* at 1358 (quoting Joint Appendix at 102, 106, *Beteiro, LLC v. DraftKings Inc.*, No. 22-2275 (Fed. Cir. Aug. 11, 2023), ECF No. 44). In its complaint, Beteiro did not set out in detail how the patented invention resulted in an improvement in the functioning of computers, but rather only alleged its invention overcame prior art deficiencies by "provid[ing] a means by which interested parties can access gambling services remotely, while preserving geographic restrictions on such access." *Id.* at 103. According to the Federal Circuit, these allegations were not sufficiently "specific and detailed" to preclude dismissal. *Beteiro*, 104 F.4th at 1359.

II.  **Plaintiff's Complaint**

   A.  **Plaintiff Alleges Inventive Concept**

Putting aside the fact that the motions before the Court concern a completely different abstract idea than was addressed in *Beteiro*, Plaintiff has pled with sufficient specificity and detail

Case 4:24-cv-00317-SH-MTS Document 51 Filed 08/01/25 Page 6 of 9 #:261
Case 2:24-cv-01374-JRM-STS Document 51-1 Filed 08/01/25 Page 6 of 9 PageID #: 261
Page 7 of 10

"why aspects of its claimed invention[] were not conventional" and why "the claimed combination improve[d] the functioning and operation of [ ] computer[s]" above and beyond the abstract idea embodied in the asserted claim. *Id.* (quoting *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019)); *Aatrix*, 882 F.3d at 1127–28. Here, as in *Fall Line v. Zoe's Kitchen* and *Aatrix*, Plaintiff's complaint alleges specific technical issues in the functioning of computers and explore how the asserted claim is unconventional.

Plaintiff first outlines the state of prior art in 2002 when the provisional application for the '748 Patent was filed, including various "compatibility issues" with "handheld computers," how "networks available to devices in the field ha[d] limited bandwidth," and how prior solutions such as "using i-code and tokens and layer . . . lacked optimization, and required a high level of programming skill to create." Docket No. 1 at ¶ 23. Plaintiff alleges that "prior to the inventions disclosed in the ['748] Patent, when the program running on the remote handheld computer needed changing, developers [had to] first make the change on a development system and then re-transfer the entire program to each target device." *Id.* at ¶ 25.

To solve some of these issues, the complaint alleges at least a combination of three elements: (1) the device-independent tokens; (2) the connection scheme approach; and (3) the integral GPS device. The inventions disclosed in the '748 Patent allegedly "used device-independent [] tokens and the creation of tokenized questionnaires." *Id.* at ¶ 26. The tokenized questionnaires could be "executed on a remote handheld computer without the need to recompile and reload a software package onto the handheld computer"—thus making it possible for "incremental changes [to be] made automatically" and "the questionnaire to be used on different types of devices without the need to create a custom program." *Id.* The inventions disclosed in the '748 Patent also allegedly involved a connection scheme approach, combined with the device-

independent tokens, that would "enable[] a reduction to the 'load on a communication channel of finite bandwidth.' " *Id.* at ¶ 27 (quoting '748 Patent at 4:36–39). Further, Plaintiff alleges that "the ['748] Patent teaches using an integral GPS device for *multiple purposes*, including causing location information to be automatically collected by the executing questionnaire, creating questionnaires that are customized for particular locations, and executing questionnaires when the remote computing devices is at certain locations." *Id.* at ¶ 28 (emphasis added).

Plaintiff sufficiently pleads that claim 7's combination of steps includes a transformative, inventive concept that results in the improvement of the functioning of computers above and beyond merely combining a GPS with a loosely networked computer. *Aatrix*, 882 F.3d at 1127–28; *see also Bascom*, 827 F.3d at 1350 (overturning an order granting a motion to dismiss and holding that the asserted claims were not invalid at *Alice* step two even though they merely embodied a combination of conventional components because "the claims may be read to 'improve[] an existing technological process' " (quoting *Alice*, 573 U.S. at 223)).

In comparison, Beteiro's complaint included only conclusory allegations that its invention "result[s] in improved functionality of the claimed systems and represent[s] technological improvements to the operation of computers." Joint Appendix at 102–03, *Beteiro, LLC v. DraftKings Inc.*, No. 22-2275 (Fed. Cir. Aug. 11, 2023), ECF No. 44; *see also id.* at 103 (describing the inventions as overcoming deficiencies in the state of the art by providing "a means by which interested parties can access gambling services remotely, while preserving geographic restrictions on such access"). Plaintiff's detailed complaint is more analogous to *Cellspin* and *Aatrix*, where the complaints identified several ways in which their inventions were unconventional and resulted in an improvement in computer function. *See Aatrix*, 882 F.3d at 1127–28 (alleging that "[p]rior art forms solutions allowed data to be extracted only from widely

available databases with published database schemas," and that "[t]he inventions of the Aatrix Patents allowed data to be imported from an end user application without needing to know proprietary database schemas and without having to custom program the form files to work with each outside application."); *Cellspin*, 927 F.3d at 1316 (alleging "that it was unconventional to separate the steps of capturing and publishing data so that each step would be performed by a different device linked via a wireless, paired connection"). Accordingly, the Court sees no reason to depart from its prior order, especially at the pleading stage.

### B. Plaintiff's Allegations are Tethered to Claims and Specification

Best Buy's arguments that some of the improvements alleged by Plaintiff are not "captured in the claims" are unpersuasive. Docket No. 12 at 18–21 (referencing improvements from the (1) device-independent tokens, (2) connection scheme "automated approach," and (3) integral GPS device) (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018)). Best Buy is wrong that the Court cannot look to the specification as to whether the claims are inventive. *See* Docket No. 12 at 14; *Cellspin*, 927 F.3d at 1317 (noting that allegations of inventiveness must not be "wholly divorced from the claims *or the specification*" and that "the specification need not expressly list all the reasons why [the claimed invention] is unconventional") (emphasis added); *see, e.g.*, *Beteiro*, 104 F.4th at 1358 (referencing the specifications in an *Alice* Step Two analysis).

Plaintiff has put forth plausible and specific factual allegations that aspects of the claims are inventive, and these allegations are not wholly divorced from the claims or the specification. The specific features challenged by Defendants are recited in the specification. *See, e.g.*, Docket No. 1 at ¶¶ 26 (citing the specification at 4:66–5:2, 5:21–32, for the "device-independent token" element), 27 (citing 4:36–39, 5:7–12 for "connection scheme automated approach" element), 28 (citing 5:33–48, 8:56–61, 10:55–65) for "integral GPS device" element). And the features are

sufficiently tethered to Claim 7. First, regarding the "connection scheme automated approach," because Claim 7 requires the designing of a questionnaire for a "particular location" and then requires the execution of said questionnaire when the "loosely networked computer is at said particular location," Plaintiff's allegations regarding the "automated approach" are plausible and not wholly divorced from Claim 7. *See* the '748 Patent at 14:45–58. Second, regarding device-independent tokens, the allegations in the complaint tie the function of such tokens to the questionnaires contemplated in Claim 7. *See* Docket No. 1 at ¶¶ 26, 27. Additionally, prior expert testimony cited by Plaintiff posits that Claim 7 recites a "tokenization scheme" that utilizes "machine-independent questionnaires." Docket No. 26-3 at ¶¶ 65, 141. This is further evidence that the instant dispute is better addressed at summary judgment, and not the pleading stage. Third, Defendants admit that the specification and claims disclose the "integral GPS device." *See, e.g.*, Docket No. 21 at 21 ("[T]he '748 Specification [] references the acronym 'GPS' twice").

## CONCLUSION

For the reasons set forth above, the motion (Docket No. 21) is **DENIED**.

**So ORDERED and SIGNED this 1st day of August, 2025.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE