# Exhibit 1

Case 4:25-cv-00137-SEH-MTS   Document 54-1 Filed in USDC ND/OK on 09/26/25   Page 1 of 5

2025 WL 2731321
Only the Westlaw citation is currently available.
United States Court of Appeals, Federal Circuit.

CASCADES BRANDING
INNOVATION LLC, Plaintiff-Appellant

v.

ALDI, INC., Defendant-Appellee

2024-1729
|
Decided: September 25, 2025

Appeal from the United States District Court for the Northern District of Illinois in No. 1:21-cv-06563, Judge Nancy L. Maldonado.

**Attorneys and Law Firms**

William W. Flachsbart, Dunlap Bennett & Ludwig PLLC, Chicago, IL, argued for plaintiff-appellant. Also represented by MARK MAGAS.

Robert L. Lee, Alston & Bird LLP, Atlanta, GA, argued for defendant-appellee.

Before Dyk, Linn, and Stark, Circuit Judges.

**Opinion**

Linn, Circuit Judge.

Cascades Branding Innovation LLC ("Cascades") appeals the dismissal with prejudice of its patent infringement suit against Aldi, Inc. under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *See Cascades Branding Innovation LLC v. Aldi, Inc.*, 728 F. Supp. 3d 917 (N.D. Ill. 2024) ("*Dismissal Op.*"). The district court held that all of the claims of Cascades' asserted patents—U.S. Patent Nos. 7,768,395 ("'395 patent"); 8,106,766 ("'766 patent"); and 8,405,504 ("'504 patent")—were invalid as patent-ineligible under 35 U.S.C. § 101. *Id.* at 921.

Because we write for the parties in this non-precedential opinion, we assume familiarity with the facts. We affirm.

**BACKGROUND**

The patents at issue were all filed in June 2007. For purposes of this appeal, the parties argue all claims of all asserted patents together, treating claim 1 of the '395 patent as representative. We do the same. That claim recites:

1. A method comprising:

(A) displaying, using a device, a first image associated with a first brand;

(B) receiving, from a user of the device, an indication of a selection by the user of the first image;

(C) identifying a first location of the device independently of any location-specifying input provided by the user to the device;

(D) identifying a first brand access site at which a first branded entity having the first brand is accessible; and

(E) providing to the user, using the device, a first map image which describes a first geographic area derived from the first location of the device and which includes a first indication of the first brand access site, wherein the first indication of the first brand access site comprises a second image associated with the first brand, located at a position in the first map image corresponding to the first brand access site.

'395 patent at claim 1.

Broadly summarizing the claims, the district court explained that the user of an electronic device is presented with images associated with different brands, the user selects a particular brand, the device identifies the brand's locations with no further inputs and displays a map of the surrounding area with nearby "brand access sites" where the brand's products may be purchased. *Dismissal Op.*, 728 F. Supp. 3d at 922–23.

Cascades accused Aldi's proprietary mobile application ("app") of infringement. That app allows users to select the Aldi logo to open the app, which then

shows the location of nearby Aldi supermarkets based on the user's GPS location.

Applying *Alice* step 1, the district court held that the claims were "directed at the abstract idea of collecting geographic information about the location of a device and nearby stores or businesses offering certain products, and displaying that information to the user." *Id.* at 928. The district court explained that the claims "merely use functional language to describe the desired result, without any technological details about how that result is implemented or that improves on existing computer technology." *Id.* at 929; see *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). At *Alice* step 2, the district court held that the claims lack an inventive concept because the limitations are all described "in highly generic functional terms," the patents "do not include any technical details about how these steps are to be implemented," and there is no suggestion of unconventional or new computer technology required. *Dismissal Op.*, 728 F. Supp. 3d at 930–31.

As a result, the district court determined that the claims were patent ineligible and dismissed the infringement case for failure to state a claim. *Id.* at 934. The district court denied Cascades leave to amend, concluding that no amendments to the complaint could cure the eligibility issue "as a matter of law," and therefore issued the dismissal with prejudice. *Id.* at 934–35.

Cascades argues that the district court erred in both steps and abused its discretion in issuing the dismissal with prejudice.

DISCUSSION

I

We review motions to dismiss under the law of the regional circuit. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). The Seventh Circuit reviews the grant of a 12(b)(6) motion *de novo*, assuming "all well-pleaded allegations are true and draw[ing] all reasonable inferences in the light most favorable to the plaintiff." *Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). The Seventh Circuit generally reviews the denial of leave to amend for abuse of discretion. *Runnion v. Girl Scouts of Greater Chicago & NW Indiana*, 786 F.3d 510, 524 (7th Cir. 2015). "But when the basis for denial is futility, we apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim. Accordingly, our review for abuse of discretion of futility-based denials includes *de novo* review of the legal basis for the futility." *Id.* (citations omitted).

We review the ultimate determination of patent eligibility under 35 U.S.C. § 101 under Federal Circuit law *de novo*. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

II

Cascades argues that the district court too broadly characterized the claims under *Alice* Step 1 and ignored that the claims cover an improvement over conventional mapping devices. Cascades contends this improvement is achieved by allowing users to "select a particular brand identifying image" and display "a map image indicating a current location of the device and showing the locations of any one or more brand access sites for the selected brand that are located in proximity to the user" without the user providing location-specifying information. Cascades Opening Br. at 19–20. According to Cascades, this is an improvement because it allows users to find brand locations "more quickly and easily." *Id.* at 24; '395 patent col. 1 ll. 59–62.

Aldi responds that the district court correctly characterized the claims, which simply require basic functional steps without claiming *how* any of those steps are accomplished, and which may all be performed, according to the specification, using generic prior art components like a GPS and touch screen monitor.

We see no error in the district court's characterization or its determination that the claims are directed to an abstract idea. The only aspect of the claims Cascades argues is missing from the district court's characterization is that the user selects the brand to be located via an icon or picture rather than requiring the user to write out the brand in text form

—what Cascades says is an improvement in mapping functionality. Cascades Opening Br. at 19; Cascades Reply Br. at 5; '395 patent col. 3 ll. 33–47 (noting that the invention is "directed to a device that enables a user to ... select a particular brand identifying image"). As the district court correctly held, however, the claims do not describe any technological details about how that result is implemented. We thus see no error in the district court's characterization of the claims as directed to collecting geographic information about the location of a device and nearby stores or businesses offering certain products, and displaying that information to the user, rather than a technological improvement in mapping functionality.

We generally hold claims directed to nothing more than collecting, analyzing, and displaying information, even when limited to a particular field of endeavor, to be abstract. See *Elec. Pwr. Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016). The claims in *Electric Power*, for example, tracked real-time changes to an interconnected power grid but did not claim a particular way of collecting, analyzing, or displaying the data. Because the claims did not focus on "any particular assertedly inventive technology for performing those functions" of "gathering and analyzing information of a specified content, then displaying the results," they were held to be directed to an abstract idea. *Id.* at 1354. The claims here are substantively indistinguishable.

The claims here are unlike the detailed and sophisticated computerized 3-D animation techniques relying on rules held to be patent eligible in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). The claims in *McRO* allowed computers to produce "accurate and realistic lip synchronization and facial expressions in animated characters." *Id.* (citation omitted). This was achieved by requiring "that the rules be rendered in a specific *way*: as a relationship between sub-sequences of phonemes, timing, and the weight to which each phoneme is expressed visually at a particular timing (as represented by the morph weight set)." *Id.* at 1315 (emphasis added). Unlike Cascades' claims, the claims in *McRO* went "beyond merely organizing existing information into a new form" and did not "simply use a computer as a tool to automate conventional activity." *Id.* at 1314–15. Cascades' reliance on *McRO*, therefore, is misplaced.

III

Cascades argues that the claims include an inventive step at *Alice* step 2. Cascades points to the specification's discussion of the three prior art techniques for locating businesses on a map, '395 patent col. 1 ll. 12–53, arguing that the claimed invention improves the speed by which a user may locate a business.

We agree with the district court that the highly generic functional steps claimed here do not contain an inventive step beyond preexisting and conventional computer technology. "[S]electing information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes." *Elec. Pwr. Grp.*, 830 F.3d at 1355. Nor does limiting the gathering to a particular field of endeavor render the claims eligible under step 2. *Id.* at 1354. Also similar to *Electric Power*, the claims here do not require a "new source or type of information[ ] or new technique[ ] for analyzing it," or "an arguably inventive set of components or methods ... that would generate new data," and "do not invoke any assertedly inventive programming." *Id.* at 1355.

As the district court noted, the patents themselves state that generic and pre-existing computer functionality can perform all the claimed steps. *Dismissal Op.*, 728 F. Supp. 3d at 933–34 (noting that Cascades does not dispute that, as of the filing date, it was conventional for computers to automatically detect the location of the device and search for and locate businesses based on user inputs). Indeed, the asserted patents acknowledge that "computer systems and smart-devices already have the capability to identify a device-user's location using built-in GPS technology, to display digital maps of the surrounding geographic area without input from users, and to search for and collect information about particular businesses to populate on the map." *Id.*; '395 patent col. 4 ll. 32–51, col. 5 ll. 3–5, col. 7 ll. 35–40. We also agree that whatever speed advantage comes from the purported inventive contribution—selecting a brand via an icon

rather than writing the name of the brand—comes from the conventional computer technology itself rather than any inventive step. *See Intellectual Ventures I LLC v. Cap. One Bank*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (holding that "merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea").

IV

Finally, Cascades argues that the district court abused its discretion by dismissing its case with prejudice due to futility (an issue the Seventh Circuit reviews *de novo*), thus violating the liberal standard for leave to amend under Fed. R. Civ. P. 15(a)(2).

Cascades argues that the legal question of eligibility is steeped in fact determinations and that, with leave to amend, it could have demonstrated patent eligibility by alleging additional facts (from the specification and prosecution history), submitting additional expert declarations to show that the components were not conventional or well-understood, and submitting additional evidence about the licensing success of the patents. Cascades does not dispute that the district court has the authority to dismiss and deny leave to amend if amending the complaint would be futile. *See Pugh v. Trib. Co.*, 521 F.3d 686, 698 (7th Cir. 2008).

We see no abuse of discretion in the district court's dismissal with prejudice and no error in its futility determination. The conventionality of the various components was well-established by the specification itself and no amendment to the pleadings could plausibly allege otherwise. The touch screen, the GPS location, and the display—which constitute all of the limitations in the representative claim—were indisputably conventional as of 2007. As the district court noted, this is confirmed by the patents themselves, which allow the use of conventional off-the-shelf components to accomplish all the steps of the method. *Dismissal Op.*, 728 F. Supp. 3d at 931; '395 patent at col. 1 ll. 12–13, col. 4 ll. 44–47, col. 5 ll. 1–5, col. 7 ll. 35–40. No amount of new allegations or additional evidence could change that reality or the patent's specification. The district court therefore did not err in concluding that amendment of the complaint would be futile and that dismissal with prejudice was in order.

CONCLUSION

For the reasons discussed above, we affirm the district court's determination of patent ineligibility and dismissal with prejudice.

**AFFIRMED**

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 2731321

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.